IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                                      Case No. 4:09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                                 DEFENDANTS

**TIMELINE OF EVENTS (EXHIBIT "4" TO 3582(c) MOTION)**

| Date | Place | Identity of speaker; Statement or representation |
|---|---|---|
| 03-18-09 | Dkt. 7, pg. 10 | By Springer: Springer submits gifts are income but that they are not reportable or calculated within a person's "gross income." This has never been in dispute. |
| 04-16-09 | Dkt. 42, pg. 3 | Government: (Gov) It is not criminal to earn income. |
| | Id. Pg. 8 | Government: **Bills of particulars are not favored because the government is required to strictly adhere to the answers.** Defendants have been very adequately informed of the nature of the charges against them so they can prepare an intelligent defense, and also guard against any subsequent prosecution for the same acts. |
| 05-29-09 | Dkt. 71, pg. 8 | Government: Thus, Defendant Stilley cannot assert that the indictment is insufficient as to him because the indictment does not allege he attempted to evade his own taxes. The indictment clearly alleges that Defendant Stilley attempted to evade Defendant Springer's federal income taxes. |
| 06-15-09 | Dkt. 80, pg. 5-6 | Government: Also, Special Agent Shern included in the affidavit Defendant Springer's self-serving statement to Patterson "that he [Defendant Springer] did not charge fees, but took money for his [Page 6] ministry." Docket #75-20 at 4. Thus, contrary to Defendant Springer's implications to the contrary, Defendant Springer's theory that the payments were gifts was included in the affidavit presented to the Magistrate Judge who issued the search warrant. |

| 06-15-09 | Dkt. 81, pg. 15 | Springer: "...it is not whether Springer received "income" as the United States has worn that word out, the question is whether Springer received "gross income" ..." |
|---|---|---|
| 06-17-09 | Dkt. 86 | Government: Motion to strike Docket # 81 because, as a reply, the page limit in the civil rules is 10 pages, and Springer's reply has 28 pages. |
| 06-18-09 | Dkt. 87 | Court Order denying Docket #86, motion to strike, and directing the government to file a sur-reply. |
| 06-25-09 | Dkt. 93, pg. 1-2 | Government:  As the Grand Jury charged in the Indictment, Defendant [referring to Springer] provided legal services to numerous clients during the years 2000 through 2005. Defendant's clients paid money to Defendant in payment for his services; at Defendant's instruction the clients called these payments gifts. |
| | Id. Pg. 9 | An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. |
| | Id. Pg. 12 | Government: [This] prosecution was brought as a result of evidence that Defendant Springer **earned income during the years in question _for legal services or paralegal services_**, and failed to file tax returns or pay taxes on that income, and not because of any alleged anti-tax statements he may have made individually, or through Bondage Breakers Ministries. (Emphases added) |
| 07-01-09 | Dkt. 97 pg. 3 | Government:  As noted by the Court in the hearing held April 22, 2009, the Indictment "is impressively informative." |
| | Also pg. 3 | Government: The Defendants are charged in this case with conspiring to defraud the Internal Revenue Service and with tax evasion _with respect to Defendant Springer's federal income taxes_ for the years 2000, 2003 and 2005. (Emphasis added) |
| 07-30-09 | Dkt. 105, pg. 9 | Springer:  These particulars are needed so that Lindsey Kent Springer can understand the meaning of "required by law," to also make certain that both the jury is instructed correctly and that the claims presented to the Grand Jury remain the same claims the Government is now demanding a jury trial to determine.  (Emphasis added) |
| 08-03-09 | Dkt. 107, pg. 28-31 | Government: Proposed jury instruction as to Count One of the indictment.  It includes nothing but allegations related to the transactions alleged to constitute tax evasion in Counts 3 and 4. |

| 08-03-09 | Dkt. 107, pg. 37 | Government:  To ''evade and defeat'' the payment of tax means to escape paying a tax due other than by lawful avoidance. **The indictment alleges a specific amount of tax due for each calendar year charged.** The proof, however, need not show the exact amount of the additional tax due. The government is required only to prove, beyond a reasonable doubt, that the additional tax due was substantial. (Emphasis added)(The indictment does not allege a specific amount, contrary to the government's claim.) |
|---|---|---|
| 08-03-09 | Dkt. 107, pg. 38 | Government proposed jury instructions as to Counts 3 and 4: [after setting forth certain alleged means of concealment] "... and, otherwise *concealing and attempting to conceal* from all proper officers of the United States of America *Defendant Springer's true and correct income*." (Emphases added) |
| 08-06-09 | Dkt. 116, pg. 3 | Government opposition to particulars:  Defendant Springer's persistent refusal to acknowledge that the law requires individuals who *earn* income to file federal income tax returns and pay federal income taxes does not warrant a bill of particulars. (Emphasis added) |
| 08-12-09 | Dkt. 119, pg. 2 | Government: The theory of liability in this case is simple; Defendant Springer *earned his livelihood* assisting individuals with tax matters. (Emphasis added) |
| 08-13-09 | Dkt. 126, pg. 5 | Government:  With regard to Defendant Springer, Revenue Agent Miller is expected to testify, in sum and substance, as follows: first, [concerning Defendant Springer's non-filing]; second, the amount of income earned by Defendant Springer during the prosecution years *and otherwise*; and third, regarding the tax consequences of Defendant Springer's conduct *as described in the Indictment*. (Emphases added) |
| 08-19-09 | Dkt. 130, pg. 31 (an exhibit) | Government: This is an email exchange between Stilley and government lawyers, attempting to nail down the government's theories.  Mr. Snoke doesn't want to be dragged into "minutia." Denounces the defendants' "bogus professed inability to understand the charges..."  The actual numbers for the years of the indictment are set forth on the following page. |
| | Id. Ex. 4 | Government: Memorandum of interview by Brian Shern.  Amounts claimed given by tax year; figures could change, but not materially. |

| 09-10-09 | Dkt. 134 | Government: 404(b) notice of prior bad acts/impeachment material. Included is both Springer and Stilley's involvement with prior tax trials and investigations, to prove knowledge of legal duty. Government claims Defendants "will likely attempt to implicate the Government witnesses as fabricating evidence..." |
|---|---|---|
| 09-21-09 | Dkt. 137, pg. 5 | Government: In an attempt to evade his federal income tax obligations, Defendant Springer conspired with Defendant Stilley and others to hide *the fact* that he received income. |
| | Id. Pg. 12-13 | Government:  Defendant Springer has indicated he may seek to introduce evidence of money he received that is not alleged in the indictment to be taxable income as evidence that people *gave Defendant Springer money*. This evidence would be irrelevant; the Government will prove Defendant Springer earned income through the specific item method of proof. Through documentary evidence and witness testimony, the Government will establish that Defendant Springer *received payments from income from individuals for whom he provided legal assistance.*  (Sic) If this were an indirect method of proof case (i.e., bank deposits, net worth, cash expenditures, etc.), Defendant Springer's possible non-taxable sources of income would be admissible and relevant to rebut the inference that funds attributed to Defendant Springer came from taxable sources. However, in a specific items case, the Government needn't negate nontaxable sources of income. [citation omitted] As indicated previously, irrelevant evidence is inadmissible and therefore should be excluded from trial. Fed. R. Evid. 103(c) and 402.  (Emphases added) |
| 09-21-09 | Dkt. 138, pg. 18 | Government:  Tax evasion prosecutions are not collection cases and it is *not necessary to charge or prove the exact amount of the tax that is due and owing.* [citations omitted] It is enough to prove that the defendant attempted to evade the payment of a substantial income tax, even though the actual amount of the tax that he owed may be greater than or less than the amount charged in the criminal case.  (Emphasis added) |

| | Id. Pg. 25 | ... This method of receiving income *defeated* normal IRS investigative methods, and was contrary to normal business practices....<br><br>All of these actions avoided creating the usual records of financial transactions, concealed ==Defendant Springer's income==, *and defeated normal IRS investigative methods.* (Emphases added) |
|---|---|---|
| 09-21-09 | Dkt. 139 Pg. 1 | Government summary of the indictment:  In Count One, the Indictment charges that from the year 2000 to January 15, 2009, Defendants Springer and Stilley conspired to defraud the United States by working together to impede and impair the ability of the Internal Revenue Service to ascertain, [page 2] compute, assess, and collect the federal income taxes owed by Defendant Springer. The Indictment charges that Defendant Springer conspired with Defendant Stilley and others to hide ==*the fact*== that Defendant Springer received income. The Indictment charges that Defendant Springer ==*earned* taxable income== and utilized various means to ==*hide this fact.*== |
| | Pg. 3 | Defendants Springer and Stilley are charged in Counts Three and Four with attempting to evade Defendant Springer's income taxes for the years 2003 and 2005. Counts Two, Three and Four each allege a violation of Title 26, United States Code, Section 7201. Defendant *Stilley is charged* using the aiding and abetting statue, (sic) *Title 18, United States Code, Section 2*. (Emphases added) |
| 09-25-09 | Dkt. 162, pg. 2 | Government: (editor's summarization) Requests permission to take deposition of Ms. Wiggins in California, in order to prove 5 checks to Lindsey Springer, totaling $65,000, claimed to be compensation for Springer's assistance in recovering money from a third party. |
| 10-05-09 | Dkt. 173 pg. 4 | Government:  As charged in the Indictment, it was part of the conspiracy that Defendant *Stilley* **knowingly misrepresented the** ==***source and nature***== **of Defendant Springer's income** to Internal Revenue Service employees and the Grand Jury. |
| | Id. Pg. 10 | ... the prosecutor "may prosecute with earnestness and vigor - indeed, he should do so. But while he may strike hard blows, he is *not at liberty to strike foul ones.*" |

| | | |
|---|---|---|
| | Id. Pg. 11 | Defendants' conclusory allegation that Revenue Agent Miller "would not be capable of giving ==an objective legal opinion regarding any treatment of any money tendered to Springer== by any witnesses presented at trial including the medical association Dr. Roberts worked for" (doc. no. 150 at 1) is similarly unsupported. |
| | Id. Pg. 11, footnote 4 | The United States is gratified to learn that "[Defendant] Springer is certain Mr. Shern is more than capable of explaining to the jury how he arrived at his tax calculations." Doc. no. 150 at 2. However, the United States intends to qualify Revenue Agent Miller as an expert witness *to ==perform tax calculations==* and summarize the evidence presented at trial. |
| 10-08-09 | Dkt. 185, pg. 2 | Government: The charges in the indictment *are clear.* (Emphasis added) |
| 10-13-09 | Dkt. 192 | The Court:  The court was of the opinion when it entered its order on October 8, and is still of the opinion, that if regulations are important enough to the government's case to be referred to at all, then they should be cited specifically. It seems **passing strange** that, in this criminal tax case, the government would see fit to **refer generally** to operative regulations, but resist informing the defendant (and, by the way, the court) as to what it refers to when it writes about "the regulations thereunder." For this reason, the court is unmoved by the government's arguments as to the niceties of bills of particulars. If the device of a supplemental bill of particulars were not available to provide the specificity called for **by fundamental fairness**, the court would, ==**in the blink of an eye**==, require the government to provide the needed specificity in a supplement to the trial brief that made reference to "the regulations thereunder" but gave no indication of *which* regulations. (Italics in original, remaining emphases added.) |

| 10-21-09 (Final Pretrial Conf.) | TR 109 - 110 | (The District Court laying down ground rules for the trial.)<br>13 Obviously, both sides are going to have considerable<br>14 amounts of previous testimony available, previous<br>15 testimony in various contexts from witnesses called by<br>16 the government especially. **We will have no impeachment**<br>**17 with off-the-cuff summaries of testimony**. If you've got<br>18 a witness nailed dead to rights with in-court testimony<br>19 inconsistent with other testimony, **then stick the witness**<br>**20 with the other testimony.** I don't want to hear somebody<br>21 say, well, didn't you testify ta-da-da-da-da-da<br>22 without -- and then give me your off-the-cuff summary of<br>23 deposition testimony or grand jury testimony or whatever<br>24 it might be, *because it's never as good as you remember,*<br>25 and so we stick to the grand jury testimony or the other<br>109<br>1 transcript rather than your off-the-cuff -- impeachment<br>2 with your off-the-cuff summary. |
|---|---|---|
| 10-26-09 (first day of trial) | Dkt. 212, pg. 4 | Government:  Defendant Stilley's hand-picked examples do not support his contention that Ms. Wiggins is an incompetent witness to testify to the matters to which she testified, including the fact that she caused the issuance of these five checks to Defendant Springer for services, and not as **gifts or donations.** |
| 10-27-09 (second day of trial) | TR 316 | (Direct examination of Dr. Philip Roberts, by Mr. O'Reilly)<br>10 Q. With respect to whether or not you were required to<br>11 file taxes, what did **Mr. Stilley** tell you?<br>**12 A. I don't remember him specifically saying that there**<br>**13 wasn't a requirement.** He's quite gifted in<br>14 constitutional and legal issues. And to be -- quite<br>15 frankly, he overwhelmed me a lot. So I couldn't actually<br>16 tell you definitively that I recall him making that<br>17 statement ever. |
| 10-27-09 | TR 316 | (Direct examination of Dr. Philip Roberts, by Mr. O'Reilly)<br> 18 Q. Okay. Did you ever have a conversation with<br>19 **Mr. Springer** about whether or not you had to file tax<br>20 returns?<br>**21 A. Again, I cannot recall any specific conversation in**<br>**22 that regard.**<br>23 Q. Is it possible that in the past you had a<br>24 recollection that -- or that reference to this grand jury<br>25 transcript might assist you in remembering? |

| 10-27-09 | TR 317 | (Direct examination of Dr. Philip Roberts, by Mr. O'Reilly)<br>1 A. Anything could help me with remembering. It was a<br>2 long time ago.<br>3 Q. Yes. Yes, Dr. Roberts. Let me ask you, if you<br>4 could, to look at page 9 of that same grand jury<br>5 transcript and simply look, I believe, from lines 9<br>6 through 11 and read it to yourself, sir.<br>7 A. Page 9, lines 9 through 11?<br>8 Q. I believe so, sir, yes. Actually, line 6 through<br>9 12. I apologize. Have you read that, sir?<br>10 A. Yes, I have.<br>11 Q. ==Does that refresh your recollection==?<br>12 A. It certainly reflects what I said then, yes.<br>13 Q. What did you say?<br>14 A. At what part of this?<br>15 Q. Actually, let me just ask, ==did Mr. Springer== ever<br>16 tell you whether or not you had an obligation to pay<br>17 incomes taxes and file tax returns?<br>18 ==A. Yes. He stated that my conclusions were correct and==<br>19 ==there was no requirement or liability to do those.==<br>(Whereupon Mr. O'Reilly passes the witness) |
| 11-02-09<br>(sixth<br>day of<br>trial) | TR 1289 | BRIAN MILLER - CROSS BY MR. SPRINGER<br>5 MR. O'REILLY: Objection as to what is the IRS's<br>6 position ==and you should use common sense.==<br>7 THE COURT: Don't go there. That will be<br>8 overruled. |

