IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                          Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                                                           DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION TO COMPEL THE PLAINTIFF, ETC., TO ACCEPT CRIMINAL PAYMENTS VIA PAY.GOV, WITH INCLUDED BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion to compel the Plaintiff, etc., to accept criminal payments via pay.gov, and states as follows:

1. Counsel for the government on April 11, 2023 graciously stated via responsive email that the government takes no position on the relief sought in this motion.

2. Stilley makes monthly restitution payments, in the captioned case.

3. Stilley has a pay.gov account and is capable of payment via that service.

4. Stilley wishes to get the capability to pay via pay.gov, so as to have an efficient payment system that is not subject to plausible deniability.

5. Stilley sent a letter to the clerk on March 7, 2023, as cover for a $100 check. Exhibit "1." All exhibits hereto are incorporated herein as if set forth word for word.

6. Jennie Cleveland, Financial Administrator, by letter dated March 13, 2023 said she regretted the convenience but she needed cash, a certified check, or money order. Exhibit "2."

7. Somehow it took another ten days to get an envelope printed and in the mail. The envelope used an address that hasn't been valid (for Stilley) since Stilley went to prison on 4-23-2010. Exhibit "3."

8. Stilley got the letter the next time he went down to visit his children. That was a bit late.

9. Stilley on April 11, 2023 sent a letter to the clerk of the court, asking for receipts but stating that email receipts were fine. Exhibit "4."

10. Stilley later got paper receipts, along with a request for stamped self-addressed envelopes in the future. Exhibit "5."

11. There is no rational or lawful reason to deny criminal defendants the opportunity to pay via pay.gov, the electronic payments system of plaintiff United States of America.

12. The Financial Litigation Unit (FLU) of the local US Attorney's Office regularly collects money from criminal defendants. Also, many payments are simply sent to the clerk.

13. The FLU has an obligation to accept payments in a rational and reasonable manner, and disburse the funds to those entitled, pursuant to the applicable judgment and commitment orders.

WHEREFORE, Stilley respectfully requests an order requiring plaintiff United States, by and through the Clerk, the FLU, and other responsible federal authorities, to accept electronic payment of criminal financial obligations to the OKND by and through pay.gov, within 30 days of this order, absent extension for

good cause shown: and for such other and further relief as may be appropriate whether or not specifically requested.

Respectfully submitted,


By: /s/ Oscar Stilley              May 25, 2023
Oscar Stilley                     Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


**BRIEF IN SUPPORT**

Stilley is an Administrative Assistant employed by REVAMP (Remember Every Victim and Missing Person in US, Inc.). REVAMP doesn't do payroll for Stilley. This task is delegated to My HR Professionals, (MyHRPros) a local payroll service.

Prior to the commencement of supervised release, while on home confinement, Stilley signed an agreement with US Probation in the Western District of Arkansas, (ARWD) to make payments against his judgment amount. The Probation Officer who spoke to Stilley said this wasn't mandatory, but would show "good faith."

Stilley exerted every effort with both the US Probation offices and the clerk's offices of both the ARWD and the Northern District of Oklahoma, (OKND) to cause

3

the agreed sum to be automatically debited from Stilley's bank account, always in the correct amount, always at the proper time.

Pay.gov is a service set up to accept payments for various federal courts. Some districts use this for both civil and criminal payments. Others only use it for civil payments.

Stilley was informed that he could not set up payments on pay.gov, nor could he do a work-around to pay these amounts into the registry of the court electronically. Furthermore, he could not send personal checks. He could only send money orders or certified or cashier's checks. Stilley gave up on being able to make the payments.

Stilley was previously subject to garnishment. Stilley paid $2.50 for each garnishment, which is ridiculously cheap compared to the absurdly unnecessary work that MyHRPros had to do every time they paid Stilley a paycheck. Stilley's paycheck is deposited directly into his bank account. It would be vastly easier for MyHRPros to also electronically transmit the garnished funds to the proper authorities.

The personnel of the OKND, rather than simply calling to work out a payment plan, or perhaps to effectuate the previously agreed payment plan, simply started the garnishment process. Anyone looking at the docket can see that this wastes a lot of court time and US Attorney personnel time.

It furthermore wastes the time of criminal defendants and court personnel. In this case, Stilley sent a personal check for the first payment after getting out of

prison the second time. Exhibit "1." The clerk sent it back under cover letter (Exhibit "2") correctly addressed, in an envelope misaddressed, (Exhibit "3") with a postmark some 10 days after the date on the letterhead. *Id.*

The clerk sent Stilley an envelope he didn't need or request. Exhibit "2." Stilley later asked for a receipt, saying that electronic acknowledgment of receipt was sufficient. Exhibit "4." The clerk sent a receipt by mail but requested that Stilley send a stamped self-addressed envelope in the future. Exhibit "5." Presumably they don't want to send receipts electronically.

This summarizes the current system. It is full of contradictions, anachronisms, absurdities, and inefficiencies. It is a system that could never survive in private commerce. It is a system that *must be* backed up by the threat of prison.

Stilley spent an hour and 13 minutes writing a letter, getting the postal money order, setting up a rudimentary filing system. Apparently Stilley is expected to send them some 31 stamped, self-addressed envelopes during the term of his supervision. It is hard to conceive of a system more attractive to personnel hoping to pilfer money from government accounts.

Stilley has been informed that the failure to use pay.gov for criminal payments is the result of pressure from the Administrative Office of the Courts in Washington, DC. On the basis of a call to that office, Stilley believes the assertion to be true. Stilley could not get a straight answer to his question, despite polite persistence. If their office didn't discourage district courts from using pay.gov for

5

criminal payments, presumably they would have forthrightly denied the suggestion.

