

**FILED**

**JAN 1 3 2025**

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA     PLAINTIFF

V.     Docket No: 4:09-CR-43

OSCAR STILLEY     DEFENDANT

**DEFENDANT'S VERIFIED MOTION FOR AN AUTHORIZED JUDGE FOR REVIEW OF DENIAL OF RELEASE PENDING APPEAL, ETC., WITH INCLUDED BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his verified motion for an authorized judge for the review of the denial of release pending appeal, etc., and states:

1. Stilley was sentenced to two years confinement on a revocation of supervised release on November 13, 2024.

2. Stilley amongst other reliefs requested stay (release) pending appeal.

3. The Court denied all reliefs and immediately remanded Defendant to the custody of the US Marshal Service.

4. This order of immediate remand was entered by Stephen P. Friot, who is **not** a *judge of a court having original jurisdiction over the offenses* charged against Stilley.

5. Stilley is s tatutorily entitled to review of denial of release pending appeal, by a *judge of a court having original jurisdiction over the offenses* laid at Stilley's feet.

6. The Court in the denial of release pending appeal made no specific findings in support of the denial of release pending appeal, as required by applicable rules.

7. Stilley therefore requests a prompt review of the denial of release pending appeal, by a judge in regular service in the Northern District of Oklahoma, (OKND) with specific findings in support of the release decision and other decisions.

8. Stephen P. Friot is a judge of the Western District of Oklahoma (OKWD) but not a judge of the OKND.

1

9. During the proceedings 11-13-2024 this Court in the person of Stephen P. Friot denied having told counsel for the government that he didn't have to respond to Stilley's motions filed prior to the felony trial conducted November 13, 2024.

10. When Stilley pressed further, asking if his personnel had said such a thing to counsel for the government, Judge Friot became visibly upset and said "move on!"

11. Prior to the said felony trial, Stilley in an email 11-11-2024 asked counsel for the government when he could expect responses to Stilley's motions.

12. Counsel for the government replied the same day saying "The Court notified the United States it needn't respond to your motions. I will see you Wednesday at 9:00 a.m. in Tulsa." See attached Exhibit "1."

13. Counsel for the government Charles A. O'Reilly failed to perform his duty to correct the record by admitting that he had engaged in *ex parte* contact with the Court, and that the Court had issued the *de facto* order as alleged in O'Reilly's email.

14. The captioned criminal case was originally assigned by random draw to Northern District of Oklahoma (OKND) Seat 2, then held by the Honorable Judge James H. Payne. Only Judge Payne recused from this case, but OKWD District Court Judge Stephen P. Friot was nevertheless assigned to the case for further proceedings.

15. Stilley is satisfied with the original assignment to Seat 2, and presumes that it was done properly and in conformity with the requirement of a random draw.

16. Stilley is satisfied if the review of his detention order is conducted by the current holder of OKND seat 2, regardless of the extent of that judge's lawful commission.

17. Stilley would also be satisfied if his requested review were conducted by some other judge in regular service in the OKND, to the extent that such is necessary and the judge is selected in compliance with applicable rules and procedure.

18. Cimarron Correctional Facility, (Cimarron) where Stilley is held, engages in myriad tactics designed to crush the litigation capacity of the inmates they hold. Stilley set forth a basic two-page request for the removal of some of the more egregious evils designed to injure due process, peaceful petition, etc. See Exhibit "2." That request is currently at central office of CoreCivic, the private prison corporation that operates Cimarron.

19. Stilley incorporates all other relevant pleadings in this case, especially but not limited to the pleading filed contemporaneously with this pleading.

WHEREFORE, Stilley respectfully requests that Stilley's motion for a review of the denial of release pending appeal, etc., filed contemporaneously with this motion, be assigned to and decided by the current holder of Seat 2; and for such other and further relief as may be appropriate whether or not specifically requested.

Respectfully submitted,

## VERIFICATION

Comes now Defendant Oscar Stilley pursuant to 28 USC 1746 on the date stated below and declares under penalty of perjury that the foregoing facts are true and correct to the best of Stilley's knowledge and belief.

By: /s/ Oscar Stilley                1-2-2025
Oscar Stilley, DOJ-FBOP 10579-062    Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

## BRIEF IN SUPPORT OF MOTION

At the proceedings 11-13-2024 Stilley made various efforts at release pending appeal, or some other arrangement that would limit the damage to Stilley's ability to vindicate his 1st Amendment right of peaceful petition, due process, etc. None were successful.

