

**FILED**

JAN 1 3 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                   PLAINTIFF

V.                  Docket No: 4:09-CR-43

OSCAR STILLEY                                                   DEFENDANT

**DEFENDANT'S VERIFIED MOTION FOR REVIEW OF DENIAL OF
RELEASE PENDING APPEAL, FOR RELEASE PENDING APPEAL,
FOR SPECIFIC FINDINGS, ETC., WITH INCLUDED BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his verified motion for review of denial of release pending appeal, for release pending appeal, for specific findings, etc., and states:

1. Stilley was sentenced to two years confinement on a revocation of supervised release on November 13, 2024.

2. Stilley amongst other reliefs requested stay (release) pending appeal.

3. The Court denied all reliefs and immediately remanded Defendant to the custody of the US Marshal Service.

4. The Court made no specific findings in support of the denial of release pending appeal, as required by applicable rules.

5. Stilley therefore requests a review of the denial of release pending appeal (however denominated) with specific findings in support of the release or detention decision, and other decisions.

6. Stilley requests release pending appeal, by whatever procedure is most appropriate.

7. Stilley incorporates all other relevant pleadings in this case, especially but not limited to the pleading filed contemporaneously with this pleading.

WHEREFORE, Stilley respectfully requests review of the order remanding him to immediate detention; an order granting stay pending appeal, releasing Stilley pending a decision of the 10th Circuit

1

on appeal, plus any timely petition for certiorari to the US Supreme Court, if necessary; an order setting forth findings with respect to the Court's ruling in this case; for a stay of any enforcement of the criminal judgment whatsoever, including but not limited to collection efforts by whatever means including set-offs or interception of tax refunds; and such other and further relief as may be appropriate whether or not specifically requested.

Respectfully submitted,

## VERIFICATION

Comes now Defendant Oscar Stilley pursuant to 28 USC 1746 on the date stated below and declares under penalty of perjury that the foregoing facts are true and correct to the best of Stilley's knowledge and belief.

By: /s/ Oscar Stilley

Oscar Stilley, DOJ-FBOP 10579-062
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

1-2-2025
Date

## BRIEF IN SUPPORT OF MOTION

At the proceedings 11-13-2024 Stilley made various efforts at release pending appeal, or some other arrangement that would limit the damage to Stilley's ability to vindicate his 1st Amendment right of peaceful petition, due process, etc. None were successful.

The presiding judicial officer, Stephen P. Friot, made no findings as required by applicable statute and rules, justifying his decision concerning release pending appeal or immediate remand to custody. Judge Friot is a senior judge. He knows the rules and requirements. He knows that specific findings are legally required. He also knows that *truthful* specific findings will show that Stilley *must* be granted release pending appeal.

The best result was stay/release pending appeal. Below that was 1) home confinement; 2) self

2

surrender to Yazoo City Camp; or 3) some other arrangement that would have allowed Stilley more or less full time access to some facility for the preparation and filing of pleadings. Stilley had his brother in the courtroom, ready to take him to Yazoo City Camp if Judge Friot gave the order. Judge Friot chose to send Stilley to Tulsa County Jail. From there Stilley was transferred to Cimarron Correctional Facility in Cushing, Oklahoma, where he remains at the present time. He was "black-boxed" for transit, immobilizing his hands in an awkward and uncomfortable position. This is an absurd security level for an individual with ultra-low security points of -1, entitled to detention in a camp, without so much as fences around it. Stilley has been told by responsible personnel that if he goes from Cimarron to Arkansas for criminal proceedings there, he will be "black-boxed" for those trips as well.

In other words, out of all the options available to Judge Friot, he chose *the one most devastating to Stilley's ability to effectively defend himself.*

More than a month after Stilley was remanded to Marshal custody, Stilley does not have access to his files. Stilley is confined at the private prison set forth at the bottom of this page, operated by CoreCivic. Dysfunction reigns supreme. This pleading is elementary, simplistic. This pleading is *far* from that of which Stilley is capable.