| | | |
|---|---|---|
| 11-02-09 | Trial transcript TR 1295-1296 (All emphases in transcripts are added, unless otherwise noted) | [page 1295]<br>BRIAN MILLER - CROSS BY MR. SPRINGER<br>25 A. But I think your -- the situation in this case is<br>Page 1296<br>1 different, because whether the payment can be for<br>2 specific services that you provide in legal defense or<br>3 legal research or whatever, and there could also be<br>4 another portion that is **not for your specific services** on<br>5 behalf of the payor that may be payment to you for your<br>6 promotion of the ministry for you to carry on the work<br>7 that you're doing. In which -- and ==**in either case**==, I<br>==8 **believe that would be gross income to you.**== So, you know,<br>9 in a way, in a sense, ==**whether it's a gift or compensation**==<br>==**10 for services is almost a moot point in this case.**==<br>11 Because I think in all the cases I've heard thus far, all<br>12 the payors have expected something from you, whether it<br>13 was personal legal services **or work by you on behalf of**<br>**14 the ministry to promote that ministry.**<br>15 Q. And that is the sole determination -- the sole<br>16 determining factor that you rely upon to move the column<br>17 -- the item out of the income column and into the gross<br>18 income column; is that correct?<br>19 A. I guess if you want to put it that way. |
| 11-03-09 (day 7 of trial) | Dkt. 228, pg. 1 | Government:  The United States believes that the following phrasing would be more consistent with the remainder of the Court's proposed instruction: Voluntary contributions, when received and retained by the minister, *may* [page 2] *be* income to him. Payments made to a minister as compensation for his services constitute income to him. (Emphasis in original) |
| | Id. Pg. 2 | In the fifth paragraph of the Court's proposed instruction, the second sentence currently reads: "Where the person transferring the money did not act from any sense of generosity, but rather to secure goods, services or some other such benefit for himself, there is no gift." As written, the instruction appears to limit income to payments directly from the beneficiary of the services. The United States recommends adding the phrase "or for another," so that the sentence reads: "Where the person transferring the money did not act from any sense of generosity, but rather to secure goods, services or some other such benefit for himself *or for another*, there is no gift." (Emphasis in original) |

| | | |
|---|---|---|
| 11-03-09 | TR 1459-1460 | PATRICK TURNER - DIRECT BY MR. O'REILLY<br>22 Q. Were you able to pay the money that was reported as<br>23 owed when you filed those tax returns?<br>24 A. There was a dispute on the amounts, so, no, I did<br>25 not pay the amounts on the tax returns.<br>1459<br>PATRICK TURNER - DIRECT BY MR. O'REILLY<br>1 Q. Okay. And then you said you wanted to finish your<br>2 answer on the other question?<br>3 A. Yes.<br>4 Q. Please do so. |
| 11-03-09 | TR 1460 | PATRICK TURNER - DIRECT BY MR. O'REILLY<br>17 A. I was going to criminal trials to understand what<br>18 happens to a person, what they go through. And on two<br>19 occasions, I was in the hallway and U.S. Attorney Don<br>20 Davis made this comment: "We left them with too much<br>21 money." And that scared me to my very core. |
| 11-03-09 | TR 1461 | PATRICK TURNER - DIRECT BY MR. O'REILLY<br>2 Q. Did any of those individuals -- well, let me ask it<br>3 this way: Did Mr. Springer come up with an idea for a<br>4 course of action to take?<br>5 A. No, sir. I did. I said that there has to be a<br>6 legal -- I had -- at that time, I had no tax liens or<br>7 anything like that on any of my assets. And I said --<br>8 Q. Were you concerned that you would have tax liens<br>9 placed on your assets?<br>10 A. Based on the comment from Don Davis, absolutely,<br>11 sir. Absolutely. |
| 11-03-09 | TR 1462 | 4 Q. And this was before you entered into this agreement<br>5 with Mr. Springer; is that correct?<br>6 A. That's correct.<br>7 Q. You then agreed with Mr. Springer to do something<br>8 about this; is that correct?<br>9 A. Right. That's correct. |
| 11-03-09 | TR 1464 | 13 Q. -- what did you do with the funds that you received?<br>14 A. I transferred them -- we wanted to make this as out<br>15 in the open as possible.<br>16 Q. Who is "we"?<br>17 A. Lindsey and I. |

| 11-03-09 | TR 1465 | PATRICK TURNER - DIRECT BY MR. O'REILLY<br>6 Q. Let me ask this: **Did sending it to Mr. Stilley, who**<br>**7 is an attorney, make it appear that the payment was, in**<br>**8 fact, an attorney retainer?**<br>9 A. No, sir. Not to me, it didn't, because of the loan<br>10 contract.<br>11 Q. Was the loan contract filed in any public forum?<br>12 A. No, sir.<br>13 Q. If somebody simply looked at the transfer, what<br>14 would it appear to them?<br>15 A. I couldn't speculate, sir. I'm sorry. |
|---|---|---|
| 11-03-09 | TR 1472 | 8 Q. When you learned that a quarter-million dollars that<br>9 you were relying on to hire an attorney had been spent on<br>10 a bus and a car, did you have any reaction?<br>11 A. Confusion. Disappointment. *I called Mr. Springer.*<br>12 We talked about it.<br>13 Q. With respect to this -- and as you sit here today,<br>14 you're saying that you loaned Mr. Springer $250,000; is<br>15 that your statement?<br>**16 A. That is absolutely true.** |
| 11-03-09 | TR 1476 | 2 Q. With respect to Mr. Springer, do you think he's ever<br>3 going to repay you?<br>4 A. Yes, sir, I do.<br>5 Q. Because you trust him?<br>6 A. Yes, sir, I do. |
| 11-04-09 | TR 1837 | (Brian Shern Cross by Springer)<br>3 Q. So your position on whether or not Mr. Bolthouse's<br>4 wire to Mr. Stilley is an overt act in furtherance of the<br>5 conspiracy charge, you withdraw that position at this<br>6 point?<br>7 MR. O'REILLY: Your Honor, objection. It's the<br>8 grand jury that indicted Mr. Springer and Mr. Stilley,<br>9 not Special Agent Shern.<br>10 THE COURT: Sustained. |

| 11-04-09 | TR 1850 | (Cross examination of Brian Shern by Oscar Stilley)<br>12 Q. Do you know what that agreement was? Scratch that.<br>13 Let me back up. Let me focus on Count 1. Do you know<br>14 what the agreement was?<br>15 A. The conspiracy charge?<br>16 Q. Yes.<br>17 A. Yes, I think you guys -- based on the evidence in<br>18 this investigation, I think you and Mr. Springer had a<br>19 agreement to help Mr. Springer hide his income. |
|---|---|---|
| 11-04-09 | TR 1881 | 14 THE COURT: Well, you're essentially correct as<br>15 to what my comment was and is, but for the sake of<br>16 clarity, as far as the Court is concerned, any given item<br>17 of receipt for either you or Mr. Stilley, for that<br>18 matter, is either fish or fowl. It's either a gift or an<br>19 income. There are no issues in this case of allocation<br>20 between gift and income within any one item of receipt. |
| 11-05-09<br>(Ninth<br>day of<br>trial) | TR 1998 | (Government's examination of Brian Miller)<br>9 Q. (BY MR. SNOKE) Do you want to -- want to walk the<br>10 Court and the jury through this exhibit for the year 2000<br>11 as to the income items that you've listed thereon?<br>12 A. Yes. Basically, two main parts of this exhibit. I<br>13 listened to the testimony of the witness and I reviewed<br>14 the exhibits and I had to make myself comfortable that<br>15 the purpose of the payment was, in fact, to compensate<br>16 Mr. Springer for work that he had done. If it -- if I<br>17 felt certain that it was income and it was paid in the<br>18 year 2000 to Mr. Springer, I put it on this exhibit. And<br>19 this is basically a summary of all the income amounts<br>20 paid to Mr. Springer during the year 2000. |
| 11-05-09 | TR 1999 | (continued direct examination of Brian Miller)<br>6 And then at the bottom, I added up all the checks,<br>7 all the payments. And in this case, $160,000 is the<br>8 amount of gross income that I attributed to Mr. Springer. |
| 11-05-09 | TR 2006 | (continued direct examination of Brian Miller)<br>15 A. For the year 2005, based on the testimony of the<br>16 Turners and the other witnesses, we determined that the<br>17 gross income for 2005 was $265,500. |

| 11-05-09 | TR 2008 | (continued direct examination of Brian Miller)<br>10 Q. All right. And can you tell us why you included<br>11 that as income?<br>12 A. **Initially, I felt like it might have been a loan,**<br>**13 based on the testimony of Mr. Turner,** but **then I heard**<br>14 **the testimony of other witnesses, saw some other**<br>15 **exhibits, that led me to believe in all likelihood the**<br>16 **$250,000 would never be repaid by Mr. Springer and that**<br>17 **Mr. Springer felt he had complete control over that money**<br>18 **for his own uses and would therefore be treated as income**<br>19 **to him.** |
|---|---|---|
| 11-05-09 | TR 2012 | (continued direct examination of Brian Miller)<br>13 THE COURT: So the version of 683, then, that<br>**14 has columns for 2000 through 2005 with gross income, AGI**<br>15 **taxable income tax, self-employment tax and additional**<br>16 **tax due and owing a bottom line of 175,245,** then, is the<br>17 current version and the offered version of 683. Is that<br>18 right?<br>19 MR. SNOKE: Yes, Your Honor, that's correct.<br>20 THE COURT: Okay.<br>21 MR. SNOKE: What we had done is we eliminated<br>22 the individual years in those other exhibits and put it<br>23 all in one -- all five years -- six years, excuse me, in<br>24 one chart. |
| 11-05-09 | TR 2014-2015 | (continued direct examination of Brian Miller)<br>17 Q. (BY MR. SNOKE) Did you give Mr. Springer in this<br>18 calculation all the business expenses that he claimed in<br>19 his discussions with -- that Agent Sivils testified to<br>20 about his -- in his interview when he was shown receipts?<br>21 A. We gave him credit for every -- yes, every one that<br>22 he identified as business-related. **Then, in fact, we**<br>23 **actually gave him some additionally that we thought had**<br>24 **any chance of being business-related, we went ahead and**<br>25 **gave him just to make sure** that, you know, if we were to<br>2014<br>BRIAN MILLER - DIRECT BY MR. SNOKE<br>1 err, we wanted to err on the side of conservatism. |

| | | |
|---|---|---|
| 11-05-09 | TR 2061 | (Springer cross examination of Brian Miller)<br>**25 Q. And did you ever hear him say that I rendered any**<br>2061<br>BRIAN MILLER - CROSS BY MR. SPRINGER<br>**1 service to him in exchange for $250,000?**<br>**2 A. No.** |
| 11-05-09 | TR 2062 | (Springer cross examination of Brian Miller)<br> 11 Q. All right. And are you aware that the government<br>12 offered two charts for the year 2005, one chart included<br>13 the $250,000 as gross income and the other chart left it<br>14 off completely?<br>15 A. I am aware of that.<br>16 Q. Are you the sole reason why the $250,000 chart was<br>17 used instead of the one that excluded it from the chart?<br>==18 A. I prepared both charts.==<br>19 Q. Why did you prepare the one that was without the<br>20 $250,000?<br>==21 A. When I first heard the testimony of Mr. Turner and==<br>==22 saw the contract related -- or the contract between you==<br>==23 and Mr. Turner related to that 250,000, I initially felt==<br>==24 like that was a valid loan and that his testimony was==<br>==25 true and that the contract was legitimate.== |
| 11-05-09 | TR 2063 | (Springer cross examination of Brian Miller)<br>4 A. Yes, I felt that way initially. ==Subsequent to that,==<br>==5 I changed my mind.==<br>**6 Q. So as you stand here today, if Mr. Turner was here,**<br>**7 you would tell him that I don't owe him $250,000; is that**<br>**8 true?**<br>==9 A. I would tell him that you owe him $250,000 but that==<br>==10 he will never get his money back.==<br>11 Q. So did you also hear testimony that there was a lien<br>12 placed on the $167,000 RV?<br>13 A. I vaguely remember something about that, yes.<br>==14 Q. So is your testimony here today that that lien is no==<br>==15 good on that RV?==<br>==16 A. I don't know. I'm not convinced that it is.== |

| 11-05-09 | TR 2063 continued | (Springer cross examination of Brian Miller)<br>17 Q. But you're not convinced that it isn't, correct?<br>18 A. I believe that it's not a valid lien.<br>19 Q. So you believe that he has no interest in a motor<br>20 home that was specifically purchased with money that came<br>21 from him?<br>==22 A. I believe either one of two things, either that it's==<br>==23 not a valid lien or that he'll never call in the lien, I==<br>==24 guess.== |
|---|---|---|
| 11-05-09 | TR 2064 | (Springer cross examination of Brian Miller)<br> 2 A. I'm saying he'll want the money and I'm saying that<br>3 I think he would be entitled to the money, but as you<br>4 like to say, as I sit here today, ==I believe that he is a==<br>==5 big fan of yours and would never ask you for the money.== |
| 11-05-09 | TR 2092 | 5 Q. (BY MR. SPRINGER) Why did you give Lindsey Springer<br>6 a $24,900 depreciation on a motor home?<br>==7 A. Because I believe you are in the business of getting==<br>==8 rid of the IRS and as a part of that business you used==<br>==9 that motor home in furtherance of that business, so==<br>==10 therefore I think you would be entitled to a deduction.==<br>11 Q. You don't doubt that?<br>==12 A. I do not doubt that.== |
| 11-05-09 | TR 2092 | (Springer cross examination of Brian Miller)<br>19 A. Yes. I would demand that you show me the business<br>20 use. I think -- you know, ==there was a little bit of==<br>==21 testimony that suggested you may have used the motor home==<br>==22 some personally, but I think I allowed you 100 percent==<br>==23 business use on it.== But if it was a civil audit, then I<br>24 would expect to see mileage logs and calendars to show me<br>25 where you went and why you went there. |