*McGirt v. Oklahoma*, 591 US _, 140 S. Ct. 2452 (2020) greatly increased the criminal case load in the OKND. Doubtless this results in many orders to pay money.

These things work together to create a serious hardship on criminal defendants. Criminal defendants are left with no path to payments that easily and reliably prove the full amount of payments to the court over an extended period of time. Criminal defendants have to physically go to the courthouse, or to a bank, or to seller of money orders every month. That's a huge administrative burden, error prone and cumbersome on both ends of the transaction.

One who pays by personal check every time has proof of everything that was paid. That proof remains accessible to the payor. Banks keep records for a long time. Nearly all banks make this information available to the account holder, online.

One who pays by pay.gov has an immediate electronic record of all payments, not subject to reasonable dispute.

Money orders create ***anything but*** a sufficient paper trail. Sure, if you keep all the receipts, and work hard enough, and never miss anything, you can prove what you paid. But the use of money orders virtually guarantees the existence of substantial amounts of criminal payments that nobody can effectively prove. Criminal defendants are hardly likely to be reliable record keepers. They'll often lose the receipts.

"Felons" aren't allowed contact with other felons without the permission of their US Probation Officer. The monthly reporting form asks about contacts with anyone with a "criminal record," a vague term not necessarily limited to felons. Felons are virtually barred from establishing a pattern and practice of misapplication or misappropriation of criminal monetary penalties. This feature of the system is obvious to governmental employees in positions of trust, with respect to such funds.

The *rate* of revocations of federal supervision vary by a *factor* of almost ten. Indeed, OKND has a revocation rate of 14%, the Western District of Oklahoma has a revocation rate of 28%, twice as much.  Amazing indeed, what a political boundary can do. One can see the revocation rates, in order from highest (over 40%) to lowest (under 5%) at [page 24 of the Federal Probation and Supervised Release Violations](), an official publication of the United States Sentencing Commission.

Doubtless the typical US probation officer would argue that they aren't instruments of such wrongdoing. That is not the point, nor should such accusation be implied. One need not look further than this case to know that a supervisee can be accused by someone in a harsher jurisdiction, then tried in the original jurisdiction, without any opportunity to cross examine the accuser. Friendly relations with a supervisee's own officer are altogether inadequate protection against devastating retaliation.

Felons on supervision are more vulnerable to threats and intimidation from their overseers, than virtually any other segment of society. If a US probation

officer suggests that he would *prefer* that the supervisee refrain from further inquiry about suspicious diversions of criminal payments, nearly all will comply. Formal threats or demands aren't necessary or productive. Persons on supervision are generally faced with up to 2 years, or up to 5 years, of prison on a single revocation petition – and he isn't limited to one revocation. Only the hardiest of supervisees will take a chance of offending their overseers.

Most of the time, US Probation personnel won't need to say anything at all. Supervisees know the score. They don't want to "rock the boat." They understand the dynamics of living under the control of an authority that at once has vast *power* and enormous *discretion* in the exercise of that power. They operate on altogether inadequate information – and they know it. Under these circumstances, discretion is very much the better part of valor.

Stilley hesitates to make harsh accusations without very satisfactory evidence. However, the refusal to set up pay.gov for criminal defendants in this jurisdiction makes life miserable for some of the most vulnerable individuals of our society. Plus, it ensures that large sums of government money are much more *vulnerable* to misappropriation and peculation. It makes federal criminal restitution accounts much more attractive targets for covetous eyes.

If the government has a legitimate explanation for why electronic payments aren't enabled in OKND for *criminal payments*, Stilley wants to hear it. If they have no such explanation, Stilley respectfully suggests that an explanation is in order, for the decision to *cut clean off* every payment method that reliably creates an

indisputable payment record, for virtually all federal criminal defendants. The refusal to take personal checks is at least theoretically independent of the refusal to accept electronic payments.

Pay.gov is not a particularly recent invention. The [Western District of Arkansas takes pay.gov for criminal payments](). According to [Bard](),[1] they commenced receiving criminal payments by this method over six years ago, on May 1, 2017. So does the Northern District of Mississippi, see page 2 of the same list. Stilley's good friend Bard says this happy circumstance commenced on January 1, 2021.

In days gone by, Arkansas and Mississippi participated in a perennial contest to see who could take last place, in just about everything desirable. These two states traded places between 49th and 50th place, in a panoply of categories. Now, both the Western District of Arkansas and the Northern District of Mississippi have proven themselves more enlightened and forward thinking than the Northern District of Oklahoma – in one metric at least.

Every now and again, Stilley finds a friend in an unlikely place. Hopefully court personnel and other federal employees and stakeholders are tired of a system that squanders their time and effort for no legitimate reason. Hopefully these words will encourage them to be *voices of reason*.

Humans almost always do what they do for *reasons*. The lack of an obvious, rational, *legitimate* reason for a policy doesn't mean that the policy is pursued for no

---

[1] Google's city cousin.

reason at all. It means the policy is probably grounded on reasons that officialdom won't say out loud.

## CONCLUSION

This Court should order Plaintiff United States, and any relevant agency or officer tasked with receipt of criminal monetary penalties, to enable payment of criminal obligations within the OKND via pay.gov, within 30 days of the Court's order.

Respectfully submitted.

By: /s/ Oscar Stilley          May 25, 2023
Oscar Stilley                  Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.