Stilley's efforts to have his motions decided by a judge nominated by the president, confirmed

3

by the Senate, and granted a commission in the OKND have thus far been singularly unsuccessful. However, Stilley is statutorily entitled to review of a detention order, by a US District Judge lawfully appointed and confirmed to the district having jurisdiction over the offense. It is not just the defendant who possesses this entitlement. The government has the same right, as shown by the statute below.

**ENTITLEMENT TO A JUDGE OF THE COURT HAVING JURISDICTION**

The relevant statute reads in pertinent part as follows:

18 USC 3145. **Review and appeal of a release or detention order**

(a) Review of a release order.  If a person is ordered released by a magistrate [United States magistrate judge], or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court--

   (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

   (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

(b) Review of a detention order.  **If a person is ordered detained** by a magistrate [United States magistrate judge], *or by a person other than a judge of a court having original jurisdiction over the offense* and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.
(Emphases added)

Stilley has never contested the fact that Stephen P. Friot is a senior judge in the Western District of Oklahoma (OKWD). It is furthermore plain that Stephen P. Friot was somehow assigned to the captioned criminal case three prosecutions ago, in approximately April of 2009. "Temporary" cross-designation orders, highly secretive and published nowhere, have been issued for each of the 15 intervening years. These cross-designation orders purport to allow the assignment of any judge in any of the three districts in Oklahoma to preside in any of the other two districts, besides the one to which they have a lawful commission.

4

Actually, that's not quite true. Some Oklahoma federal judges actually have been nominated by the president and confirmed by the Senate, as lawful and regular judges in *all three districts* of Oklahoma. The names of those judges are conspicuous by their absence from the cross-designation orders, which Stilley has attached to a certain former pleading. Stilley does not currently know the docket number because he currently doesn't have access to either his hard copy or electronic files.

Nobody contends that Stephen P. Friot has been nominated and confirmed as a judge of the OKND. His service on this case has been solely predicated on cross-designation orders.

The Court in *United States v. Torres*, 86 F.3d 1029, 9 Fla. L. Weekly Fed. C 1186, 1996 U.S. App. LEXIS 14245 (11th Cir. 1996) analyzed the statutory language as follows:

> The Government, responding to Torres' application for relief, contends that because the district court lacked jurisdiction to entertain its appeal, we likewise lack jurisdiction. The Government's position is correct; in fact, the notion that the district court, and in turn this court, has the authority to entertain the Government's appeal of the magistrate judge's release order is without merit. **The plain language of section 3145 dictates that the <u>district court with original jurisdiction over the offense</u>, i.e., the prosecuting district, here the Southern District of Texas, is the only proper one to review the order in question.** In so concluding, we agree{1996 U.S. App. LEXIS 4} with the only other court of appeals to have addressed the issue. See *United States v. Evans*, 62 F.3d 1233, 1235 (9th Cir. 1995) (authority to review magistrate judge's detention order resides with the district court where the prosecution is pending).
> (Emphases added)

Lest the government might say that Stephen P. Friot has become for purposes of this case a "judge of a court having original jurisdiction," consider these facts.

Judge Friot was not formally assigned to the second or the third prosecutions. The second prosecution involved 3 months incarceration, the third and current prosecution resulted in 2 years incarceration. Assignment of Judge Friot to the 3rd prosecution, if any, is highly speculative and unsupported by any specific order of assignment.

Judge Friot in pronouncing sentence in the third prosecution from the bench opined that he could sentence Stilley to 2 years on each of three counts of the complaint, to run consecutive, for a total

of 6 years confinement. In addition to being a plain and flagrant violation of the 5th Amendment prohibition on double jeopardy,[1] that presumes that Stilley is being prosecuted, for the third time, on counts 1, 3, and 4 of the original indictment. There were 9 counts in the second Petition to Revoke (PTR), upon 7 of which Judge Friot found Stilley guilty. He didn't claim that he could impose the 2 year maximum sentence 7 times over, to run consecutively to each other.

Judge Friot clearly treats the counts of the petition to revoke as a whole, sufficient to sustain a 6 year prison sentence whether Stilley was guilty of *one trivial violation of one of the nine counts* of the PTR, or egregiously guilty of all nine. Judge Friot treats a PTR as a brand-new turbocharged prosecution of the three counts of the original indictment applicable to Stilley. The original indictment was not returned in open court and thus not worthy of any presumption of authenticity.

Stilley is by the terms of the statute entitled to review of any detention order unless the original detention order was entered by *a judge of a court having original jurisdiction over the offense.* Therefore, any argument that Stilley isn't entitled to review of the detention decision because Friot is "a judge of a court having original jurisdiction over the offense" necessarily implies that the same would be true if the original detention order was entered by *any* judge of the Eastern, Western, or Northern Districts of Oklahoma. The statute does not focus on whether or not the US district judge was ***properly assigned*** to preside over a given criminal case. It focuses on whether or not the district judge was ***lawfully nominated, confirmed, and commissioned*** to the district having jurisdiction over the offense(s) charged.