Stilley is still trying to get a thumb drive loaded with his files. In a 1,600 bed prison, in which personnel say some 900 beds are occupied, only 2 computers are authorized to accept thumb drives, while four are *admittedly* sabotaged by CoreCivic personnel, to prevent the use of thumb drives with legal files. Having the computers is a tacit admission that 900 inmates, nearly all of whom are pretrial or on appeal, are entitled to at least some resources for the prosecution of their defense. The librarian admits to having additional computers, and there is a larger room, from which the law library was previously removed and transferred into very cramped quarters.

At Cimarron due process and peaceful petition are subjected to death by a thousand cuts. The conduct of this private prison is for all practical purposes an admission that greed for filthy lucre

supersedes all decency, reason, or respect for the constitutional, statutory, and other rights of defendants, whether counseled or *pro se*. Every additional inmate in their physical custody pays them roughly $100 per day – regardless of whether or not the detention was obtained and/or maintained lawfully and ethically. Stomping out due process contributes to the corporate bottom line. That's why they do it.

### LEGAL REQUIREMENT FOR SPECIFIC FINDINGS

Federal Rule of Appellate Procedure (FRAP) sets out the requirements:

**Rule 9. Release in a Criminal Case**

(a) Release Before Judgment of Conviction.

>   (1) The district court **must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case**. A party appealing from the order must file with the court of appeals a copy of the district court's order and **the court's statement of reasons** as soon as practicable after filing the notice of appeal. An appellant who questions the factual basis for the district court's order must file a transcript of the release proceedings or an explanation of why a transcript was not obtained.
>
>   (2) After reasonable notice to the appellee, the court of appeals must promptly determine the appeal on the basis of the papers, affidavits, and parts of the record that the parties present or the court requires. Unless the court so orders, briefs need not be filed.
>
>   (3) The court of appeals or one of its judges may order the defendant's release pending the disposition of the appeal.

(b) **Release After Judgment of Conviction**. A party entitled to do so may obtain review of a district-court order regarding release after a judgment of conviction by filing a notice of appeal from that order in the district court, or by filing a motion in the court of appeals if the party has already filed a notice of appeal from the judgment of conviction. **Both <u>the order</u> and the review are subject to <u>Rule 9(a)</u>**. The papers filed by the party seeking review must include a copy of the judgment of conviction.

(c) Criteria for Release. The court must make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, and 3145(c).

(Emphases added)

4

This Court has not thus far made any findings to support its decision to detain Stilley pending appeal. Those findings are required both for purposes of the initial decision and its justification, and for the benefit of the appellate court that may review the decision.

**STANDARD FOR GRANTING RELEASE PENDING APPEAL**

The standard for release pending appeal is set forth at 18 USC 3143(b). The statute provides in pertinent part as follows:

> (b) **Release or detention pending appeal by the defendant.**
>
> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds --
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title [18 USCS § 3142(b) or (c)]; and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> >
> > > (i) reversal, ....

Judge Friot did not make any findings that Stilley is likely to flee or pose a danger to any other person or the community. Nor could any such findings be rationally made.

Stilley has a rock-solid case for reversal on appeal. Stilley is aware of the fugitive disentitlement doctrine. *Giri v. Keisler*, 507 F.3d 833, 835-36 (5th Cir. 2007)[1] If Stilley fled, his appeal would doubtless be promptly dismissed. A dismissal of the appeal would be utter disaster for Stilley.

Stilley has always appeared for all hearings. Flight from justice would be the ultimate folly, the height of irrationality. Judge Friot has never suggested that Stilley is stupid or irrational. This Court has the Presentence Report (PSR) from the original conviction and sentencing. Nothing in Stilley's past

---

1  Stilley cites this 5th Circuit case because CoreCivic has disabled 10th Circuit case law *on the computer Stilley uses*. Upon inquiry the librarian offered to sell paper copies of 10th Circuit cases for 10 cents a page – if he had a citation. This is classic CoreCivic behavior, degrading resources, crushing peaceful petition and due process capabilities, then seizing the opportunity for profiteering.

suggests that he is a danger to any other person or to the community. Quite the opposite, he is an asset to the community. Nor is there the slightest indication that Stilley might somehow *become* dangerous to other persons or the community at the age of 61.

Stilley will devote the remainder of this motion to showing that he is entitled to reversal of this District Court's criminal judgment.