| 11-05-09 | TR 2096 - 2097 | BRIAN MILLER - CROSS BY MR. SPRINGER<br>24 Q. Thank you. Now, you're letting me write off $24,000<br>25 as a business -- as a depreciation on a bus because it<br>Page 2096<br>**1 has got some business relationship, correct?**<br>**2 A. That's right.**<br>3 Q. And you're telling this jury that **all of these**<br>**4 checks that are given to me are for services -- legal**<br>**5 services rendered**. Do you remember that?<br>**6 A. That's right.**<br>7 Q. Or to be rendered; isn't that true also?<br>8 A. Yes. |
|---|---|---|
| 11-05-09 | TR 2104 | 11 Q. You just took all the checks and said because of<br>12 that testimony every check belongs in the gross income<br>13 column, right?<br>**14 A. If the witness said "this money I paid Lindsey to**<br>**15 work on my case or represent me," then I put it in there.**<br>16 Q. Thank you.<br>17 A. Or **by "put it in there," I mean treated it as**<br>**18 income.** |
| 11-05-09 | TR 2106-2107 | **BRIAN MILLER - CROSS BY MR. SPRINGER**<br>**24 A. If I believed that $2,000 was stolen from you, I**<br>**25 would have given you credit for a $2,000 casualty loss.**<br>Page 2106<br>1 But in your case, the standard deduction was more than<br>2 that anyway, so, unfortunately, you would not be entitled<br>3 to a deduction for that.<br>4 Q. But that's only if you include the RV -- the loan<br>5 from Mr. Turner as gross income, correct?<br>6 A**. What? If you don't include the RV from Mr. Turner,**<br>**7 then I don't believe there would have been any tax**<br>**8 liability anyway.** |

| | | |
|---|---|---|
| 11-05-09 | TR 2108 | BRIAN MILLER - CROSS BY MR. SPRINGER<br>6 Q. So you automatically just put that over in his<br>7 column because of what you think I did, correct?<br>**8 A. No, if I put it in income, it's because the witness**<br>**9 said it belonged in income and it was for work that you**<br>**10 did for them. That's the only scenario under which I**<br>**11 would put it in income is if the witness clearly said, "I**<br>**12 paid this money to Mr. Springer because he did work for**<br>**13 me, performed services for me,** tried to keep me out of<br>14 jail," whatever it was. |
| 11-05-09 | TR 2122 | BRIAN MILLER - CROSS BY MR. STILLEY<br>19 Q. The point I'm driving at is that Oscar Stilley did<br>20 not have the legal right to misappropriate someone else's<br>21 funds, whether it was Mr. Springer's or Mr. Patterson's,<br>22 correct?<br>**23 A. Absolutely not, right.** |
| 11-05-09 | TR 2127 | BRIAN MILLER - CROSS BY MR. STILLEY<br>10 Q. And didn't -- I heard you asked by Mr. Springer if<br>11 you could name any particular person who was impaired in<br>12 their activities because of what Oscar Stilley or Lindsey<br>13 Springer did, and I didn't hear any names. Have you<br>14 thought of any names?<br>**15 A. No, I have not.** |

| 11-05-09 | TR 2139 | (BRIAN MILLER REDIRECT BY MR. SNOKE)<br>4 Q. This was all in 2005?<br>5 A. Yes. The thing that -- **I guess the thing that put**<br>**6 me over the edge,** if you will, was the fact **I had never**<br>**7 really thought that Mr. Springer would simply take all**<br>**8 that money from Mr. Turner and not pay it back until I**<br>**9 heard the testimony of Ms. Hawkins**, who stated that in<br>10 addition to Mr. Springer asking for what I considered to<br>11 be a very large amount of money in a very short amount of<br>12 time, the testimony that, you know, we had a very<br>13 distraught woman who was overcome with trying to get her<br>14 husband out of prison, to have Mr. Springer expect a<br>15 payment of $500,000 to carry on the appeal was so<br>16 egregious to me that I felt like if he would take<br>17 advantage of her -- and I felt like that was a huge or<br>18 egregious taking advantage of had she paid that. And<br>19 based on that, I felt if he would do that to<br>20 Mrs. Hawkins, then it was very likely that he would do<br>21 the same thing to Mr. Turner. |
| --- | --- | --- |
| 11-05-09 | TR 2143 | (Brian Miller re-direct by Mr. Snoke)<br>14 Q. And then you were asked about any comments<br>15 Mrs. Patterson said. Do you recall any of her testimony<br>16 regarding that transaction?<br>17 A. I don't remember specifically, no. **I simply**<br>**18 remember that if the witnesses said it was income**, I<br>19 would have put it in income. **But I would not have put it**<br>**20 there had it not belonged there.** |
| 11-05-09 | TR 2147 | The government rests its case. |
| 11-05-09 | TR 2148-2149 | (Colloquy at the bench, out of the jury's hearing)<br>24 THE COURT: Okay. We'll see what we can do by<br>25 way of making progress until five o'clock or thereabouts<br>Page 2148<br>1 and I will -- I will allow you to confer very briefly<br>2 with your standby counsel, **but all you need to do is move**<br>**3 for judgment of acquittal, and we're not going to take**<br>**4 any appreciable amount of time for the motion, but if you**<br>**5 would like to confer very briefly with your standby**<br>**6 counsel, you may do so.** |

| | | |
|---|---|---|
| 11-09-09 (Tenth day of trial) | TR 2366 | (Brian Shern, direct examination by Lindsey Springer, defense case)<br>17 Q. And did you say that I told you that all funds that<br>18 I receive are gifts and donations and that I do not have<br>19 any income and that I do not provide any services for<br>20 payment?<br>21 A. Yes. |
| 11-09-09 | TR 2374 | (BRIAN SHERN DIRECT BY MR. SPRINGER CONTINUED)<br>12 Are donations and gifts income to your understanding<br>13 at the time you and I had this conversation in 2005?<br>14 MR. O'REILLY: Objection. Mr. Shern is not an<br>15 expert on tax law.<br>16 THE COURT: Overruled.<br>17 THE WITNESS: **No, I don't believe donations or**<br>**18 gifts, if they were donations or gifts, would be**<br>**19 considered income.** |
| 11-09-09 | TR 2376 | (BRIAN SHERN DIRECT BY MR. SPRINGER CONTINUED)<br>17 Q. (BY MR. SPRINGER) How were you misled by my answers<br>18 on September 16, 2005?<br>19 A. How was I misled?<br>20 Q. Right.<br>21 A. I guess by you telling me that all that income was<br>22 -- **I guess I wasn't necessarily misled, but I think you**<br>**23 -- your statements may be intended to mislead me.** |
| 11-09-09 | TR 2377 | (BRIAN SHERN DIRECT BY MR. SPRINGER CONTINUED)<br>4 Q. Right. And -- okay. So you weren't -- you just<br>5 said you weren't misled, but you believe I was trying to<br>6 mislead you; is that what you just said?<br>7 A. Yes. I think the whole notion of Bondage Breakers<br>8 Ministry, I think as -- you characterize it as a ministry<br>9 and claim that all this money is donations and gifts,<br>10 when **you know full well that you're just working like**<br>**11 everybody else and earning income for services.** |

| | | |
|---|---|---|
| 11-09-09 | TR 2390 | BRIAN SHERN - REDIRECT BY MR. SPRINGER<br>3 Q. In Mr. Stilley's examination, he asked you if you<br>4 would concede that he had perhaps a good-faith belief in<br>5 what Mr. Springer was doing; do you recall that<br>6 question?<br>7 A. Yes.<br>8 Q. You indicated no?<br>9 A. Yes.<br>10 Q. Please tell the jury why you indicated no.<br>11 A. Because I think he's a lawyer and he understands<br>12 what his IOLTA account is to be used for and I think he<br>13 knowingly assisted Mr. Springer **to hide Mr. Springer's**<br>**14 income**, as well as **Mr. Turner, to hide his income from**<br>**15 the Internal Revenue Service.** |
| 11-09-09 | TR 2417 | OSCAR STILLEY - DIRECT BY MR. SPRINGER<br>22 Q. Do you know whether you have ever been investigated<br>23 by the IRS other than in this case specifically for<br>24 failure to file tax returns?<br>25 A. Until about just a few days ago, I had no knowledge<br>2417<br>1 of any such investigation. I came to -- I asked,<br>2 actually, Mr. O'Reilly and was informed that there was<br>3 apparently an investigation at the present time in the<br>4 Western District of Arkansas, but I have no knowledge<br>5 what it's about. That was the first I heard of it. |
| 11-10-09<br>Eleventh<br>day of<br>trial | TR 2461 | (Colloquy before the Court)<br>1 THE COURT: Well, we'll address that one step at<br>2 a time. That's new information to me. What I don't<br>3 intend to do is get into the briar patch of relitigating<br>4 Arkansas disciplinary proceedings.<br>5 MR. O'REILLY: Your Honor, there was no<br>6 intention to do that by us.<br>7 THE COURT: That's precisely the point. **There's<br>8 every intention to do that by Mr. Stilley. And he has<br>9 got at least some** _superficially plausible pegs_ **to hang<br>10 his hat on in terms of taking up the time of this Court<br>11 and jury relitigating Arkansas Bar disciplinary<br>12 procedure.** We're not going to do that.<br>13 MR. O'REILLY: Yes, Your Honor. |
| 11-16-09 | Dkt. 245 | Verdict forms, "yes or no" format, no findings of anything else. |

| 12-01-09 | Dkt. 254 | Stilley: Motion for transcript at public expense. |
|----------|----------|---------------------------------------------------|
| 12-01-09 | Dkt. 255 | Stilley: Five page brief in support of transcript at public expense, explaining the impossibility, as a practical matter, of getting due process from a prison cell. |
| 12-07-09 | Dkt. 257 | Springer: Reply to response to Docket 224 and 232 (Stilley joinder). This reply is 51 pages in length. |
| 12-07-09 | Dkt. 258 | Stilley: Reply to response to 224 & 232, 13 pages in length. |
| 12-08-09 | Dkt. 259 | Government: Motion to strike Docket 257 and 258 on grounds that both were overlength. |
| 12-08-09 | Dkt. 260 | Springer motion for judgment of aquittal, 79 pages. Last page is certificate of service. |
| 12-08-09 | Dkt. 261 | Stilley motion for judgment of acquittal or new trial, 19 pages gross total, last page is certificate of service only. |
| 12-08-09 | Dkt. 262 | Springer motion for new trial, 16 pages total, in the format of a brief, but without a separate brief. |
| 12-08-09 | Dkt. 263 | Stilley brief in support of Docket # 261, consisting of 14 pages, one of which was certificate of service. |
| 12-09-09 | Dkt. 264 | Court order striking Docket items 257, 258, 260, 261, and 263. No citation to any "authority" except LCvR7.2(c) |
| 12-10-09 | Dkt. 265 | Springer motion to vacate 264, order striking pleadings. |
| 12-11-09 | Dkt. 266 | Government opposition to 264, Springer's motion to vacate. On page 3 the government notes that Springer already twice moved for judgment of acquittal. (As required by rule, at the end of the government's case and again at the close of evidence.) Zero citations to case law. |
| 12-14-09 | Dkt. 267 | Stilley's 6 page motion to reconsider order striking pleadings, and reinstate all stricken pleadings. |
| 12-14-09 | Dkt. 268 | Stilley's 10 page brief in support of motion 267. |
| 12-15-09 | Dkt. 269 | Government's opposition to Stilley's motion 267. Complains about paucity of citations to authority in Stilley's "motion," but cites not a single case in which the court interpreted LCvR7.2(c) as did the District Court in this case. |

| 12-28-09 | Dkt. 270 | Springer's 26 page affidavit regarding bias of District Court Stephen P. Friot. |
|---|---|---|
| 12-28-09 | Dkt. 271 | Springer's motion to disqualify... |
| 12-28-09 | Dkt. 272 | Springer's brief in support. |
| 12-28-09 | Dkt. 273 | Springer's motion to strike Docket 259 and 266. |
| 12-28-09 | Dkt. 274 | Springer's conditional reply to 266. |
| 01-07-10 | Dkt. 276 | Government's opposition to Springer's motion for new trial.  At page 3 the government cites to Duberstein as follows:<br><br>Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability, *or of the propriety, as a matter of fiduciary or corporate law, attaching to the conduct of someone else.*<br>(Emphasis added by the government to show what Springer was omitting.) |
|  | Id. At page 6 | Nowhere does the Indictment allege that ==either Defendant **willfully failed to file a Form 1040.**==<br>(Emphasis added) (I am not making this up - read it for yourself.  The government said this.) |
|  | Id. At page 7 | Contrary to Defendant's assertion, Count One was not a conspiracy to evade Defendant Springer's taxes.<br>(The government then reproduces certain language from Count 1 of the indictment, verbatim.) |
|  | Id. At page 8 | ... there is no reason for Defendant Stilley to file a Form 1040 on behalf of Defendant Springer. The Indictment's language ***referencing Defendant Stilley's failure to file Forms 1040*** clearly and unmistakably alleges conduct independent of Defendant Springer's income.<br>(Emphasis added) |
| 01-07-10 | Dkt. 277, pg. 13-14 | Government: Law of the case quotation, reproduced here verbatim:<br><br>The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Furthermore, when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine [page 14] precludes all other codefendants from relitigating the legal issue. |