## DISQUALIFICATION FOR BIAS, PREJUDICE, AND UNETHICAL BEHAVIOR

Stilley filed most of his pleadings in the revocation prosecution early enough to ensure that the government would be duty bound to file a response before the hearing. That was intentional and planned. The government is entitled to due process, which in the ordinary case includes the time

---

[1] Or triple, or quadruple, or even more. Based on Judge Friot's theory there is no limit to the number of times a defendant may be placed in jeopardy, tried, and punished, for one offense.

allocated by the rules to respond to a written motion.

As shown by the exhibit to this motion, Charles Anthony O'Reilly, counsel for the government, stated that the court had said that he needn't respond to any of Stilley's motions. This Court from the bench, during the felony criminal trial on 11-13-2024, denied telling Mr. O'Reilly any such thing. Asked if the Court's personnel had said such thing, the Court became visibly upset and told Stilley to "move on." Stilley complied.

Stilley on the day before the hearing filed a motion for Judge Friot's recusal. That of course didn't give the government the 7 days authorized by the local criminal rules, to file a response. However, a glaring inconsistency has been shown. The Court denies any *ex parte* communication with counsel for the government. Stilley shows that Mr. O'Reilly states in writing that he was by "[t]he Court" excused from the duty of responding to any of Stilley's motions. Yet Mr. O'Reilly didn't rise to confess on the record this de facto order he had received, highly favorable to himself.

**CONCLUSION**

A review of the detention order, with specific findings, is statutorily required. It is also required as a matter of ethics and due process. Stilley is entitled to a disinterested and honest arbiter of his claims and arguments. The current holder of Seat 2 of the OKND should be assigned to conduct the review and make the appropriate findings.

By: /s/ Oscar Stilley                    1-2-2025
Oscar Stilley, DOJ-FBOP 10579-062        Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

**CERTIFICATE OF SERVICE**

By my signature above I certify that I served this document by sending a copy first class mail, postage prepaid, to the Clerk for filing via CM/ECF, whereupon all parties entitled to service will receive a copy electronically.



Oscar Stilley <oscarstilley@gmail.com>

## Schedule for responses to motions

1 message

Mon, Nov 11, 2024 at 9:30 AM

Oscar Stilley <oscarstilley@gmail.com>
To: Charles O'Reilly <charles.a.o'reilly@usdoj.gov>

Dear Charles:

Can you give me estimates of when you might file responses to my pending motions?

Thanks,

Oscar

Exhibit "I"

--
Oscar Stilley
10600 North Highway 59
Cedarville, AR 72932
479.384.2303 cell phone
oscarstilley@gmail.com
www.bustingthefeds.com



Oscar Stilley <oscarstilley@gmail.com>

## RE: [EXTERNAL] Schedule for responses to motions

1 message

Mon, Nov 11, 2024 at 9:46 AM

O'Reilly, Charles A. (TAX) <Charles.A.O'Reilly@usdoj.gov>
To: Oscar Stilley <oscarstilley@gmail.com>

Mr. Stilley:

The Court notified the United States it needn't respond to your motions. I will see you Wednesday at 9 a.m. in Tulsa.

Take care.

Charles O'Reilly

Trial Attorney

# LIST OF UPGRADES

## COMPUTER UPDATES

*Exhibit "2"*

1. Update the computers so that all of them accept USB thumb drives.
2. Give all inmate computers direct access to the printers. It is beyond absurd to criticize personnel for not having tech credentials and not make this elementary efficiency upgrade. These machines have had this byzantine system for at least the last 2 years, for no lawful reason.
3. Get 3 spare computers, so upgrades don't disturb the flow of work. Upgraded machines can be rotated in with virtually no interruption. Most online subscriptions will tolerate a reasonable schedule of having the machine online for upgrades to the software. Of course, with suitable tech personnel the upgrades can be done online, a massive improvement in efficiency.
4. Move the law library to the big room near the entrance. Keep the old law library for females.
5. Add enough computers to stock the new men's law library. Keep the existing machines where they're at. If money's an issue please say what it would take to acquire sufficient suitably equipped machines.
6. Add personnel (including at least one with computer tech support proficiency) sufficient to support law library operations 8:00 AM - 8:00 PM Sunday through Thursday, and Friday 8:00 AM to 5:00 PM, except federal holidays. We've had huge downgrades in the amount of usable time in the library. The resource was already insufficient for a 1,600 inmate facility, under the best of circumstances. Also, lack of tech skills has been cited for getting rid of personnel, yet we have issues that could be fixed in 5 minutes tops, by a tech savvy person, or even someone who can do basic computer work with the assistance of a learned inmate.
7. Give every inmate at least 1 gigabyte of password protected networked file storage, supplemental to the use of thumb drives. With suitably qualified personnel, the same result could be had by using OneDrive or similar service to share the necessary files. This would be faster and save time and trouble for the mailroom.