### DEPRIVATION OF 6TH AMENDMENT RIGHT OF ASSISTANCE OF COUNSEL

Stilley's lead-off argument is that the government has in this captioned case defaulted on a motion to quash Stilley's first revocation judgment, (Dkt. 752) and also on a separate motion to quash the original judgment. (Dkt. 338) The OKND local criminal rules give the government 7 days to respond. Otherwise the government has defaulted. *All* of Stilley's timely filed motions were *defaulted*. That amounts to a *de facto* concession that Stilley is right, and is entitled to the relief that he sought.

The core challenge to Docket 752 was predicated on the denial of 6th Amendment assistance of counsel. It is not essential to restate the arguments here. Those arguments have already been made, and they have been **defaulted** by everyone who has had an obligation to timely respond, if any valid defense against Stilley's arguments exist.

In midsummer 2024 Arkansas Secretary of State John Thurston arrogated to himself the power to unilaterally refuse to count the signatures on the Arkansas Abortion Amendment of 2024, an initiative petition aiming to amend the Arkansas Constitution. Highly aggrieved by that decision, Stilley filed his original action *Stilley v. Thurston et al*, Ark. Sup. Ct. 24CV-453, requesting that the Arkansas Supreme Court compel a count of the signatures.

Stilley was attacked on the theory that his voter registration was obtained by falsehood, because Stilley was still on supervised release from this Court's revocation judgment, Dkt. 752. Stilley responded in opposition, saying that he had told the truth and that he was in fact entitled to register to vote because Dkt. 752 was *void* from inception, and cannot gain validity. Stilley furthermore filed 1) a

6

motion to suppress Dkt. 752, and 2) a motion to suppress Dkt. 338, (the original criminal judgment) at the Arkansas Supreme Court. Stilley also propounded discovery including requests for admissions, requests for documents, and interrogatories, and filed a motion to expedite responses.

The Arkansas Supreme Court appointed a Special Master to determine whether Stilley was a lawful voter. This is only done where facts are in dispute. Stilley has no access to Arkansas case law or statutes, or for that matter virtually any other legal authorities in the State of Arkansas. This is intentional, one of CoreCivic's myriad acts of interference with constitutional rights. As of yet Stilley has not been able to get a thumb drive with his legal files, which means that he has neither formal nor informal access to Arkansas legal authorities relevant to his liberty. Stilley has no ability to link to other court filings, dockets, etc. Active links require electronic filing capabilities.

Lawyers were added to *Stilley v. Thurston, et al*, such that 5 lawyers were arrayed against one *pro se* petitioner. These were the very best of the Office of the Arkansas Attorney General, (AAG) including lawyers with illustrious awards including one for best US Supreme Court brief.

All five AAG lawyers *defaulted* on both motions to suppress, plus a motion to expedite responses to discovery. They had nothing to say – so they *said nothing*.

On the 30th day after serving discovery, including requests for admission that would unequivocally establish that Stilley had a legal right to apply for and receive his voter registration card, the Arkansas Supreme Court *dismissed* Stilley's original action petition, in a *per curiam* opinion.[2] In other words, *no one* signed the order. That order was at once the responsibility of *all the judges* and *none of the judges*, of the highest court of the State of Arkansas.

The theory of dismissal was that Stilley was not a legal voter, which in turn rested on the theory that Docket #752 is a *valid* judgment, which would mean that Stilley's felony judgment hadn't been completely discharged. Under Arkansas law, a felon can register to vote after his sentence has been

---

2   Justice Baker did not participate in this opinion/order.

completely discharged, which is to say that all parole/supervision has been completed. To the extent that Docket #752 was void, Respondent Thurston's theory is manifestly wrong. Yet the Arkansas Supreme Court's dismissal order didn't acknowledge and rule upon any of Stilley's three aforementioned motions, all *defaulted* by 5 energetic and motivated blue-chip lawyers.

On the 31st day after service of the discovery (by electronic means, undenied and undeniable) the requested admissions would have been admitted by Arkansas Secretary of State John Thurston. The *sole ground* for dismissing the core of Stilley's original petition would have been reduced to rubble. Stilley's adversaries were *saved by the bell*, *one day* before they would have been forced to *admit the undeniable truth*.