| | | |
|---|---|---|
| | Id. At pg. 15 | As the Tenth Circuit stated in denying Defendant's petition, "at the proper time, he may appeal his conviction and sentence." *Id.* ***The proper time is not yet at hand.*** (Emphasis added) |
| 01-12-10 | Dkt. 278 | Order denying Stilley's unopposed motion 12-01-09 [Dkt. 254] for transcript at public expense on grounds of 1) no statutory authority cited, 2) no specific, current info regarding indigency, 3) motion is premature because judgment hasn't been entered.  With respect to the 2nd issue, the Court said: **The court has received [page 2] reasonably reliable information indicating that Mr. Stilley has recently solicited funds in support of his defense.** |
| 01-21-10 | Dkt. 288, pg. 22 | Springer reply to response to 262. For 2005, that theory is utterly absurd regarding how a loan becomes gross income. Most certainly *there is no quid pro quo on the loan*. (Emphasis added) (pagination generally refers to numbers at the bottom of the page, which often start after tables of contents and authorities.) |
| 01-22-10 | Dkt. 290, pg. 2 | Court's scheduling order. [Amended by Dkt. 291 for an April 21, 2010 sentencing date.]  Contains the following sentence: All motions and briefs must comply with the page limitations set forth in the local rules. |
| 01-28-10 | Dkt. 293, pg. 1 | Court's 26 page order on motions at 224, 232, 262, 265, 267, 270, 271, 273, 285. By a jury verdict returned on November 16, 2009, each of the defendants was found guilty of *tax-related crimes*. (Emphasis added) |
| | Id. At pg. 7 | Contrary to Mr. Springer's assertion, count one **does not clearly and unmistakably charge** that the income at issue was Mr. Springer's and not Mr. Stilley's. |

| | | |
|---|---|---|
| | Id. At pg. 14 | First, he [Springer] focuses on the introductory phrase of N.D. LCR 1.2 -- ("Where appropriate in a criminal context") -- to argue that this criminal rule fails to give adequate notice that the page limitations set forth in LCvR7.2 apply. LCvR7.2 is specifically identified in N.D. LCR 1.2, by rule number and by subject matter as a rule that pertains to "Briefs." If Mr. Springer truly thought that the "where appropriate" language created a question about the applicability of the page limits, then, instead of unilaterally filing lengthy papers, **he should have asked the court about those page limitations.** He did not.<br><br>    Second, the violations in question are not slight ones. The non-conforming papers **greatly exceed** the page limits. |
| | Id. At pg. 15 | Fifth, another provision of the criminal rules, N.D. LCR 12.1(B), supports striking the filings. Importantly, this provision does not depend upon incorporation by reference of any other rules. Nor is it qualified by the "where appropriate language." This provision, N.D. LCR 12.1(B), is perfectly clear. It provides that: "All motions and responses thereto must be accompanied by a concise brief citing all authorities upon which the movant or respondent relies." Mr. Springer's 51-page *reply* brief (doc. no. 257), and his 79-page motion for judgment of acquittal (doc. no. 260), can hardly be characterized as concise. **The stricken filings violate this court rule.** |
| | Id. At pg. 16 | Despite all of the above, the court stops short of finding that the rule violation was intentional. **It presumes, in fact, that it was not.** ****<br>A court is **not required to allow a futile filing.**<br>(Emphasis added) |
| | Id. At pg. 17 | Some of what Mr. Stilley includes in his supporting brief can only be described as a rant. |

| | | |
|---|---|---|
| | Id. At pg. 18-19 | Mr. Stilley argues that the deficient nature of N.D. LCR 1.2 is apparent because that rule purports to incorporate several civil court rules that no longer exist. Those other rules, however, are not material to the issues before the court.<br><br>    Mr. Stilley argues that he had **no notice** that for purposes of the page limitations, the court would construe his motion for judgment for acquittal (doc. no. 261, which was 19 pages long, plus exhibits), along with his brief in support of that motion (doc. no. 263, which was 14 pages long), as one filing. **Court rules cannot reject, explicitly, every possible ruse a litigant might think up to get around those rules.** Here, Mr. Stilley's motion and brief are both clearly argumentative and it was appropriate to construe them together. If the court did not have the **discretion to do so**, rules regarding page limitations would be easily circumvented. (Emphases added) |
| | Id. Pg. 18 cont. through 19 | The same findings that the court has made with respect to its reasons for denying Mr. Springer's motion to vacate apply equally to Mr. Stilley's motion to reconsider. Moreover, although Mr. Stilley appears *pro se*, he is, or was, an attorney and he clearly understands the importance of complying with local court rules. With respect, specifically, to Mr. Stilley's stricken documents, the court finds that the December order was appropriate and that *no grounds have been shown for vacating that order, for reinstating the stricken filings, or for allowing additional time to submit conforming filings now.* After consideration of the content of each of the stricken filings, the court finds that allowing additional time for Mr. Stilley to submit his stricken motion for acquittal, his stricken supporting brief, and his stricken reply brief, *would be futile.* Nothing argued in these documents would change any results with [page 19] respect to Mr. Stilley. *Mr. Stilley's remedy lies with a higher court,* not with re-stating his stricken arguments to the undersigned.<br><br>    Mr. Stilley's motion to reconsider the court's December order and to reinstate all stricken pleadings is **DENIED**. (Emphases added) |
| 02-01-10 | Dkt. 297 | Stilley's motion to strike all Friot orders. |
| 02-01-10 | Dkt. 298 | Stilley's brief in support of 297. |

| 02-08-10 | Dkt. 306, pg. 5 | Springer motion for stay, alternatively for relief from rule requiring employment or 30 hours per week public service.<br>Springer at page 5, in a footnote, complains about the government attacking his wife's checking account and his own PayPal account 4 days after trial. |
| | Id. Pg. 17 | Complains about 40 hours of public service, away from defending liberty. [Gov. says it is actually 30, but this doesn't include travel time.] |
| 02-12-10 | Dkt. 310, pg. 2 | Government:  As Defendant Springer has been advised both by this Court and by the Tenth Circuit Court of Appeals, the remedy for the issues raised herein and heretofore is through the appellate process. |
| | Id. Pg. 3, footnote 2 | ... as Defendant Springer knows, ==neither of the prosecutors assigned to this case had any role with respect to the levies issued against Defendant Springer for delinquent taxes from the years 1992 through 1995.== As Defendant Springer alleged in his opposition to these levies in 08-cv-278TCK-PJC, the Internal Revenue Service issued the levies ("On November 23, 2009, Agent Fred Rice levied Springer's Paypal account of $ 978.00 and levied Springer's wife checking account to the tune of $1400.00 on this same day at the direction of Mr. Strong, Ms. Downs, and the IRS in general"). |
| | Id. Pg. 11 | This was aptly demonstrated by at least one witness' ==naive belief that Defendant Springer had any intention of repaying== the money Defendant**s** **stole**.<br>(Emphases added) |
| 02-22-10 | Dkt. 312, pg. 4 | Court order regarding motions 280, 282, 284, 306, 309.<br>**==Defendants' remedy is an appeal==**, not a stay pending the Supreme Court's ruling on the petition for a writ of mandamus. |
| | Id. Pg. 5 | Request for relief from 30 hour community service denied. |
| 02-23-10 | Dkt. 313 | Court order - notice of consideration of non-standard conditions of supervised release. |
| 02-25-10 | Dkt. 314, pg. 3 | Court order - This prosecution is for violation of ***tax statutes***, not violation of a regulation, and the ***criminal statutes in question are clear***.<br>(Emphases added) |

| 02-25-10 | PSR Page 22 | Page 22 of PSR<br>Says on the one hand, in paragraph 53, that<br>However, pursuant to the provisions of United States v. Franks,723 F.2d 1482 (10th Cir. 1983), restitution in tax cases shall not be ordered as a condition of probation or supervised release when the amount of tax loss has not been ==acknowledged, conclusively established in criminal proceeding, or finally determine in a civil proceeding.== Although the IRS has estimated an approximate tax loss of $376,956.85, to date, the exact loss has not been determined by any of the three methods previously listed.<br> Says on the other hand, in paragraph 52, that this amount of ==tax loss== can indeed be made a condition of supervised release.  The version of the PSR 4-8-10 has the same claims, but also adds in "restitution" for the State of Arkansas. |
| 03-03-10 | Gov. Obj. To PSR | Government objections to PSR.<br>In addition, the jury verdict indicates that the jury found that Defendants **Springer and Stilley stole money from Mr. Patrick Turner**. ==Had the jury found that Defendant Springer borrowed from Mr. Turner, **the jury would have acquitted Defendants** of the tax evasion count for 2005.==  Their return of a guilty verdict with respect to that count, corroborated by the evidence at trial, proved that Defendant Springer and Defendant Stilley, utilizing wire communications, stole $250,000 from Mr.Turner during 2005. |
| 03-25-10 | Dkt. 317 | Court order vacating requirement of 30 hours per week work or community service. |
| 04-04-10 | Dkt. 322, pg. 3 | Springer Motion for continuance of sentencing.  Springer ordered to move his family from his home, absent stay, by April 15, 2010. |
|  | pg. 7 | Government is seeking 238 months of prison time on Springer. |
| 04-05-10 | Dkt. 324 | Court order denying continuance of sentencing.  Springer must make choices about his time for litigation. |

| 04-06-10 | Dkt. 326 | Stilley motion to continue sentencing.  Complained bitterly about theory switching, refusal to commit to any theory.  Refused to lend credibility to the proceedings by supplying a witness and exhibit list under such conditions.  Page 2 set forth the following numbers given to me pre-trial.<br>00 $33,777<br>01 $ 500<br>02 0<br>03 $89,350<br>04 0<br>05 $33,463<br>06 0 this year and following |
|---|---|---|
| 04-07-10 | Dkt. 328 pg. 2 | Government response to 326.<br>...  Finally, the United States proved beyond a reasonable doubt that Defendant conspired to defraud the United States, **and that Defendant evaded the federal income tax liabilities of his codefendant for the years 2003 and 2005.** |
|  | Id. Pg. 3, footnote 1 | The United States is **perplexed** by Defendant's reference to multiple versions of the indictment. Doc. no. 326 at 3. There was only one indictment in this case. |
|  | Id. Pg. 4 | Defendant states that he "respectfully declines to lend any credence or respectability to these proceedings by declaring a list of witnesses without a PSR that meaningfully identifies the facts and legal theories supporting the suggested Guideline Range." Doc. no. 326 at 4. By this statement, **Defendant demonstrates contempt for the Court's Scheduling Order.** |
| 04-08-10 | Dkt. 330 | Stilley reply to 328.  Complaints of theory switching, refusal to commit or make findings.  Failure to set forth facts required by United States v. Dazey, 403 F.3d 1147, 1177 (10th Cir. Okla. 2005). |
| 04-09-10 | Dkt. 331 | Court order denying 326 Stilley motion to continue sentencing. **Stilley has enough information.** |

| 04-09-10 | Dkt. 332, pg. 6 | Government reply to Springer's sentencing memorandum (321).<br><br>As fully explained in the United States Sentencing Memorandum, Defendant Springer's conviction on Count 4, tax evasion with respect to 2005, ==establishes that the trial jury found that Defendant Springer had no intent to repay Mr. Turner== when he induced Mr. Turner to wire $250,000 to Defendant Stilley's IOLTA account. (Emphasis added) |
|---|---|---|
| 04-21-10 | Sent. TR 10 | 13 And then with respect to Mr. Miller, his testimony will<br>14 primarily be to summarize the net consequences of the<br>15 additional tax -- of the additional income items and then<br>16 multiply the result by 20 percent, because under the United<br>17 States Sentencing Guidelines, where a defendant does not file a<br>18 return ==and a better estimate is not readily calculable==, that is<br>19 the basis for a tax harm in this case. |
| 04-21-10 | Sent. TR 32 | BRIAN SHERN - DIRECT BY MR. O'REILLY<br>.... 1157 and 1158 are ==transcripts of the defendants'==<br>==23 testimony==; I don't think we need to move those into evidence. |
| 04-21-10 | Sent. TR 35 | (Court speaking from the bench)<br>......   But even though<br>19 the Rules of Evidence don't apply, ==the rules of common sense do==<br>==20 apply==, so the further we get out on that hearsay limb, the less<br>21 likely it is to have any impact on my evaluation of the matter,<br>22 even though it's admissible.<br>(A real gem of practical wisdom that the government would have done well to accept.) |
| 04-21-10 | Sent. TR 49 | **BRIAN SHERN - CROSS BY MR. SPRINGER**<br>17 Q. As you stand here today, did ==James Lake== not file a tax<br>18 return for the year 2000 by April 15, 2001?<br>19 A. Did he not file?<br>20 Q. Did he or did he not?<br>==21 A. I'm not for certain whether he did or didn't. I know==<br>==22 there was a -- the transcript of his account for 2000 shows a==<br>==23 restitution payment of -- and that is what we included in our==<br>==24 calculations, I believe.==<br>==25 Q. Restitution payment?==<br>==49== |

| 04-21-10 | Sent. TR 50 | BRIAN SHERN - CROSS BY MR. SPRINGER<br>1 A. Yes.<br>2 Q. Which would be derived from what? Where would restitution<br>3 payment come from in the IRS records, if you know?<br>4 A. It would have been from his -- the tax violations that he<br>5 committed.<br>6 Q. **Would it be from the tax returns that he filed as a**<br>7 **condition of his plea agreement?**<br>8 A. **More than likely,** yes. |
|---|---|---|
| 04-21-10 | Sent. TR 52 | BRIAN SHERN - CROSS BY MR. SPRINGER<br>1 THE COURT: Mr. Springer asked some questions of<br>2 Mr. Shern that -- from which I inferred, perhaps, that<br>3 Mr. Springer thinks that the government is including a tax loss<br>4 attributable to Mr. Lake in its tax loss calculations for<br>5 Mr. Springer, and my reading of your sentencing memorandum<br>6 indicates that, aside from the defendants themselves, the<br>7 government seeks to attribute tax losses to Mr. Springer<br>8 relating only to Patrick Turner and Eddy Patterson. And my<br>9 question was --<br>10 MR. O'REILLY: Actually, Your Honor, in the<br>11 government's exhibits, which is 1177, we did include the 1,000<br>12 -- the 176,000 that Mr. Springer is discussing as attributable<br>13 to him, because Mr. Lake, our theory, is being encouraged by<br>14 both Mr. Springer and Mr. Stilley to continue to not file a tax<br>15 return or pay taxes for the year 2000, so Mr. Springer is<br>16 correct in his understanding of the government's position.<br>17 THE COURT: Okay. Except that I've heard on cross<br>18 that maybe he may well have filed for 2000.<br>19 MR. O'REILLY: I'll try to rehabilitate the witness.<br>20 THE COURT: Okay. Well, proceed. |
| 04-21-10 | Sent. TR 80 | BRIAN SHERN - CROSS BY MR. SPRINGER<br>4 Q. Okay. So how is it, then, that you attribute Mr. Turner<br>5 not filing a tax return or paying tax in '99, 2000, 2001, 2002<br>6 or 2003 if he didn't even know me?<br>7 A. I don't attribute him not filing a tax return to you, just<br>8 the money that he hid in Mr. Stilley's Interest on Lawyers<br>9 Trust Account was -- you assisted him in evading the payment of<br>10 those taxes that he already owed. |