## BOOKS AND SUBSCRIPTIONS

8. Get sufficient Microsoft subscriptions, to equip all inmate computers. One family plan will support up to 6 computers for $99 per year on the annual plan. It doesn't have to be online to work. This isn't costly, it is highly educational, and it would cost CoreCivic nothing as long as the inmates are allowed to pay the cost. Proficiency with Microsoft Word or other parts of the Microsoft Suite are required for many jobs. OpenOffice is not professional software, and is not recognized in the business world.
9. Maintain subscriptions to Adobe Acrobat full edition for at least half of all inmate computers. A current one seat subscription is about $24 per month, it's not a big issue and the inmates would pay if that's permitted and required to get access to the software.
10. Allow the inmates to pay for paper, toner cartridges, Ibico punch/bind machine, Ibico combs, clear covers, cardstock, etc., and use them as needed so long as the inmates pay to keep everything replaced.
11. Publish the list of the authorized booksellers in each housing unit.
12. Provide procedures to ensure that inmates have access to law and law related books, at prices not to exceed the customary cost for a similar book on Amazon, in good condition or better.
13. Move outdated legal resources (Federal Criminal Code and Rules) to the housing units, distribute them to where they're most needed. Save shelf space, they'll get more use.

1

14. Get current versions of the Federal Criminal Code and Rules (Thomson Reuters) and USSG Sentencing Guidelines, and allow inmates to acquire copies for their use in the housing units, at the customary cost on Amazon, for a similar book in good condition.

### ACCESS TO FILES AND INFORMATION

15. Publish the procedures for receiving thumb drives containing pleadings, dockets, discovery, transcripts, form pleadings, etc. Also include instructions for sending thumb drives out in order to allow friends and family to file pleadings, print material, solicit expert advice and assistance, etc. Also cover the procedure for mailing out thumb drives when departing this institution, to ensure that work product is not lost. This should be posted in each housing unit. Inmates should be allowed to maintain at least one backup copy for at least 90 days after leaving the institution, in case of loss or failure of the media.
16. Publish the procedures for getting free legal calls to lawyers, and for pro se litigants also to court clerks, opposing counsel, and other persons or entities necessary or proper for the efficient conduct of litigation. This should be posted in each housing unit.
17. Allow the inmates to subscribe to PACER and PACERPRO and do batch downloads so as to maintain a current docket and all docket items in the criminal case and any civil litigation to which they're a party or in which they may have an arguable legal interest. Any computer savvy employee would be able to monitor every keystroke and ensure that the computers aren't misused. This would increase efficiency and cut down on the volume of paper going through the mail room.
18. Allow pro se inmates with electronic filing privileges to file pleadings electronically, and also to check their cases at least every other day, to ensure that they don't miss any filing or miss any deadlines. Once again, total monitoring and oversight isn't even difficult. This does not raise material security concerns if qualified personnel is available.

### EQUIPMENT NEEDED

19. We need an Ibico hole punch machine for the men's law library and another for the women's law library. A good one can be had on Ebay for less than $100. New ones aren't that much more, but make sure you're getting a good one, not an off brand piece of junk.
20. We need a workhorse sheet feed scanner, duplex capable, for both law libraries. Inmates will be able to scan and save papers, thus reducing work for the mail room as well as personnel processing inmates into and out of the institution.

### OPENING LINES OF COMMUNICATION

21. Enable the use of the tablets in the housing units to make requests to staff, file grievances, etc.
22. Create a procedure for identifying tablets with disabled functions, so full functionality can be restored.
23. Get full size keyboards that will pair with the tablets for efficient drafting and editing of inmate requests, etc. The tablets do support that function.
24. Acquire sufficient tablets to ensure that there is not excessive competition for the use of a tablet.

2

Oscar Stilley 10579-062
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023



Postmarked 1/8/25
09CR43-SPF

RECEIVED
JAN 13 2025
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

LEGAL/SPECIAL
MAIL

US District Court Clerk
411 US Courthouse
333 W. Fourth Street
Tulsa, OK 74103

CONFIDENTIAL



LEGAL/SPECIAL MAIL

This correspondence is from an offender housed at Cimarron Correctional Facility. The facility is not responsible for substance or content.