This Court should know why this was necessarily known by the Arkansas Supreme Court justices to be an error and a deprivation of due process. The appointment of the Special Master was an acknowledgment that material facts were at issue. Stilley paid some $3,300 for the costs of the Special Master – who studiously avoided ruling on Stilley's motions, or expressing his opinion of the merits of Stilley's legal and factual theories -- even after Thurston and his lawyers were in default under the rules of the Arkansas Supreme Court.

Stilley paid some $3,300 in a vain attempt to establish the facts material to the decision. His discovery was cut off by means of *a dismissal* one day before the truth of Stilley's claims would have been *deemed admitted by operation of law*. Worse yet, the mandate was issued immediately, thus cutting off Stilley's entitlement to a petition for rehearing.

It gets worse – or better, depending which side you're on. Stilley tendered a petition for rehearing, along with a motion to recall the mandate so as to permit the filing, response, and ruling on the petition for rehearing. The motion to recall the mandate *was denied*. Why? For all the reasons Thurston's lawyers couldn't resist Stilley's motions to suppress, they couldn't resist Stilley's arguments on petition for rehearing. Thus they got a pass and weren't required to respond.

Stilley filed most of his pleadings in this revocation prosecution early enough to ensure that the government would be duty bound to file a response before the hearing. That was intentional and planned. The government is entitled to due process, which in the ordinary case includes the time allocated by the rules to respond to a written motion.

As shown by the exhibit to this motion, Charles Anthony O'Reilly, counsel for the government, stated that the court had said that he needn't respond to any of Stilley's motions. This Court from the bench, during the felony criminal trial on 11-13-2024, denied telling Mr. O'Reilly any such thing. Asked if the Court's personnel had said such thing, the Court became angry and told Stilley to "move on." Stilley complied.

Stilley on the day before the hearing filed a motion for this Court's recusal. That of course didn't give the government the 7 days authorized by the local criminal rules, to file a response. However, a glaring inconsistency has been shown. The Court denies any *ex parte* communication with any counsel or party to this litigation. Stilley shows that Mr. O'Reilly states in writing that he was excused from the duty of responding to any of Stilley's motions.[3]

### WHO BELIEVES THAT STILLEY'S CITED US SUPREME COURT CASES ARE UNASSAILABLE?

Let us now consider a partial list of lawyers and jurists who *by their actions* telegraph a belief that Stilley is absolutely right on the facts and on the law.

1) The five esteemed Arkansas Attorney General lawyers who on behalf of Secretary of State John Thurston defaulted on Stilley's meritorious motions, and successfully opposed recall of the mandate, so as to yet again dodge the issues;

2) One Special Master who acknowledged Stilley's arguments but wouldn't rule on the motions;

3) The six Arkansas Supreme Court Justices who dismissed Stilley's case without ruling on his

---

3    See Exhibit "1" to the motion seeking appointment of a judge of a court having original jurisdiction over the offense, filed contemporaneously with this pleading.

motions or allowing him to complete even the most basic discovery;

4) The Arkansas Supreme Court law clerk who wrote the *per curiam* opinion but couldn't think of a logical rebuttal to the facts and arguments in *any* of Stilley's motions;

5) Kevin Holmes, the Crawford County Prosecutor who drafted a one count criminal information which included *not so much as one complete sentence* accusing Stilley of any crime;[4]

6) Government counsel Charles Anthony O'Reilly, who seized upon the Judge Friot's *de facto* ruling that he "needn't" respond to Stilley's motions;

7) Judge Friot, who denied Stilley's motion for initial hearing but then surreptitiously conducted a *de facto* initial hearing without inviting Stilley, and proclaimed a *de facto* "off the record" order giving O'Reilly permission to default without the normal consequences of default.

Stilley's own faith that US Supreme Court precedent would protect him cannot reasonably be questioned. When he was convicted in 2010, his name was blasphemed front and center of the statewide newspaper in Arkansas as well as many other newspapers and news sources. The chances that this would be forgotten in the corridors of power in Little Rock, Arkansas may without violence to reason be rounded off to *zero*.

Stilley nevertheless threw his hat into the ring, for what promised to be the most hotly contested statewide initiative petition of 2024. The fact that he would "draw heat" for that decision likewise cannot reasonably be questioned. Stilley's profound trust that *the law* would protect him impliedly included the 10th Circuit and the district court that would decide his fate and his liberty.