| 04-21-10 | Sent. TR 82 | BRIAN SHERN - CROSS BY MR. SPRINGER<br>5 Q. Okay. And now you're saying that he actually was evading<br>6 the payment of his taxes by borrowing the money on the house<br>7 and then sending it for services?<br>8 A. I think he was under the impression that he was going to<br>9 send that money through Stilley's IOLTA account or put it into<br>10 Stilley's IOLTA account **so it would make the appearance that it**<br>**11 looked like an attorney retainer and the IRS couldn't seize**<br>**12 that money that was owed to them**, and then you spent the<br>13 money. So on one hand, he was hiding the money, but then you<br>14 took it and spent it, and so it's -- <mark>you assisted him in hiding</mark><br><mark>15 his income, as well as it's income to you because I think it</mark><br><mark>16 pretty much was set out in trial and the jury concluded that</mark><br><mark>17 that was income to you and I don't think anybody ever --</mark><br><mark>18 anybody ever thought you would pay it back.</mark> |
|---|---|---|
| 04-21-10 | Sent. TR 83 | 8 THE COURT: Mr. Springer, the government's theory as<br>9 to Mr. Turner, as I understand it, <mark>is not that the deposit into</mark><br><mark>10 the IOLTA account was evasion of taxes, per se, but that it was</mark><br><mark>11 -- had the effect of impairing the government's collection</mark><br><mark>12 ability,</mark> so on that basis the objection will be overruled -- I<br>13 mean, sustained. We'll go on to the next question. |
| 04-21-10 | Sent. TR 84-85 | 23 THE COURT: As a general proposition, the question of<br>24 whether the funds you received were for services rendered has<br>25 been resolved against you by the verdicts of the jury and<br>Page 84<br>BRIAN SHERN - CROSS BY MR. SPRINGER<br>1 you're bound by that. I'm bound by that.<br>2 If you want to address specific items as it relates to tax<br>3 loss determination, then we'll take that one step at a time.<br>4 But <mark>the overarching question of whether the funds that you</mark><br><mark>5 received over the years that were involved in this case were</mark><br><mark>6 received by you for services rendered has been conclusively</mark><br><mark>7 resolved against you by the jury verdict.</mark> |

| 04-21-10 | Sent. TR 94 | 6 Q. Okay. Do you remember the testimony of Mr. Burt,<br>7 Mr. Turner, and Mr. Stumpo?<br>8 A. Yes.<br>9 Q. Relevant to the conference calls with IFC?<br>10 A. Yes.<br>11 Q. Do you remember what each one of them told the jury I told<br>12 everybody on that conference call to do?<br>13 A. I think some of them testified that you told them to file<br>14 their tax returns.<br>15 Q. And that ==IFC had misled them==; do you remember that<br>16 testimony?<br>17 A. ==Yes.==<br>**18 Q. Did you ever interview anybody who attended the IFC**<br>**19 conference calls where I advocated to them stay their course,**<br>**20 violate the Internal Revenue laws, and continue to use the**<br>**21 trust that IFC had set up for them?**<br>**22 A. No.** |
| 04-21-10 | Sent. TR 124 | 8 BY MR. STILLEY:<br>9 Q. Mr. Shern, you realize that the government has the burden<br>10 of proof in this proceeding to the preponderance of the<br>11 evidence, correct?<br>12 A. Yes.<br>==13 Q. And that means that you have to have some credible==<br>==14 evidence to prove all your propositions, correct?==<br>**15 A. Yes.** |
| 04-21-10 | Sent. TR 137-138 | 22 Q. (BY MR. STILLEY) Do you know if there was more than one<br>23 unlawful conspiracy involved? Did you see evidence of more<br>24 than one unlawful conspiracy?<br>25 A. **I think the conspiracy was just to defraud the United**<br>137<br>BRIAN SHERN - CROSS BY MR. STILLEY<br>1 **States. I think there's just one.** |
| 04-21-10 | Sent. TR 138 | BRIAN SHERN - CROSS BY MR. STILLEY<br>8 THE COURT: Well, does -- let me ask this: Does the<br>9 government agree with -- in general, at least, with my comment<br>10 that I just made a minute ago about Guideline 1B1.1 **and the**<br>**11 need for sentencing purposes to determine the scope of the**<br>**12 jointly-conducted criminal activity to the extent that we are**<br>**13 going to hold one defendant accountable for matters that**<br>**14 directly relate to the other defendant?**<br>15 MR. O'REILLY: Absolutely, Your Honor. |

| | | |
|---|---|---|
| | | BRIAN SHERN - CROSS BY MR. STILLEY<br>7 Q. Was that a bad way to obtain money from Mr. Roberts -- or<br>8 Dr. Roberts?<br>9 A. I think the legal representation that you gave Mr. Roberts<br>10 was -- you knew was completely false and it wasn't going to be<br>11 effective, but yet you still put forward those defenses.<br>12 Q. Okay. So what you're saying, then, is that Oscar<br>13 Stilley's defense of Dr. Roberts was part of the conspiracy<br>14 too, correct?<br>15 A. Yes. |
| 04-21-10 | Sent. TR 143 | BRIAN SHERN - CROSS BY MR. STILLEY<br>14 Q. So -- but surely you don't think commentary ten years<br>15 previously would be part of the conspiracy, the single<br>16 conspiracy, do you?<br>17 A. I think if you -- if you knew -- offered him advice in<br>18 1990 and you -- he relied on your advice and then he went to<br>19 trial in 2000 and you represented that same defense to him<br>20 through the help of Mr. Springer, yes.<br>21 Q. So you think that words uttered by Oscar Stilley ten<br>22 years -- or approximately ten years before he met Lindsey<br>23 Springer are, nevertheless, part of a conspiracy with Lindsey<br>24 Springer?<br>25 A. Not with Lindsey Springer, but -- I don't know. |
| 04-21-10 | Sent. TR 144 | BRIAN SHERN - CROSS BY MR. STILLEY<br>18 Q. So an act in 1990 couldn't possibly have been an overt act<br>19 in support of the conspiracy, correct?<br>20 A. Correct. |

| | | |
|---|---|---|
| 04-21-10 | Sent. TR 146-147 | BRIAN SHERN - CROSS BY MR. STILLEY<br>23 Q. So it would have had to be an existing conspiracy that<br>24 Oscar Stilley joined, correct?<br>25 A. Yes.<br>146<br>1 Q. Okay. Now, based on your research, what did you determine<br>2 would be the scope of the specific agreement that Oscar Stilley<br>3 joined?<br>4 A. What do you mean by when you say "scope"?<br>5 Q. What did Oscar Stilley agree to do that was wrong, that<br>6 was illegal?<br>7 A. To come in and help Lindsey Springer bilk money from all<br>8 these clients and to hide it.<br>9 Q. Anything else?<br>10 A. No. |
| 04-21-10 | Sent. TR 150 | BRIAN SHERN - CROSS BY MR. STILLEY<br>15 THE WITNESS: No, I didn't give you the amounts that<br>16 you paid or that you paid to have Mr. Lewis do work for you,<br>17 because, yes, we could have identified various expenditures<br>18 that you had made that we -- that appeared to be business<br>19 expenses, but it still wouldn't have got us at an accurate<br>20 number, and so we used the 20 percent method, **because a more<br>21 accurate way of determining it was -- wasn't available.**<br>22 Q. (BY MR. STILLEY) But it wasn't available, really, because<br>23 you didn't try, correct?<br>24 A. No, I don't believe that is true. ... |
| 04-21-10 | Sent. TR 149-153 | Sentencing Transcript 149-153 contain questions and answers to demonstrate that the government didn't attempt to remove amounts held in Stilley's IOLTA account and disbursed for tax payments and other payments on behalf of the client. |

| 04-21-10 | Sent. TR 156 | BRIAN SHERN - CROSS BY MR. STILLEY<br>1 MR. STILLEY: My point is he is trying to attribute<br>2 monies -- losses to the defendants on the grounds of the<br>3 subjective thoughts of a third person's mind. And as soon as I<br>4 get that information, I want to know if he has any information<br>5 that -- whereby that Oscar Stilley should have known subjective<br>6 information within such a person's mind.<br>7 THE COURT: Are you going to be getting down to some<br>8 specific instances to address?<br>9 MR. STILLEY: Well, I want -- I think I can get him<br>10 to admit that he doesn't have any such evidence.<br>11 THE COURT: Sustained. |
|---|---|---|
| 04-21-10 | Sent. TR 163, 164 | BRIAN SHERN - CROSS BY MR. STILLEY<br>17 Q. You don't have any reason to believe that Oscar would have<br>18 disregarded an instruction from Mr. Turner to pay the IRS with<br>19 money that Oscar Stilley held?<br>20 A. No.<br>21 Q. The rational reason for putting $250,000 in the account<br>22 would be to have enough money to prepare returns, get<br>23 everything paid and get everything all cleaned up, correct?<br>24 A. Are you asking me if that's why he transferred the<br>25 $250,000 to you?<br>163<br>1 Q. No, I'm asking you if that's the rational basis for<br>2 putting a substantial amount of money in Oscar Stilley's IOLTA<br>3 account.<br>4 MR. O'REILLY: Calls for speculation; objection.<br>5 THE COURT: Sustained. |
| 04-21-10 | Sent. TR 164-165 | BRIAN SHERN - CROSS BY MR. STILLEY<br>24 Q. Can you tell this Court what Oscar Stilley should have<br>25 done differently so that he would not be charged with this<br>164<br>1 substantial sum of money as being relevant conduct?<br>2 A. Not helped Mr. Springer hide Mr. Turner's $250,000 by<br>3 going through your account. Just walk away from the<br>4 transaction. |
| 04-21-10 | Sent. TR 165 | BRIAN SHERN - CROSS BY MR. STILLEY (part of answer by Shern)<br>22 So there's two separate crimes being committed here: One<br>23 is tax evasion on the $250,000 that Mr. Springer received as<br>24 income; and, two, is assisting Mr. Turner in evading the<br>25 payment of his taxes. |

| | | |
|---|---|---|
| 04-21-10 | Sent. TR 167-168 | BRIAN SHERN - CROSS BY MR. STILLEY<br>24 Q. (BY MR. STILLEY) Okay. Let me ask a little more open-<br>25 ended question. Do you know why that Mr. Turner sent money --<br>167<br>1 sent $250,000 to Oscar Stilley's IOLTA account?<br>2 A. Do you want me to tell you what I think Mr. Turner thought<br>3 he was doing or what I think the money was?<br>4 Q. No, I want you to say what -- that you can testify about<br>5 based on either your personal knowledge or a basis of<br>6 information that is credible and reliable that you can<br>7 explain.<br>8 A. Well, considering the fact that as soon as the money went<br>9 into the account and it was spent, I think Mr. Turner just --<br>10 he may have thought he was transferring that money over, which<br>11 I think he testified to as a loan in case a criminal<br>12 investigation started investigating him and pursuing a criminal<br>13 prosecution of him, **that he was going to hire you to perform**<br>**14 services for him.** At the other end, I don't think Mr. Springer<br>15 had any intention of doing anything but spending that money on<br>16 himself. |
| 04-21-10 | Sent. TR 169 | BRIAN SHERN - CROSS BY MR. STILLEY<br>18 Q. (BY MR. STILLEY) Do you have any information to suggest<br>19 that Oscar Stilley would -- should not have believed that the<br>20 money was a bona fide loan?<br>21 A. I think the actions that happened afterwards, where you<br>22 transferred the money immediately out to purchase a motor home,<br>23 suggest that you didn't think it was a loan. |
| 04-21-10 | Sent. TR 172 | BRIAN SHERN - CROSS BY MR. STILLEY<br>17 Pass the witness.<br>18 THE COURT: Redirect?<br>**19 MR. O'REILLY: No questions, Your Honor.**<br>(Included to show that Mr. O'Reilly did not "rehabilitate" Mr. Shern<br>as he indicated at page 52 of the Sentencing Transcript.) |
| 04-21-10 | Sent. TR 182 | BRIAN MILLER - DIRECT BY MR. O'REILLY<br>8 A. No, Dr. Roberts is not included in Mr. Springer's.<br>9 Q. Why not?<br>10 A. Based on the testimony of Mr. Shern, Mr. Springer was not<br>11 really involved at that time with Dr. Roberts.<br>12 Q. And is that also consistent with the testimony of<br>13 Dr. Roberts at trial?<br>14 A. Yes. |

| 04-21-10 | Sent. TR 186 | BRIAN MILLER - DIRECT BY MR. O'REILLY<br>11 Q. Similarly, **did you do the same thing with the State of**<br>**12 Arkansas for Mr. Stilley**?<br>13 A. Yes, we did.<br>14 Q. So with respect to both of these, it's an **estimate of what**<br>**15 their state tax loss would be based upon the tax loss computed**<br>**16 for the federal tax loss**? |
|---|---|---|
| 04-21-10 | Sent. TR 188 | BRIAN MILLER - DIRECT BY MR. O'REILLY<br>13 Q. With respect to Mr. Stilley, we have no tax computations<br>14 predating the year 2000; is that correct?<br>15 A. That's correct.<br>**16 Q. Do you know why?**<br>**17 A. To my knowledge, there was never any tax assessed for**<br>**18 Mr. Stilley in those prior years.** |
| 04-21-10 | Sent. TR 189 | 13 Q. Did you have any basis upon which to reach a more accurate<br>14 calculation of Mr. Stilley's taxes?<br>15 A. No, I didn't.<br>(Included to prove that the government knows that the use of the 20%<br>of gross income figure is not allowable when the actual figures are<br>known and presented in court.) |
| 04-21-10 | Sent. TR 190 | 14 A. Mr. Stilley had been assessed some additional tax by the<br>15 IRS for the year 2002, I believe. When we reflected further on<br>16 that, we realized that we may be reporting or asked -- we may<br>17 be "double-dipping," I guess is the common way to put it, by<br>18 assessing or calculating the gross income here for 2002 and<br>19 then us using that prior year tax for 2002 also, so we backed<br>20 out the previously assessed tax for '02, requiring us to adjust<br>21 the exhibit a little bit. |
| 04-21-10 | Sent. TR 207 | 23 Q. And do you remember what the services were that you said I<br>24 provided Mr. Patterson?<br>25 A. I don't believe you specifically asked me if I was -- if I<br>206<br>BRIAN MILLER - CROSS BY MR. SPRINGER<br>1 thought it was for services rendered.<br>2 Q. You just determined that it was. I mean --<br>**3 A. It was either for services rendered or it was in pursuit**<br>**4 of your ministry. And, to me, you know, it doesn't matter;**<br>**5 it's income either way.**<br>6 Q. Right. I forgot about that with you. |