The consistency of beliefs of the parties on both sides of this controversy, *as expressed by actions*, is amazing. The different parties just had different ways of expressing their beliefs.

**SPECIFIC FINDINGS REQUESTED**

The following findings are requested. Means of enhancing judicial economy will be discussed

---

[4] It is a pity that Stilley cannot include a link to this amazing criminal charging instrument. Then again, this pleading would be much improved by many links to documents that would make Stilley's claims easy to verify.

at the conclusion of the list. To the extent appropriate, Stilley requests both record evidence and suitable authorities, as to each finding requested. Findings should address sub-questions fairly subsumed within the main question.

1. What is the government's theory of criminal prosecution and conviction on the 2nd revocation prosecution, consistent with due process? Is it the pretrial theory that Stilley paid the just debts of his clients, in conformity with their specific requests, or the posttrial theory of theft? Is it a hybrid theory? Is Stilley entitled to any information concerning the "nature and cause of the accusation?"

2. Is a criminal judgment taken in defiance of the 6th Amendment right of assistance to counsel *void*, as provided by Stilley's cited US Supreme Court case law, or is it merely *voidable*, despite the complete absence of any attempt by Stilley's adversaries to find and cite such non-existent case law? After some 7 weeks of incarceration, Stilley has not so much as a scrap of paper from his criminal case, and thus must write from memory, and refer his readers to pleadings and papers based on memory.

3. Does the record show any evidence that any of Stilley's alleged offenses, set forth in the 9 counts of the petition to revoke, occurred (if at all) in the OKND? If not, where is the case law saying that the criminal venue provisions of US Constitution Article 3, Section 2, Clause 3, and the 6th Amendment don't apply in second or successive criminal prosecutions under supervised release statutes?

4. Findings, evidence, and authority for the claim that the supervised release statutes authorize, in cases such as this one, up to two years on each of the original counts of conviction.

5. Findings, evidence, and authority for a third criminal prosecution of an indictment never returned in open court. In this case it was a sealed Petition to Revoke, and there is not so much as a pretense of returning anything in open court.

11

6. Findings, evidence, and authority for an unlimited number of prosecutions of the purported original indictment under a theory of "supervised release."

7. Findings, evidence, and authority as to what constitutes the indictment or indictment substitute in this case, and the charges as to each count.

8. Findings, evidence, and authority justifying the denial of all other motions filed by Stilley, even though they were defaulted by the government.

9. Findings, evidence, and authority with citations to the record in support of the original claims of theft and/or fraud.

10. Findings, evidence, and authority with citations to the record in support of the current claims of fraud.

11. Findings, evidence, and authority justifying claims of fraud (by Judge Friot) when fraud wasn't pleaded in the petition for revocation, or in any other document such that Stilley should have adequate due process notice of the charges.

12. Findings, evidence, and authority for the right to prosecute on a theory contradictory to the government's pretrial theory, set forth in writing in numerous pleadings filed by the government prior to the jury trial in 2009.

13. Findings, evidence, and authority for the government's theory of prosecution this time.

14. Findings, evidence, and authority authorizing US Probation Officers Ryan Forsyth and Kory (spelling?) McClintock to draft and sign the Petition to Revoke in this case, despite the fact that neither have a law license. These findings should be made in light of Judge Friot's claims that Stilley was engaged in unauthorized practice of law because he helped various criminal defendants with various tasks including helping them present their ideas in writing, with good grammar and compliance with the rules.

15. Findings, evidence, and authority to show that Stilley's administrative assistance amounts to

unauthorized practice of law, and for what jurisdictions.

16. Findings, evidence, and authority as to whether or not this is a "criminal prosecution" within the meaning of the 6th Amendment.

17. Findings, evidence, and authority concerning whether or not Stilley was entitled to a jury trial on a *de facto* criminal prosecution which Judge Friot construed to include 3 counts, each of which carried up to 2 years confinement, to run either concurrently or consecutively according to the decision of the judge.

18. Findings, evidence, and authority as to whether a Petition to Revoke Supervised Release carrying up to 2 years incarceration is an "infamous crime" within the meaning of the 5th Amendment. See also Fed. Rule Crim. Proc. 7(a).

19. Findings, evidence, and authority as to whether or not Stilley was entitled to proof beyond reasonable doubt in this *de facto* criminal prosecution.