| 04-22-10 | Sent. TR 223 | BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER<br>(Discussing the claimed liability of James Lake)<br>**3 Q. In other words, even if he had filed a tax return with the**<br>**4 176,000 on there, you would still be saying the 176,000 should**<br>**5 be a tax loss attributable to me?**<br>**6 A. Off the top of my head, yes.**<br>7 Q. I'm trying to understand how you said that. You heard<br>8 Mr. Shern yesterday talk about some people I told to file tax<br>9 returns and other people I told I didn't file tax returns;<br>10 remember that?<br>11 A. Yes.<br>**12 Q. If I told somebody to file a tax return and they filed a**<br>**13 tax return, should I be held liable for the amount of money**<br>**14 that they owe on that tax return?**<br>**15 A. Off the top of my head, I wouldn't think so.** |
|---|---|---|
| 04-22-10 | Sent. TR 227 | BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER<br>10 Q. Okay. Now, did you know that the reason why Mr. Turner<br>11 filed these tax returns for '99, 2000, 2002, and 2003 was<br>12 because Lindsey Springer -- do you remember that testimony?<br>13 <u>A. I believe so.</u><br>14 Q. So here we have a person who actually files the tax return<br>15 because Lindsey Springer tells him to do it and **you still found**<br>**16 a way to put it under third-party relevant tax loss**. And just<br>17 a minute ago, didn't you just say if I told a person to file a<br>18 tax return, that that money would not be tax loss to Lindsey<br>19 Springer?<br>20 MR. O'REILLY: Objection. Argumentative, compound<br>21 question. |
| 04-22-10 | Sent. TR 228 | BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER<br>**12 THE COURT:** So that's for '99, 2000, '02 and '03.<br>13 My understanding is -- and this -- I'm just going to ask<br>14 Mr. O'Reilly to either very briefly say I'm right or wrong. **My**<br>**15 understanding is that the theory by which the government seeks**<br>**16 to attribute a loss relating to Mr. Turner to both defendants**<br>**17 is not so much as a result of any failure to file as it is a**<br>**18 result of what I will call the deposit of the money in the**<br>**19 IOLTA account with the effect that that had on the government's**<br>**20 ability to collect what was owed; is that correct?**<br>**21 MR. O'REILLY: Yes, Your Honor.** |

| | | |
|---|---|---|
| 04-22-10 | Sent. TR 230 | BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER<br>16 Q. But the object of the conspiracy wasn't to represent<br>17 somebody, right? That wasn't the object. It was to defraud<br>18 the IRS's lawful functions, right?<br>**19 A. I guess so, to defraud the IRS and to make a lot of**<br>**20 money.** |
| 04-22-10 | Sent. TR 285 | LINDSEY SPRINGER DIRECT EXAMINATION<br>12 THE COURT: Let me make sure I understand a point you<br>13 made with respect to **Mr. Turner earlier today. When was the RV**<br>**14 actually repossessed?**<br>**15 MR. SPRINGER: April 6th is when he and his son came**<br>**16 down and picked it up and drove it back to Michigan.** |
| 04-22-10 | Sent. TR 288 | LINDSEY SPRINGER DIRECT EXAMINATION<br>12 THE COURT: Perhaps you didn't understand my<br>13 question. My question was very simple: **To what extent did**<br>**14 Mr. Stilley have knowledge of this letter or its contents at**<br>**15 the time that it was provided to Mr. Hawkins?**<br>**16 MR. SPRINGER: Fully aware of it**.<br>(Question regarding Stilley's knowledge of Exhibit 204 when sent.) |
| 04-22-10 | Sent. TR 293 | LINDSEY SPRINGER CROSS EXAMINATION BY MR. O'REILLY<br>6 A. The ones I did concede to, I did concede based upon the<br>7 government's, you know, theory at trial. I would agree that<br>8 they are gross income.<br>9 Q. Why the caveat about the "government's theory at trial"?<br>10 A. Well, **for purposes of appeal, I'm maintaining that it**<br>**11 should have been at least a quid pro quo proof** or -- there's a<br>12 case at the Tenth Circuit that says that somebody could give<br>13 you a certain amount of money, you could do something for it<br>14 but not earn the whole amount of money, and then the rest of<br>15 the money could be considered to be a gift. And it was the<br>16 Church of Scientology case from the Tenth Circuit. |
| 04-22-10 | Sent. TR 299 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>19 And under the bank deposits method of proof, this is --<br>20 **when a better method is not available** is, you know,a very<br>21 adequate, ample way of calculating the gross income of the<br>22 defendants from which 20 percent under the United States<br>23 Sentencing Guidelines is how you reach the **estimated tax loss.** |

| 04-22-10 | Sent. TR 300 - 301 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>23 I'll start with Dr. Roberts. And, again, as the Court<br>24 noted, **Dr. Roberts is only attributed to Mr. Stilley. In the**<br>**25 early 1990s -- I believe the testimony at trial was, in 1990**,<br>300<br>1 Dr. Roberts was one of a number of people who questioned the<br>2 validity of the tax laws. **And he went to who he understood to**<br>**3 be an expert on the tax laws, a lawyer by the name of Mr. Oscar**<br>**4 Stilley, and asked him if he was correct.** Hey, I don't want to<br>5 file a tax return.<br>6 And Mr. Stilley, instead of setting him straight,<br>**7 Mr. Stilley told him, no, you don't -- you don't have to file.**<br>8 He gave counsel that was followed by Dr. Roberts that led to<br>9 Dr. Roberts willfully failing to file tax returns for a series<br>10 of years. |
|---|---|---|
| 04-22-10 | Sent. TR 301-302 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>21 THE COURT: Well, when -- when was this advice or<br>22 counsel given by Mr. Stilley to Dr. Roberts, vis-a-vis, the<br>23 years that the tax liability would have arisen?<br>24 MR. O'REILLY: Before, Your Honor. **It was in 1990 or**<br>**25 1991**, based on **Dr. Roberts' testimony at trial**. The tax years<br>301<br>1 that we're talking about for Dr. Roberts are --<br>2 If I could have Government's Exhibit 1177, page 2.<br>3 The tax years with respect to Dr. Roberts are 1992, 1993,<br>4 1994, and 1995; all tax losses occurring after receiving the<br>5 advice and counsel of Mr. Stilley. |
| 04-22-10 | Sent. TR 302 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>6 With respect to Mr. Patterson. Together, Mr. Stilley and<br>7 Mr. Springer met with and spoke with Mr. Patterson, who was<br>8 already a non-filer. He had not filed since the mid to -- the<br>9 mid-1990s. **That conduct is not attributable to the defendants;**<br>**10 they hadn't met him yet.** |

| 04-22-10 | Sent. TR 304-305 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>18 THE COURT: So the government's position is that once<br>19 a tax liability becomes delinquent by virtue of the advice of a<br>20 defendant, once a third-party's tax liability becomes<br>21 delinquent, that perfects the tax loss, even though that tax<br>22 liability is ultimately satisfied?<br>23 MR. O'REILLY: If it becomes **willfully delinquent,**<br>**24 Your Honor.** For example, if Mr. Patterson had, you know, filed<br>25 an extension request in a letter saying, I have no money, I<br>304<br>1 will pay you as soon as I can, there was no evidence of willful<br>2 failure to file, that would be a different question. |
|---|---|---|
| 04-22-10 | Sent. TR 305 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>7 If instead the situation -- i**f there was no evidence that**<br>**8 Mr. Patterson had willfully not filed his return and willfully**<br>**9 not paid, again, that would not be a tax loss, even if there**<br>**10 was a tax, because it -- it would be a criminal question. Just**<br>**11 the mere existence of a tax liability is not -- it's not the**<br>**12 government's position that the mere existence of a tax**<br>**13 liability by itself** -- |
| 04-22-10 | Sent. TR 306 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>2 MR. O'REILLY: Absolutely, Your Honor. In fact,<br>3 **under the guidelines, it speaks to that, that you cannot cure a**<br>**4 tax deficiency by a subsequent payment.** |
| 04-22-10 | Sent. TR 308 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>**17 MR. O'REILLY: Your Honor, the tax loss with which we**<br>**18 have attributed Mr. Springer and Mr. Stilley as relates to**<br>**19 Mr. Lake is only for the year 2000, not his prior willful**<br>**20 failure to files.** |
| 04-22-10 | Sent. TR 309 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>6 THE COURT: **Speaking of transcripts, has Mr. Lake's**<br>**7 trial testimony been transcribed?**<br>**8 MR. O'REILLY: No, Your Honor.** |

| 04-22-10 | Sent. TR 310 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>13 MR. O'REILLY: **But as was brought out both at trial**<br>**14 and here in the sentencing hearing, Mr. Turner sought to hide**<br>**15 that money and prevent the IRS from collecting on those taxes.**<br>16 To that end, he borrowed -- he took mortgages against two<br>17 properties that he owed so that there would be no interest --<br>18 no equity interest for the IRS to be able to attach, and he<br>19 then took that money and put it where he thought -- **he hid by**<br>**20 making it look like a payment to Mr. Stilley for legal**<br>**21 representation, and this was done at the encouragement and**<br>**22 urging of Mr. Springer.**<br>**23 It's just textbook evasion of payment. There was a tax**<br>**24 due and owing, and in an attempt to evade the payment of that**<br>**25 tax, Mr. Turner hid the money by borrowing against two houses** |
|---|---|---|
| 04-22-10 | Sent. TR 311 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>12 And as Mr. Turner testified, his understanding was that<br>13 they were going to keep it safe for him, that Mr. Springer was<br>14 going to keep this money safe, so that if he needed a lawyer --<br>15 **because he was fearing that the IRS will come grab it** -- that<br>16 it would be available for him. |
| 04-22-10 | Sent. TR 312 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>7 THE COURT: Okay. Well, now, Mr. Springer says that<br>8 whatever might have been argued about the bona fides of that<br>9 transaction, based on the facts as they were, until earlier<br>10 this month, **the bona fides are proved up by the repossession of**<br>**11 it, which shows that it was a bona fide lien and that it was**<br>**12 not a criminal source transaction at all, because the**<br>**13 repossession of it shows that it was intended to be just**<br>**14 exactly what Mr. Springer asserts that it was.** What do you say<br>15 to that?<br>16 MR. O'REILLY: Your Honor, **I think actually this is**<br>**17 the most recent act of the conspiracy.** The IRS is attempting<br>18 to collect on the debt of the tax liabilities for '90 through<br>19 '95; to that extent, they have actually foreclosed on his house<br>20 and likely would have been seeking to seize the RV.<br>21 This -- the fact that this occurred did not -- no transfer<br>22 occurred until April of this year, **two weeks ago, immediately**<br>**23 before the IRS is attempting to seize property to satisfy**<br>**24 Mr. Springer's tax liabilities.** I think that's extremely<br>25 telling. ... |

| | | |
|---|---|---|
| 04-22-10 | Sent. TR 313 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>3 THE COURT: Now, this is apropos of nothing, but does<br>4 **Mr. Turner** still have some tax liability?<br>5 MR. O'REILLY: Yes, he does, Your Honor. In fact, he<br>6 recently, as I believe was noted in the government's sentencing<br>7 memorandum, **he recently lost in tax court, and who knows, he**<br>**8 may use this to help pay that**. |
| 04-22-10 | Sent. TR 318 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>6 MR. O'REILLY: Your Honor, actually, we do believe<br>7 this is a conspiracy to defraud the Internal Revenue Service.<br>8 At trial, the primary focus was directed at the tax liabilities<br>9 with respect to Mr. Springer.<br>10 In part, Mr. Stilley's tax liabilities received only<br>11 cursory mention because he's from Arkansas, there was no venue<br>12 here with respect to Mr. Stilley's tax obligations. He was not<br>13 charged in this district with his own tax evasion. |
| 04-22-10 | Sent. TR 323-324 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>16 MR. O'REILLY: Yes, Your Honor. And our position is,<br>17 is that **given the lack of any other available information that**<br>**18 the calculations made by Revenue Agent Miller are reasonably**<br>**19 accurate assessments of the tax against them** and they're just<br>20 -- the records that Mr. Springer spoke of were solely of some<br>21 expenses, and as Mr. Miller indicated in his cross-examination,<br>22 I think he spoke specifically with respect to Mr. Stilley, but<br>23 I think it would apply to both, if we had all the information,<br>24 the net taxes would actually likely be higher. But this is<br>25 simply taking 20 percent of the gross income figure, which is<br>323<br>1 under the Sentencing Guidelines is where we need to be for<br>2 sentencing purposes, **it's the best figure we've got**. And<br>3 restitution is mandatory. |
| 04-22-10 | Sent. TR 324 | (MR. O'REILLY ARGUMENT REGARDING TAX LOSS)<br>14 MR. O'REILLY: I believe the presentence<br>15 investigation report only referenced the defendants' own tax<br>16 losses. **I think the Court could, but we are actually satisfied**<br>**17 with the presentence investigation report's recommendations,**<br>18 Your Honor. We did not object to them, and -- which is<br>19 significant. **That does not include the third-parties' tax**<br>**20 losses'.** |