20. Findings, evidence, and authority as to all other issues raised in Stilley's answer to the Petition to Revoke.

21. Findings, evidence, and authority as to 1) when Friot's ex parte order referenced in Exhibit "1" to the "Motion For an Authorized Judge..." was actually communicated to Charles Anthony O'Reilly; 2) how this message was communicated; 3) by whom; 4) why this was done; 5) why Stilley was not informed or allowed to participate; and 6) the reason(s) Friot denied the existence of this *de facto* order at the revocation trial.

22. The same or similar information as to any other instances of *ex parte* communication with parties or counsel, by Judge Friot.

**MEANS OF ENHANCING JUDICIAL ECONOMY**

Stilley for both petitions to revoke filed a motion for initial appearance before a magistrate. Both times the request has been denied. This is most unfortunate, since a properly conducted initial

13

appearance includes the prospect of scheduling pretrial motions and responses, discovery, various disclosures, etc., all of which are likely to reduce the judicial resources consumed, and to limit the need to consider ancillary questions.

Stilley has provided authorities requiring findings with respect to the release decision. Those are essential for fairness, and contribute to judicial economy at the 10th Circuit. Stilley does not construe these authorities to require district courts to shoulder undue burdens. If the release decision is adequately informed by a moderate number of findings, Stilley doesn't necessarily see the need for extensive findings about every single question presented. Of course it is important to limit the *probability* of a need for remand.

Counsel for the government by the rules have 7 days to respond to a motion. The government was allowed to illegally dodge the legal and ethical duty to respond. Thus the government was allowed to evade issues for which they have no meritorious argument, and thus had a duty to concede.

The Court should be able to limit efforts by ordering the government to submit proposed findings, evidence, and authority as to each of the numbered paragraphs above. The Court should remind counsel for the government of the duty to *timely* concede issues, where the law and the facts leave the government with no arguably meritorious defense.

Stilley is locked up at the CoreCivic facility set forth below. If counsel for the government wants more than the time, it is no excuse that following the local rule about getting the position of the opposing party is difficult. It is possible. To the extent that the rules excuse the inquiry requirement with respect to incarcerated defendants, the Court should *specifically* require it in this case. They have created the dysfunction of which Stilley complains. They should navigate it. Stilley will promptly cooperate.

This entire prosecution has felt like an argument *with* the court, not proceedings before the court. Stilley expects the government to timely supply this Court with sufficient and suitable findings,

to the extent that such findings arguably exist.

Stilley hereby gives notice that he requests an opportunity to reply to the response, unless the government concedes that stay/release pending appeal is required under the law and facts of this case.

The US Supreme Court has explained that a trial judge typically may not enter certain classes of *sua sponte* orders without issuing a show cause order. The point is that due process requires that the party who would suffer loss as a result of such an order has a right to be heard with respect to facts and authorities that might demonstrate the envisioned *sua sponte* order would be unjust.

Due process requires that Stilley know the government's arguments and have a chance to meet them. Thus far no government attorneys have demonstrated any willingness to put black letters on white paper, explaining why Stilley's legal theories are wrong. They won't *concede*. They just won't set forth their own theories either, lest Stilley quickly and decisively shoot them down.

## CONCLUSION

This Court should order the government to timely respond and give Stilley time for reply, unless the government concedes. Thereupon this Court should enter an order granting Stilley release/stay pending appeal.

~~December 20, 2024~~

By: /s/ Oscar Stilley                                                1-2-2025
Oscar Stilley, DOJ-FBOP 10579-062                      Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

## CERTIFICATE OF SERVICE

By my signature above I certify that I served this document by sending a copy first class mail, postage prepaid, to the Clerk for filing via CM/ECF, whereupon all parties entitled to service will receive a copy electronically.

Oscar Stilley 10579-062
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023



Postmarked 1/8/25
09CR43-SPF

RECEIVED
JAN 13 2025
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

LEGAL/SPECIAL
MAIL

CONFIDENTIAL

US District Court Clerk
411 US Courthouse
333 W. Fourth Street
Tulsa, OK 74103

LEGAL/SPECIAL MAIL

This correspondence is from an offender housed at Cimarron Correctional Facility. The facility is not responsible for substance or content.