| 04-22-10 | Sent. TR 328 - 329 | (MR. SPRINGER ARGUMENT REGARDING TAX LOSS)<br>24 It was something that was quite unique when I sat down in<br>25 1999 with Mr. Roberts and Mr. Stilley. **We never had a**<br>**328**<br>**1 conversation about whether Mr. Stilley files tax returns. And**<br>**2 I never heard Mr. Stilley tell Mr. Roberts he didn't have to**<br>**3 file tax returns. Never one time.** If I had heard that, I<br>4 would have given the same response I've given every time, which<br>5 was they need to file those returns if they're earning gross<br>6 income. And it was almost like I made them angry every time I<br>7 said it. It wasn't something they wanted to hear. |
|---|---|---|
| 04-22-10 | Sent. TR 339 | (MR. SPRINGER ARGUMENT REGARDING TAX LOSS)<br>...  But if I kept it, then I stole<br>8 it. If I let Mr. Turner come get it without my standing in his<br>9 way, committed an act of tax evasion, so says Mr. O'Reilly. |
| 04-22-10 | Sent. TR 353 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>20 **Due process would not allow the Court to take a theory**<br>**21 that was raised for the first time at a sentencing hearing and**<br>**22 expand that and flesh that out in order to make findings of**<br>**23 losses with which to enhance or to drive a sentence on that**<br>**24 defendant.** |
| 04-22-10 | Sent. TR 358 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>17 of that: There's the $250,000, and I think that the Court is<br>18 -- is fairly well-briefed on that, **that the $250,000 does not**<br>**19 represent materially a depletion of the assets of Mr. Turner.**<br>20 It's still available for the IRS. I think that that has been<br>21 adequately addressed. |

| 04-22-10 | Sent. TR 359 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>12 I don't see how that any other count could work for this,<br>13 partly to attribute liability to Oscar Stilley, **partly because**<br>**14 of the reasons that I have already briefed this Court, I think**<br>**15 it was December 9 of 2009, in my post-trial motion for judgment**<br>**16 as a matter of law and for new trial**.<br>17 The law in Arkansas, it's undisputable that a lawyer who<br>18 is directed by his client to disburse money to another person<br>19 has to disburse the money. It's not an option. It is an<br>20 ethical violation. It is a tort of conversion. It is probably<br>21 a crime for a lawyer to refuse to give money to the person who<br>22 is entitled to the money promptly.<br>**23 And, Your Honor, I would respectfully contend that trying**<br>**24 to hold a lawyer liable because they did something that the law**<br>**25 and ethical rules require, would be a very bad idea**. It would |
|---|---|---|
| 04-22-10 | Sent. TR 360 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>1 set a new precedent. It would chill the activities of<br>2 attorneys. It would put attorneys in the place of deciding<br>3 which rule or which law do I break.<br>4 **I've not heard any testimony from anyone to the effect**<br>5 **that Oscar Stilley had some other reasonable option and could**<br>6 **have followed that reasonable option but he did not**.<br>7 And for that reason, I would respectfully submit that<br>8 Patrick Turner's taxes, which are still -- apparently still<br>9 being litigated or perhaps that litigation is closed, but there<br>10 was a good-faith effort on the part of the client to do what he<br>11 thought he had a legal right to do. There was no evidence that<br>12 Oscar Stilley, in his mind, had any evil knowledge or the basis<br>13 for doing anything differently or any basis for reporting the<br>14 client's conduct to any of the authorities.<br>15 We know, it's a well-established matter, that there's<br>16 attorney-client confidentiality. It would have to be a really<br>17 egregious thing that would even authorize an attorney to breach<br>18 his own client's confidentiality and go to some other authority<br>19 and tell that authority that the information gained in<br>20 confidence from that client.<br>21 Allowing the government to pile on with this and use this<br>22 as tax loss would be in conflict and inconsistent with very<br>23 important legal principles in our society. |

| 04-22-10 | Sent. TR 363-364 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>21 **I am forced to roam and try to figure out what they did**.<br>22 And if I go down one path, then the government can get up here<br>23 afterwards and say, oh, he picked the wrong path, it's this<br>24 other path, and that is why Oscar Stilley should be held liable<br>25 or tagged with these amounts and that these should be claimed<br>363<br>1 as tax losses. |
|---|---|---|
| 04-22-10 | Sent. TR 364-365 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>21 And I would respectfully contend -- well, I've already<br>22 stated the reasons that the lawyer should not be punished for<br>23 doing something he didn't have any other opportunity to -- he<br>24 didn't have an opportunity to change or do differently, and it<br>25 -- **there's no evidence in the record that I can see from which**<br>**364**<br>**1 a finding could be made that Oscar Stilley would have had any**<br>**2 knowledge about such a plan even if it did exist. And there**<br>**3 has to be some evidence.**<br>(Discussion of Turner transaction) |
| 04-22-10 | Sent. TR 368 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>5 **Oscar Stilley had a legal duty to do what he did and simply did**<br>**6 the job that he was required to do, and nobody stated any other**<br>**7 way that Oscar could have handled his affairs so that he would**<br>**8 escape this conduct or this enhancement.** |
| 04-22-10 | Sent. TR 371-372 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>18 We simply don't have that. We cannot get there no matter<br>19 which choice is taken. **There is an insurmountable hurdle for**<br>**20 the government no matter what road they go down.**<br>**21 I would respectfully contend that the reason the**<br>**22 government was not specific in their legal theories and their**<br>**23 factual basis is because they didn't want to pin themselves**<br>**24 down. They wanted to leave themselves open so that they could**<br>**25 put their witness on the stand and have him give a theory that**<br>371<br>1 **was totally inconsistent with matters stated previously**. |

| 04-22-10 | Sent. TR 379 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>14 MR. O'REILLY: Yes, Your Honor. And based upon<br>15 Dr. Roberts' testimony, it appears that he was also counseling<br>16 others. The fact that we **only have Dr. Roberts as the one that**<br>**17 we have identified** does not change the fact that it was part of<br>18 a common -- Mr. Stilley's common scheme. The fact that he<br>19 didn't join forces and conspire with Mr. Springer until 2000<br>20 does not change that fact.<br>21 **THE COURT: Has Roberts' testimony been transcribed?**<br>**22 MR. O'REILLY: No, Your Honor.**<br>23 THE COURT: Okay. I appreciate your answer to that<br>24 question. |
|---|---|---|
| 04-22-10 | Sent. TR 381-382 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>11 THE COURT: Do you take issue with Dr. Roberts'<br>12 testimony in this courtroom that you told him that he had no<br>13 obligation to pay income taxes or file returns?<br>14 **MR. STILLEY: Your Honor, honestly, I would really**<br>**15 like to hear exactly what he said. Is that a possibility?**<br>16 THE COURT: **No.** What I just told you is _**pretty**_<br>_**17 close.**_<br>18 **MR. STILLEY: Well, Your Honor, I won't dispute what**<br>**19 he testified to from the stand.** I didn't think that it was<br>20 simply fair, and that's why I was really hoping I could get a<br>21 copy of the transcript at this point in time, but --<br>22 THE COURT: We're past that. **Both sides have had**<br>**23 ample opportunity to order a transcript.**<br>**24 Do you take issue with Dr. Roberts' testimony in which he**<br>**25 characterized you as quite gifted in legal and constitutional**<br>381<br>**1 issues?**<br>2 MR. STILLEY: No, I don't contest that. **I don't**<br>**3 recall if he said what his time frame was.** As for today, I<br>**4 would agree with him.** |

| 04-22-10 | Sent. TR 385 | (SENTENCING COLLOQUY)<br>4 MR. STILLEY: With respect to the past two days, I<br>5 don't have objections with the following provisos: Just as<br>6 Mr. Springer, I continue to urge all objections during this<br>7 proceeding and to maintain all arguments made in pleadings<br>8 prior to this proceeding, and specifically, but without<br>9 limitation, I continue to urge the lack of adequate notice to<br>10 prepare for the charges that I would have to meet -- or the<br>11 issues that I would have to meet today on the basis of what was<br>12 given to me by the probation department and the government,<br>13 and, number three, I would continue to urge -- or to argue that<br>14 my ability to order a complete record in this case for these<br>15 proceedings is not meaningful because of lack of funds.<br>16 Other than that, I have no objection to the procedure of<br>17 these proceedings.<br>18 THE COURT: Very well. On that last point, I urge<br>19 you to waste no time after we're through tomorrow with getting<br>20 the -- preparing the necessary paperwork, perhaps with the aid<br>21 of your standby counsel, to obtain a transcript at public<br>22 expense. |
| 04-22-10 | Sent. TR 389 | (MR. STILLEY ARGUMENT REGARDING TAX LOSS)<br>7 MR. SPRINGER: Yes, I have one request, Your Honor.<br>8 Is it the Court's intention to allow us to report once we're<br>9 sentenced? And if so or if not, would we be able to have an<br>10 appeal bond hearing tomorrow for the purposes of appeal?<br>11 I have, like, four cases that I just had to move all those<br>12 boxes, all the electronic media in all these cases, and I just<br>13 need to understand how I need to prepare all of that, and I<br>14 would need a little time to do that if the Court was not going<br>15 to allow an appeal bond.<br>16 THE COURT: I will hear you at the allocution stage<br>17 or even, if need be, thereafter on that score.<br>18 MR. SPRINGER: Thank you.<br>19 THE COURT: It is, again, subject to whatever you --<br>20 what you may have to say and what Mr. Stilley may have to say<br>21 and, for that matter, what the government may have to say. It<br>22 is likely that you will be remanded to custody tomorrow. |
| 04-23-10 | Sent. TR 399 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>8 With respect to Mr. Lake, I have reviewed the trial<br>9 testimony as taken by the reporter. The testimony of Mr. Lake<br>10 as it relates to Mr. Stilley is strong and convincing. |

| 04-23-10 | Sent. TR 401-402 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>11 Criminal tax violations were Mr. Stilley's way of life,<br>12 starting before the earliest year of the tax losses relating to<br>13 Dr. Roberts. Criminal tax violations are Mr. Stilley's way of<br>14 life to this day. **Early in his career as an unrepentant tax**<br>**15 cheat, Mr. Stilley began espousing the view, which he espoused**<br>**16 to Dr. Roberts, that Dr. Roberts had no obligation to pay**<br>**17 incomes taxes or to file a tax return.**<br>18 Dr. Roberts' testimony at trial persuades me that he found<br>19 Mr. Stilley to be a convincing source of tax counsel. Advice<br>20 to an individual earning significant income that he is not<br>21 obligated to comply with the tax laws is certainly<br>22 counterintuitive to any reasonably intelligent person, but that<br>23 sort of advice can nevertheless be attractive to a person who,<br>24 although intelligent, is at the same time fool enough to let<br>25 his beliefs be dictated by financial convenience rather than<br>401<br>1 logic. This is especially so when the advice is coming from an<br>2 individual who expresses himself with the *vehemence* that<br>3 characterizes Mr. Stilley's expression of his professed beliefs<br>4 about the law. |
| 04-23-10 | Sent. TR 404 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>2 From Mr. Springer's perspective, it was fraudulent in two<br>3 ways. It was fraudulent in that by parking this money in<br>4 Mr. Stilley's IOLTA account, Mr. Springer's **and Mr. Stilley's**<br>**5 intent was to obstruct the enforcement of the tax laws of the**<br>**6 United States as to Mr. Turner.** This transaction was also<br>7 fraudulent in that the evidence convincingly demonstrated that<br>8 one way or the other, **and contrary to Mr. Turner's intent,**<br>**9 Mr. Springer's intent was that Mr. Turner would never see that**<br>**10 $250,000 ever again.** |
| 04-23-10 | Sent. TR 406-407 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>**24 Mr. Stilley's situation is just about the purest and most**<br>**25 consistent example of non-reporting of substantial income that**<br>**406**<br>**1 could be imagined.** And by saying that about Mr. Stilley, I<br>2 don't mean to put Mr. Springer in a favorable light, but,<br>3 nevertheless, the situation with respect to Mr. Springer is a<br>4 bit more complicated. |

| 04-23-10 | Sent. TR 407-409 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>Here the District Court announces findings of tax loss amounts, with respect to each Defendant. |
|---|---|---|
| 04-23-10 | Sent. TR 410 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>9 ....  **And, in that regard, the indictment**<br>**10 clearly does not confine its allegations as to the objectives**<br>**11 of the conspiracy to simply a purpose of avoiding these**<br>**12 defendants' personal tax liabilities.** |
| 04-23-10 | Sent. TR 411 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>**...  I hesitate to make harsh findings without**<br>**20 very satisfactory evidence.** |
| 04-23-10 | Sent. TR 412-413 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>**25 -- I'm sorry, the transactions with Mr. Turner did generate**<br>**412**<br>**1 criminal source income. ...** |
| 04-23-10 | Sent. TR 414-415 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>19 The sophisticated means adjustment fits the facts of this<br>20 case as to both defendants quite well. The most obvious<br>21 example of that, but certainly not the only example of that, is<br>22 the using of Mr. Stilley's IOLTA account. Lawyers use their<br>23 trust accounts for the purpose of serving their clients. **Those**<br>**24 trust accounts are treated as custodial accounts and in, I**<br>**25 venture to say, in every state, there are very detailed rules**<br><br>**414**<br><br>**1 that apply to the maintenance of lawyers' trust accounts, such**<br>**2 as Mr. Stilley's IOLTA account.**<br>3 In this case, though, Mr. Stilley's IOLTA account was an<br>4 instrument of fraud pure and simple, and it was an instrument<br>5 of fraud pure and simple for the use and benefit both of<br>6 Mr. Stilley and of Mr. Springer. It was very effectively used<br>7 and it was used in a way that **makes a mockery of the purposes**<br>**8 for which lawyers are authorized to maintain trust accounts.** |

| 04-23-10 | Sent. TR 424-425 | (COURT'S ANNOUNCEMENT OF SENTENCE) It is fair to say, although 25 admittedly a bit harsh to say, that without his license to 424 1 practice law Mr. Stilley was worthless to Mr. Springer in 2 Mr. Springer's role as the charismatic and intellectual force 3 behind the joint criminal endeavors of these two defendants. 4 Mr. Stilley's status as a lawyer and his ability to hold 5 himself out at a criminal tax defense attorney furthered these 6 defendants' joint objective of committing tax fraud directly 7 and in counseling and advising their clients and significantly 8 facilitated the commission and concealment of these defendants' 9 offenses. This adjustment will be applied to Mr. Stilley. (Discussion of the application of Guideline 3B1.3, abuse of 19 position of trust or special skill. ) |
|---|---|---|
| 04-23-10 | Sent. TR 425-426 | (COURT'S ANNOUNCEMENT OF SENTENCE) 19 This brings me to consideration of the proposed 20 application of Guideline 3C1.1 relating to obstruction of 21 justice. I listened very carefully to these defendants' 22 testimony at the trial, and I took careful notes. Mr. Stilley 23 testified under oath that no statute says that anyone is liable 24 for income tax. He testified under oath that no statute 25 defines income. Now, it might be tempting to think of these as 425 1 just ludicrous statements made for some theatrical effect, but 2 bear in mind that he was looking at a jury when he made those 3 statements under oath, and both defendants had placed their 4 intent and their willfulness squarely in issue. ... |

| 04-23-10 | Sent. TR 426 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>9 He also said that the law -- under oath, **looking at the**<br>**10 jury, that the law does not command anyone to file a tax**<br>**11 return.** He also said, under oath, that Mr. Lindsey Springer<br>12 did not charge for or receive compensation for services<br>13 rendered. He also said, under oath, that he never allowed<br>14 Mr. Springer to use his, Mr. Stilley's, IOLTA account as a<br>15 parking place for money. He also said, under oath, that he and<br>16 Mr. Springer have never discussed attempting to defraud the<br>17 United States of income taxes. **All of those statements were**<br>**18 material, they were made under oath, and they were**<br>**19 categorically false. They amounted to perjury.** They certainly<br>20 did amount to obstruction of justice on Mr. Stilley's part. |
| --- | --- | --- |
| 04-23-10 | Sent. TR 427 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>11 In addition, in March of 2006, Mr. Stilley told the grand<br>12 jury in writing that "Lindsey Springer does not charge for his<br>13 services." **A statement that Mr. Stilley well knew was**<br>**14 absolutely false and highly material to the grand jury's**<br>**15 investigation.** The defendants' testimony on these points was |
| 04-23-10 | Sent. TR 427-429 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>Court's rulings on objections to the PSR. |
| 04-23-10 | Sent. TR 430-431 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>Court's findings as to Base Offense Levels and Total Offense Levels. |
| 04-23-10 | Sent. TR 431-433 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>Court's findings as to restitution. |
| 04-23-10 | Sent. TR 433 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>Parties allowed to state objections. |
| 04-23-10 | Sent. TR 438 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>8 THE COURT: And I don't call upon you to do so here,<br>9 but I hope and trust that in your own time in your own way you<br>10 will apologize to your families. |

| 04-23-10 | Sent. TR 441-442 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>19 MR. STILLEY: May it please the Court, counsel,<br>20 parties. I'd like to inquire about a procedural matter first<br>21 and that has to do with if incarceration results. I'd like to<br>22 find out if I am to be allowed access to my computer files and<br>23 hard files for the purposes of a -- of doing my appeal.<br>24 THE COURT: That's not a matter that I'm going to<br>25 address today. That will be, first of all, a matter between<br>441<br>1 you and the marshal and between you and the Bureau of Prisons.<br>2 If there are any difficulties that you wish to place before the<br>3 Court relating to your access to any materials, then you will<br>4 certainly have the opportunity to file a motion. If you can't<br>5 get access to a computer for the purpose of filing a motion,<br>6 then, as you're probably well aware, pro se litigants are<br>7 entitled to file pleadings in handwriting. In any event, that<br>8 aspect of your probable incarceration and your activities after<br>9 you are remanded is not a matter that I'm going to address<br>10 today. |
| --- | --- | --- |
| 04-23-10 | Sent. TR 442 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>21 ... my primary consideration would be my ability to be<br>22 heard in a reasonable time and a reasonable manner with respect<br>23 to the process that I am due. |
| 04-23-10 | Sent. TR 443 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>Truly, I do love my family. I care for them. You<br>3 can see from the presentence report that my wife and I have two<br>4 biological children, small children, and we have two that we<br>5 adopted from Russia, we care very much about those. I<br>6 certainly care about those children and I intend to do the very<br>7 best by them that I can. The principal thing that I want to<br>8 make sure that I do for them right now is the absolute best<br>9 work that I can possibly do in defending my interests.<br>10 Your Honor, that's all the comments that I have to say.<br>11 Thank you, Judge. |
| 04-23-10 | Sent. TR 447 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>12 I don't think that there is any real possibility that<br>13 either one of these defendants will change their ways as a<br>14 result of incarceration. Incarceration and possibly supervised<br>15 release will essentially be an interruption, albeit a lengthy<br>16 interruption, in your criminal way of life. |

| 04-23-10 | Sent. TR 448 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>3 As for the nature and circumstances of the offenses and<br>4 the history and characteristics of the defendants, I **have tried**<br>**5 to find even a thin strand of truth or integrity to your**<br>**6 conduct or your way of life. It is not there. Not even a**<br>**7 speck.** There is not even a plausible basis upon which you<br>8 might have deluded yourself into thinking that you are anything<br>9 but complete frauds and predators.<br>10 Your scams have cheated the United States. And that is a<br>11 serious matter in and of itself. **But the United States can**<br>**12 print money.** If anyone ever had any lingering doubt as to<br>13 whether you are frauds and predators, that doubt would be<br>14 removed by the fact that the two of you have also merciless<br>15 fleeced some very vulnerable people. You are predators, pure<br>16 and simple. |
| --- | --- | --- |
| 04-23-10 | Sent. TR 449 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>**...... But in terms of your**<br>**9 overall culpability, Mr. Stilley, there is no daylight between**<br>**10 you and Mr. Springer, even though his advisory guideline range**<br>**11 is higher than yours is.**<br>12 For that reason, taking into account all of the statutory<br>13 sentencing factors, including the advisory sentencing<br>14 guidelines, the sentence in your case will include an upward<br>15 variance from the guideline range. If I failed to do that in<br>16 your case, Mr. Stilley, your sentence would reflect a<br>17 completely unjustifiable and unwarranted sentencing disparity<br>18 as between you and Mr. Springer.<br>19 I must say, Mr. Stilley, that my evaluation of your<br>20 history and characteristics is also influenced by the fact that<br>21 you have, to a truly astonishing extent, **used your license to**<br>**22 practice law as an instrument of fraud and a license to steal.** |

| 04-23-10 | Sent. TR 450 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>5 **It is painful to think that you went as long as you did**<br>6 **before you were called to account by the disciplinary**<br>7 **proceedings in Arkansas.** Mr. Stilley, you are not a lawyer in<br>8 any normal sense of that word. **You are a thief with a law**<br>9 **degree.**<br>10 One other matter should be mentioned before sentence is<br>11 imposed. Both of you are going to have some time, considerable<br>12 time to perfect your self-image as tax protestors who have been<br>13 persecuted and victimized by the Internal Revenue Service.<br>14 **Before you get too far down that road, let me remind you that**<br>15 **you were indicted by a grand jury consisting of your fellow**<br>16 **citizens and not by the IRS.** You were convicted by a trial<br>17 jury sitting in this courtroom consisting of your fellow<br>18 citizens and not by the IRS. |
| 04-23-10 | Sent. TR 451 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>15 THE COURT: Very well. The judgment and sentence in<br>16 this case will also state that **the Court strongly recommends**<br>17 **that the Defendants Springer and Stilley not, in any event, be**<br>18 **designated to or incarcerated in the same institution.** |
| 04-23-10 | Sent. TR 457-458 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>21 Oscar Amos Stilley. It is the order and judgment of the<br>22 Court that the Defendant Oscar Amos Stilley is hereby committed<br>23 to the custody of the Bureau of Prisons to be imprisoned for a<br>24 term of 180 months consisting of: 60 months on Count 1, 60<br>25 months on Count 3, and 60 months on Count 4, all such terms to<br>457<br>1 run consecutively, for a total sentence as to all counts of 180<br>2 months. **And you deserve every day of it.** |
| 04-23-10 | Sent. TR 460 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>24 **As is the case with Mr. Springer, I urge you to move without**<br>25 **delay to secure a transcript of the record at public expense.** |
| 04-23-10 | Sent. TR 461 | (COURT'S ANNOUNCEMENT OF SENTENCE)<br>13 THE COURT: You bet. **I now inquire as to the**<br>14 **government's position with respect to remand.**<br>15 MR. O'REILLY: Each defendant should be remanded,<br>16 Your Honor, under 3143.<br>("Remand" means being immediately incarcerated.) |

| 04-23-10 | Sent. TR 465-466 | (COURT'S ANNOUNCEMENT OF SENTENCE) <br> (Stilley speaking) <br> 24 And I would also say that my principal concern, I think <br> 25 reflected in the pleadings, is that I be heard in a reasonable <br> 465 <br> 1 time and in a reasonable manner, which is the fundamental <br> 2 essence of due process. I'm not persuaded that I can do that <br> 3 reasonably in jail and certainly not to the level that I could <br> 4 at home with all the computer, printers, and other things, the <br> 5 Internet, that I would have access to. <br> 6 And I would most respectfully request that I be allowed, <br> 7 first, release pending appeal. If that's not done, that I be <br> 8 given time to surrender that would extend past the preparation <br> 9 and filing of the reply. And if that's not allowed, then <br> 10 whatever the Court would grant as far as giving time to self- <br> 11 surrender. |
| --- | --- | --- |
| 04-23-10 | Sent. TR 466 | (COURT'S ANNOUNCEMENT OF SENTENCE) <br> 14 THE COURT: On the matter initially raised by <br> 15 Mr. Stilley, the above guideline sentence is as a result of a <br> 16 variance and not a departure. The United States Supreme Court <br> 17 has made it clear and in so doing effectively overruled the <br> 18 Tenth Circuit's Atencio decision and has made clear that the <br> 19 Court's application of the Section 3553 factors, even though it <br> 20 may result in an above-guideline sentence, is a variance as to <br> 21 which notice is not required, as distinguished from the notice <br> 22 requirements that do apply to a guidelines departure. So that <br> 23 objection is overruled. |
| 04-23-10 | Sent. TR 466-467 | (COURT'S ANNOUNCEMENT OF SENTENCE) <br> 24 On the issue of remand, let me first say, gentlemen, that <br> 25 I am fully cognizant of the seriousness of this question, <br> 466 <br> 1 especially as it applies in your situation having invoked your <br> 2 right, as you have, and it's an important right, to represent <br> 3 yourselves. And I am fully cognizant of the fact that <br> 4 incarceration may well have some impact on your ability to <br> 5 proceed representing yourselves. To the extent that the Court <br> 6 can within the bounds of the law and common sense ameliorate <br> 7 that, then I will be happy to consider anything that the Court <br> 8 might properly address in that regard. |

| 04-23-10 | Sent. TR 467-468 | (COURT'S ANNOUNCEMENT OF SENTENCE) <br> 25 That is not the case today. **I am no longer satisfied,** <br> **467** <br> **1 much less by clear and convincing evidence, that the defendants** <br> **2 are not flight risks.** We are now at a day on which the reality <br> 3 of the defendants' situations has become more -- certainly more <br> 4 unmistakably apparent and more unavoidable than it has been at <br> 5 any stage of these proceedings. <br> 6 I had to work hard, as I have said, to avoid remand at the <br> 7 conclusion of the trial. I no longer have the comfort level, <br> 8 as I have said, much less by clear and convincing evidence, <br> 9 that the defendants are not flight risks at this point. |
| --- | --- | --- |
| 04-23-10 | Sent. TR 469 | **(COURT'S ANNOUNCEMENT OF SENTENCE)** <br> **2 The defendants are both remanded to the custody of the** <br> **3 marshal to begin serving their sentences immediately.** <br> **4 Court will be in recess.** And I will direct that the <br> 5 exhibits be withdrawn. Court will be in recess. |
| 04-23-10 | Dkt. 341 | Springer's receipt for the $455 appeal filing fee, day of sentencing. |
| **04-29-10** | Dkt. 343 | Springer's motion for **transcript at public expense**, citing exactly no authority in support.  343-1 is a very short, summary declaration in support of the request. |
| 04-30-10 | Dkt. 347 | Government motion to Strike #345, Springer's 48 page motion with no table of contents or authorities. |
| **04-30-10** | Dkt. 350 | Government response agreeing to **transcripts at public expense**, citing authority. |
| **04-30-10** | Dkt. 351 | Court order granting transcript at public expense. |
| 04-30-10 | Dkt. 352 | Court order striking 345 as violative of local rules, without specifying which local rule. |
| 04-30-10 | Dkt. 354 | Springer motion for over-length brief - he cut out the background and history to get down to 32 pages.  Says he can't do a table of contents and authorities. |
| 05-03-10 | Dkt. 356 | Government opposition to Springer's motion for over-length brief, #354.  They say the relief sought would significantly add to the court's burden in deciding the motion.  They claim that incarceration does not prevent tables of contents and authorities. |

| 05-09-10 | Dkt. 364 | Springer motion to compel the delivery of mail to co-defendant Oscar Stilley.  David L. Moss Detention Center won't deliver Springer's mail to Stilley, or vice versa. |
|---|---|---|
| 06-08-10 | Dkt. 376 | Court order denying 364 as moot.<br>(The motion sits unopposed for a month, then dismissed as moot after the injury has been inflicted to the fullest degree.) |
| 08-17-10 | Dkt. 418 | Court order approving $91,771.56 out of Mr. Burton's requested $117,000.06.  Nearly all of this was compensation for services. |
| 02-24-11 | Dkt. 443 | Stilley's motion for reasonable access to the courts.  **Explained efforts to exhaust remedies, obstructionism of the DOJ-FBOP against that effort.** |
| 03-14-11 | Dkt. 444 | Government response opposition to 443.   Page 2 has an outline of filings at the 10th Circuit. |
| 03-29-11 | Dkt. 450 | Stilley motion for extension of time to reply to Dkt. #444.   [Dkt. 453 appears to be the same document, filemarked 4-15-11. |
| 04-18-11 | Dkt 454 | Stilley reply to #444.  **Stilley still working to get admin remedies.**<br>(It is plain to see that this Trulincs document has about twice as much text per page as a "legal" pleading prepared with a word processor.) |
| 04-20-11 | Dkt. 455 | Court order denying 443 on grounds of failure to exhaust remedies. |
| 10-26-11 | Dkt. 460 | 10th Circuit Order and Judgment, by Lucero, Baldock, and Tymkovich.   Twenty four pages, entered for the Court, PER CURIAM. |
| 12-6-11 | Dkt. 461, 462 | Mandate from the Clerk's office for Springer litigation. |
| 12-20-11 | Dkt. 463 | Mandate from the Clerk's office for Oscar Stilley. |

**CONCLUSION OF TIMELINE**