

FILED

DEC 1 5 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES                    PLAINTIFF/RESPONDENT

V.                    Criminal Case No. 4:09-cr-43-2 SEH

                Civil case No. _____

OSCAR STILLEY                    DEFENDANT/PETITIONER

**STILLEY'S VERIFIED PROVISIONAL PETITION PURSUANT TO 28 USC 2255,
TO VACATE ALL CRIMINAL JUDGMENTS AGAINST HIM**

Comes now Petitioner Oscar Stilley (Stilley) and for his verified provisional

petition pursuant to 28 USC 2255, to vacate all criminal judgments against him,

and states:

### JURISDICTION AND VENUE

1.    Stilley in late 2021 filed a petition under 28 USC 2255. Stilley doesn't have

ready access to the civil case number, but believes the criminal docket number was

approximately Docket # 701.[1]

2.    Stilley has not filed any other 2255 petitions in this case.

3.    District Judge Stephen P. Friot dismissed the 2255 petition based on a claim

of untimeliness, claiming Stilley had not set forth reasons for the delay.

---

[1]    "Docket" or "Dkt." refers to docket items in the captioned case, absent additional
information sufficient to distinguish that reference from the others. "Circuit Docket" or
abbreviations thereof refer to 10th Cir. 24-5133, the appeal of the second revocation
judgment, in the absence of distinguishing additional information.

✓ Mail ___ No Cert Svc ___ No Orig Sign
___ C/J ___ C/MJ ___ C/Ret'd ___ No Env
___ No Cpys ✓ No Env/Cpys ___ O/J ___ O/MJ

4.    In fact Stilley set forth approximately 10 pages of reasons that he could not file 1) a competent appellate opening brief, or 2) a competent 2255 petition, due to the conditions under which he was confined.

5.    The government did not respond to any part of the petition on a paragraph by paragraph basis. Rather, the government filed a motion to dismiss.

6.    To the extent not contrary to law or rule or Stilley's legitimate legal interests, Stilley incorporates that prior 2255 petition into this petition, as if set forth word for word, and requests that the government be ordered to respond to it forthrightly, paragraph by paragraph.

7.    That petition was not ruled upon or decided by a disinterested tribunal, for reasons which will be hereinafter stated.

8.    Therefore said 2255 petition was not validly dismissed or decided, and remains for decision by a lawful and disinterested judicial officer.

9.    To the extent not contrary to law or rule or Stilley's legitimate legal interests, Stilley incorporates all parts of this petition into all other parts of this petition, as if set forth word for word.

10.    Stilley had a right to file a 2255 petition against the first revocation judgment, docket #752. Stilley's 2255 petition right commenced after jurisdiction was restored to this district court by the filing of the mandate in this district court criminal docket on 10-16-2025. Dkt. 845.

11.   The general rule from federal case law is that a litigant is not permitted to prosecute a parallel direct criminal appeal together with a 2255 petition attacking the same judgment.

12.   The necessary corollary is that the right to file a 2255 is at least tolled, if not reset to a full year after the mandate from the direct criminal appeal.

13.   On the direct criminal appeal of the second revocation judgment (Dkt. 820) Stilley attacked all three judgments as unlawful and void or at least voidable.

14.   Stilley's direct criminal appeal of the second revocation judgment (10th Cir. 24-5133) was decided on September 24, 2025.

15.   Jurisdiction in the US District Court for the Northern District of Oklahoma (OKND) was re-vested on the filing of the mandate 10-16-2025. Dkt. 845.

16.   Stilley is currently incarcerated on the strength of the second revocation judgment, Dkt. 820.

17.   This Court has jurisdiction and venue because the original criminal judgments were entered in the captioned court.[2]

18.   To the extent not contrary to law or rule or Stilley's lawful interests, Stilley incorporates into this pleading all other pleadings which are filed contemporaneously with this filing.

---

[2]    Stilley presumes that the government will not challenge venue to overturn a criminal judgment taken without venue, or at least in which venue was challenged by the defendant. Any such theory could lead to absurd results.

19.    Stilley hereby gives notice that he intends to rely on other filings in this case and other cases, bearing upon the issues in this case. Stilley perceives that this is customary practice in this court.

20.    Especially but without limitation, Stilley intends to rely upon his motions to suppress criminal judgments #338 and #752, filed in *Oscar Stilley v. John Thurston, Secretary of State, et al*, Arkansas Supreme Court 24-453, along with all other pleadings therein, showing in particular but without limitation that the Respondent defaulted on the said motions, but Stilley still did not get a ruling on the merits of said motion. Stilley likewise intends to rely on dockets #805 and 809, motions to vacate judgments 752 and 338 respectively, both of which were *de facto* defaulted yet resulted in rulings favorable to the government.

21.    All or nearly all the technical information called for by the customary 2255 standard form is included in the previous 2255 petition. Stilley cannot create a pleading nicely formatted with all information in the order and form called for by the standard form, because his adversaries the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP) have stomped out his ability to access and use the information from this case and related cases.

22.    Stilley is filing this as a "provisional" pleading because he intends to prepare and file a 2255 petition in compliance with the rules and customs of the court, with working links including pinpoint cites, to make the Court's work less burdensome and more effective.

23.     Therefore Stilley asks that this pleading be accepted pending any order to upgrade the format and any supplemental information, after Stilley is at a place where he can access the necessary items for preparation of quality pleadings.

24.     Stilley was on August 18, 2025 recommended for halfway house to begin October 1, 2025.

25.     The Case Manager said she'd recommend September 1st, if that date wasn't already so near.

26.     Stilley's case manager Ms. Ellis on Thursday, November 20, 2025 informed Stilley that his halfway house request was denied in full, that she knew the reason, but that she couldn't inform Stilley of the reason.

27.     Stilley remains at Yazoo City Prison Camp.

28.     On information and belief, Stilley could get access to the required resources for a proper pleading, from the halfway house.

## I.     DENIAL OF A DISINTERESTED AND IMPARTIAL TRIBUNAL AT THE DISTRICT COURT

29.     Stilley is currently in custody based upon the second revocation of supervised release in the captioned criminal case. Dkt. 820.

30.     The validity of the second revocation of supervised release is dependent upon the validity of both the initial criminal judgment and commitment order, Dkt. 338, and the first revocation of supervised release. Dkt. 752.

31.    Absent the validity of either of those two orders, there was no valid supervised release to "revoke."[3]

32.    The first revocation of supervised release was for its validity dependent upon the validity of the underlying original criminal judgment.

33.    Stephen P. Friot is a lawfully appointed and confirmed judge of the Western District of Oklahoma.

34.    Judge Friot is not a lawful judge of the Northern District of Oklahoma.

35.    Judge Friot held an *ex parte* hearing with counsel for the government, unbeknownst to Stilley, but believed to be sometime between the filing of the petition to revoke (Dkt. 792) and approximately 11-6-2024, the date of an email from US Attorney Charles Anthony O'Reilly to Oscar Stilley.

36.    Said email is attached to Dkt. #836,[4] and thus is part of the record in this case.

37.    The email exchange started with Stilley asking Charles O'Reilly, lead counsel for the government, when he thought he might be able to respond to Stilley's pending motions.

38.    Mr. O'Reilly responded with words to the effect "[T]he court informed the government that it needn't respond to your motions." Stilley of course stands upon the precise words of the email, which are in the record.

---

[3]    "Revocation" of supervised release is a deceptive misnomer designed to hide the fact that supervised release is inherently unconstitutional. "Revocations" are in fact criminal prosecutions masquerading as something else, so as to pretend that the strictures of the constitution and bill of rights don't apply.

[4]    Stilley is nearly certain this is the correct docket item. If not this one it is Dkt. 837, filed the same day.

39.    On information and belief, Judge Friot has had other *ex parte* hearings and issued other *ex parte* orders, to surreptitiously and unlawfully assist the government in the captioned criminal case.[5]

40.    Stilley cannot establish the fact of these probable additional *ex parte* hearings without a hearing in which parties with knowledge, including but not limited to Judge Friot and counsel for the government, are present and available as witnesses. Stilley is of course willing to cooperate with opposing counsel to limit the imposition on prosecutorial and judicial personnel, to the extent not inconsistent with justice and Stilley's legitimate interests.

41.    Stilley likewise will require a hearing to establish the record of such hearings, orders issued, etc.

42.    It is a near certainty that Judge Friot had secret *ex parte* contact with the government on several occasions, including but not limited to when Judge Friot entered a dispositive motion deadline, and the government switched their theory of criminal liability promptly after that deadline.

43.    Judge Friot lied from the bench about whether or not he had an *ex parte* hearing in the case, on 11-13-2024.

44.    When asked whether he told the government they need not respond to Stilley's motions, he denied it. This was during the hearing, on the record.

45.    When Stilley asked if his court personnel had told the government they need not respond to Stilley's motions, he angrily said "move on!"

---

[5]    This should be construed to include the 2255 petition as well as related proceedings in the Western District of Oklahoma, etc.

46.    Stilley moved on not because he was finished with the subject, but because he was afraid of a summary contempt order, and immediate consignment to jail for contempt on the basis of that order.

47.    Stilley was entitled to a decision on the question of release pending appeal by a lawful, disinterested, impartial US district judge of the district court having jurisdiction.

48.    Stilley filed a motion setting forth the legal authorities and explaining why that Judge Friot was not a lawful judge to decide Stilley's request for release pending appeal. Dkt. 836.

49.    As of even date, no ruling on the merits of this motion has ever been made.

50.    Judge Friot was assigned to Stilley's criminal case from approximately April or May 2009, until he removed himself from this case by an order dated 1-15-2025, Dkt. 838.

51.    Judge Friot did not mention the fact that his 1) *ex parte* contact, 2) *ex parte* order, and 3) shameless lying about the facts **from the bench** had been proven by Stilley's motion #836, filed two days prior to Judge Friot's *de facto* recusal.

52.    As part of the record, Stilley relies on the facts and argument of that motion and brief.

53.    Stilley was denied such lawful, disinterested, and impartial district judge.

54.    Stilley was denied a lawful, disinterested, and impartial judge at the original pretrial, trial, and sentencing. Stilley was furthermore denied such a judge at both revocation hearings.

55.    The government has done nothing to attempt to show that the error was harmless.

56.    It is the government's duty to negate any reasonable possibility of prejudice, in case of an *ex parte* hearing and/or order.

57.    Facts showing undeniable prejudice are laid out elsewhere in this pleading.

58.    They government hasn't shouldered their burden to negate any reasonable possibility of prejudice, because it can't.

59.    The government has been reduced to feeble implicit denials of the claim that Judge Friot lied through his teeth from the bench. See e.g. 10th Cir. 24-5133 Dkt. 63, pg. 23.

60.    The government can't expressly deny that Judge Friot lied from the bench, because 1) they know better, and 2) that cure would be worse than the disease.

61.    Judge Friot was an accuser of Oscar Stilley. See Dkt. 792, "Petition for Summons," the charging instrument, which both by the docket and the pleading itself is shown to be the product of Ryan Forsyth, Kory McClintock, and Judge Stephen P. Friot.

62.    Forsyth and McClintock are non-lawyer employees of US Probation. Ryan Forsyth works for the Western District of Arkansas, and Kory McClintock works for the Northern District of Oklahoma.

63.    Judge Friot provided expert testimony from the bench, claiming that the acts to which Mr. Forsyth testified actually amounted to the unauthorized practice of law. Stilley is denied meaningful access to the transcript, but will provide citations

as soon as reasonably practicable after this denial of meaningful access to the courts is remediated.

64.    Assuming the correctness of Friot's testimony, neither Forsyth nor McClintock have any right to draft or file legal pleadings, including pleadings to "revoke" supervised release.

65.    Thus Stephen P. Friot was at once Stilley's accuser, a witness against him, and the presiding judge in the case.

66.    Stilley was denied his fundamental right to cross-examine Judge Friot with respect to the expert testimony he provided against Stilley, to establish an essential element of one of the "counts" of the Petition for Summons, Docket 792.

67.    Judge Friot's expert testimony violated many other rules, too numerous to catalog fully in this provisional petition under 28 USC 2255.

## II.    DENIAL OF A DISINTERESTED AND IMPARTIAL TRIBUNAL AT THE CIRCUIT COURT

68.    Stilley was by law and rule entitled to one direct appeal, to a disinterested and competent appellate tribunal.

69.    The US Constitution protects that right to a disinterested and competent tribunal, as a matter of due process.

70.    Stilley was denied a disinterested and impartial tribunal at the Circuit Court.

10

71.    Stilley filed a motion for remand to complete the record, obtain the due
process required by law with respect to release pending appeal, etc. Cir. Dkt. 32,
filed 2-3-2025.

72.    The Circuit Court stiff-armed Stilley by simply not timely ruling on the
motion to remand the case for the correction and completion of the official record.

73.    The Circuit Court denied the motion on a pretense, on 6-17-2025, more than
four months after the filing of the motion. Cir. Dkt. 67. Stilley exposed their perfidy
in his motion for reconsideration, Cir. Dkt. 79.

74.    When the government asked to supplement the record, their motion was
granted the same day.

75.    Stilley filed a motion for reconsideration of the denial of remand to complete
the record, etc. Cir. Dkt. 79.

76.    The motion for reconsideration explained, amongst other things, that denying
prompt access to evidence potentially relevant to a federal proceeding is a serious
federal felony.  Cir. Dkt. 79, pg. 13-15.

77.    The government filed no opposition to said motion for reconsideration.

78.    The 10th Circuit panel denied the motion for reconsideration, and two other
motions, in a one sentence minute order (Cir. Dkt. 80) some 6 minutes before a
panel decision that evaded the main issues in the case. The order gave no
explanation of any reasons. Indeed, the minute order didn't even include the docket
numbers for the three motions summarily denied.

79.    Stilley filed a conditional motion for recusal, asking for the recusal of those members of the court unable or unwilling to proceed on the basis of a true and correct record. Dkt. 73.

80.    To the extent not forbidden by the rules and customs of this Court, Stilley relies upon the arguments set forth in that motion and brief, in support of this count of his 2255 petition.

81.    The government didn't respond in opposition to this motion.

82.    The panel didn't claim that it was proceeding on the basis of a true and correct record.

83.    The panel said nothing in the way of explanation to suggest that Stilley's motion lacked merit.

84.    The circuit court panel summarily denied the motion in a docket text order some 6 minutes before the panel decision affirming the judgment.

85.    The circuit panel in fact refused to proceed on a true and correct record.

86.    The circuit panel refused to elect a theory of the original prosecution, or compel the government so to do.

87.    The panel knowingly based its decision on a record that was neither true nor materially and substantially complete.

88.    The panel ignored Stilley's claims of denial of the 6th Amendment right to assistance of counsel.

89.    The panel ignored Stilley's claims of a false record, and case law requiring the government to correct known falsehoods in a criminal case, before proceeding further.

90.    The panel's refusal to address these issues was because following the law would require that Stilley be exonerated completely and freed immediately.

91.    These and other matters prove that Stilley was denied an impartial, disinterested, and competent tribunal for the one direct appeal to which he was entitled, in the appeal of his second revocation judgment, Docket #820.

### III.    DENIAL OF 6th AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL RENDERED THE FIRST REVOCATION JUDGMENT, DOCKET #752, A NULLITY

92.    Stilley preparatory to the first revocation hearing in district court filed a motion for re-appointment of his standby counsel from the original criminal trial. Dkt. 804.

93.    This motion was summarily denied without waiting for a response from the government.

94.    Stilley filed a motion for initial appearance, as required by pertinent Federal Rules of Criminal Procedure 32.1. Dkt. 803.

95.    Judge Friot promptly denied that unopposed motion.

96.    Stilley at the hearing 11-21-2022 requested 30 days, or at minimum 15 days, to seek counsel on his own, out of his own meager resources.

97.    Judge Friot denied said motion.

98.    Judge Friot opined that Stilley could have a limited amount of time to look for assistance of counsel for unidentified **_future_** proceedings, while stating that the instant proceedings would not be delayed.

99.    During the first revocation proceeding, from the first witness to the conclusion of the proceeding, Stilley did not have any 6th Amendment assistance of counsel whatsoever. Stilley briefed these issues carefully in his motion to vacate Docket #752, the first revocation judgment. Dkt. 805.

100.    Stilley was immediately remanded to jail that day, at the conclusion of the proceeding.

101.    A criminal judgment taken in violation of the 6th Amendment right to assistance of counsel is void.

102.    Indeed, the government in its appellate brief, in 10th Cir. 24-5133, Dkt. 63, pg. 15, cited a case collecting cases saying that as a general rule one cannot attack a revocation judgment later on, except through direct appeal or 2255 proceedings.

103.    One of the collected cases plainly stated that the sole exception to the rule is cases in which a defendant has been denied the assistance of counsel. Cir. Dkt. 77, pg. 22.

104.    Docket #752 is a nullity because Stilley did not 1) receive the assistance of counsel, or 2) validly waive the assistance of counsel, or 3) receive from a magistrate advice as to his right to the assistance of counsel, as required by Federal Rules of Criminal Procedure 32.1 (a).

## IV. THE CONDUCT OF SECRET PROCEEDINGS WITHOUT COUNSEL PRESENT AMOUNTS TO THE DENIAL OF 6th AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL, THUS RENDERING THE SECOND REVOCATION JUDGMENT, DOCKET #820, A NULLITY

105.    When counsel is totally absent from or prevented from assisting the accused during a critical stage of trial, the US Supreme Court presumes that the accused has suffered constitutional error without requiring a corresponding showing of prejudice.

106.    The common name of such error is "*Cronic*" error, in reference to the seminal case on the subject, namely *United States v. Cronic*, 466 US 648 (1984).

107.    Stilley suffered outrageous *Cronic* error, during the revocation proceedings 11-13-2024.

108.    Stilley asked for an initial appearance (Dkt. 803) and for his original standby lawyer 11-4-2024. (Dkt. 804). Judge Friot denied Dkt. 803 on 11-5-2024, and on 11-7-2024 ruled that his original standby lawyer, Charles Robert Burton, IV could sit at counsel table, if he so chose. (Dkt. 812). Judge Friot emphasized that he wasn't appointing Burton, and that no public funds would be paid to him.

109.    At some time it appears that Judge Friot became aware that Charles Robert Burton, IV was deceased.

110.    Judge Friot held an *ex parte* hearing, at which time he entered an *ex parte* order stating that the government needn't respond to Stilley's motions.

15

111.   Stilley doesn't know the date, the time, the place, the full slate of participants, the full scope of what was discussed, and the full scope of orders entered.

112.   Therefore Stilley needs a full and fair hearing in which these facts may be ascertained. Stilley of course remains committed to pursuing all reasonable avenues for getting this information at the least cost, trouble, and inconvenience to the government and the Court.

113.   Stilley's second revocation judgment is a legal nullity and should be declared as such, at this court's earliest opportunity.

## V.   THE OKND HAD NO VENUE OVER THE ALLEGED "CRIMES" OF STILLEY ALLEGED IN THE SECOND REVOCATION PETITION, THUS RENDERING THE SECOND REVOCATION JUDGMENT, DOCKET #820, A NULLITY

114.   None of the acts or omissions forming the accusations against Stilley occurred in the OKND.

115.   By Stilley's recollection, the government's star witness flatly admitted that Stilley had committed no acts or omissions within the territorial confines of the OKND.

116.   Stilley moved to dismiss for lack of venue and preserved the issue at district court. Lacking reasonable access to the official record, Stilley needs to provide additional information when this provisional motion is replaced with one crafted with the benefit of the usual information and tools for preparing legal pleadings.

117.  The government defaulted on all written motions, due to the fact that Judge Friot told government counsel they didn't need to respond to Stilley's motions.

118.  Judge Friot practically litigated on behalf of the government, trying to dissuade Stilley from questions about venue, as well as other lines of questioning.

119.  The government at the end of the case made no substantial arguments suggesting a legal or factual basis for finding that the OKND had venue over the charges against Stilley.

120.  Stilley asked Judge Friot about the motions, whereupon Judge Friot said he'd considered all the written motions and was denying them all. Stilley's motion to dismiss for lack of venue was denied.

121.  Judge Friot's comments and rulings from the bench lacked any statements concerning any plausible legal or factual basis for venue in OKND.

122.  Indeed, the same was true as to all the motions. Stilley's motions were summarily denied without any plausible legal or factual bases for the rulings.

123.  Such conduct amounts to a denial of a competent and lawful tribunal.

124.  Judge Friot and Mr. O'Reilly both by their actions tacitly admitted to engaging in *ex parte* communications and orders.

125.  Nothing else explains the brazen refusal of both individuals to set forth law or fact that would plausibly support Judge Friot's decisions.

## VI.    REASONS STILLEY COULD NOT RAISE THESE ISSUES ON APPEAL AND GET A RULING ON THE MERITS, AND OTHER REASONS THIS COURT SHOULD GRANT RELIEF UNDER 28 USC 2255

126.    By the recollection of Stilley, he didn't have so much as a pretense of access to the transcripts, when he filed his provisional opening brief in 10th Cir. 24-5133.

127.    Stilley was forced to "borrow" arguments as to the invalidity of criminal judgments 338 and 752, by getting a non-lawyer friend on the street to take the briefs in support of suppressing those judgment, pasting them into a gutted version of an old opening brief, and doing but the sparsest of edits by phone conversations.

128.    To this day Stilley has not laid eyes on the opening brief that was filed, although he does have the text of it, in exceedingly poor format.

129.    Indeed, Stilley was shocked to recently find out that all the links in both of those pleadings had been "flattened out" so they no longer exist in the filed version of his provisional opening brief on appeal in 10th Circuit 24-5133.

130.    Stilley got a thumb drive with pleadings, evidence, and other files on it, related to Stilley's criminal litigation. However, he was only allowed to look at documents, and only if they were pdf documents.

131.    Stilley on 4-29-2025 was told by Associate Warden (AW) Mr. Turner, that he had an entitlement to a computer with Microsoft Word, a printer, etc., necessary to prepare proper pleadings. However, AW Turner denied that Stilley had a right to access to the wherewithal to file pleadings electronically.

132.    Stilley has been denied the fruits of his successful administrative remedy, despite repeated polite request.

133.    Stilley wrote one point on appeal on Trulincs, a primitive messaging system operated by the DOJ-FBOP, and then sent those files out to be incorporated into Stilley's provisional opening appeal brief.

134.    Stilley hoped to be able to include a venue argument.

135.    When Stilley's third point on appeal was incorporated, it became clear that he was already over-length, and that it would not be possible to include another point on appeal.

136.    The details of Stilley's efforts for permission for an over-length appellate brief must wait for the final version of this pleading, since much of Stilley's paperwork, including pleadings and orders, have been confiscated by his captors.

137.    Stilley at the time had only 300 minutes of phone time per month. On that paltry amount, trying to materially reduce the word count by telephonic instructions would have been a lost cause, an exercise in frustration.

138.    Stilley at the 10th Circuit in his one direct appeal asked for recusal of judges not willing to proceed on a true and correct record. *US v. Stilley*, 10th Cir. 24-5133 Dkt. 73. This motion was denied. *Id.* Dkt. 80.

139.    Stilley wasn't informed of the identity of the panel judges, despite repeated polite request.

140.    Stilley only became aware of the identity of the panel judges when he saw the panel decision on September 24, 2025.

141.    The panel decision had only about 5 paragraphs actually discussing the merits of Stilley's almost 13,000 word brief.

142.   It is impossible from the face of the decision to discern the fact that Stilley's second point on appeal attacked the first revocation judgment, Dkt. 752, on grounds that he was denied 6th Amendment assistance of counsel altogether.

143.   In discussing the first point on appeal, the panel said nothing about *Glossip v. Oklahoma*, 145 S. Ct. 612, 221 L. Ed. 2d 90, (2025).

144.    Stilley was sent from Cimarron Correctional Facility in Cushing, Oklahoma, to Green County Jail in Springfield, Missouri, for about three weeks.

145.   While at the facility, Stilley refused to eat. Asked why, he explained that due process was completely stomped out, so much that the mere possession of plain copy paper is prohibited. Copy paper is quite literally treated as contraband.

146.   Stilley was then put in solitary confinement until after close of business on the original deadline for his opening brief in his criminal appeal, 10th Cir. 24-5133.

147.   Stilley was not given the slightest accommodation of his due process rights, for his hunger strike and peaceful petition for the wherewithal to prepare competent pleadings at Green County Jail.

148.   While at Cimarron Correctional Facility in early 2025, Stilley was barred from the Law Library for 2 weeks, on the most transparently bogus reasons.

149.   After that time was concluded, Stilley was told by the law librarian, Mr. Hodgkins, that he was permanently barred from the Law Library. No reason was given.

150.    Matters such as this have happened throughout his incarceration. It would unduly lengthen this pleading to allege all of them. Plus, he no longer has access to many of his notes.

151.    On information and belief, Stilley's halfway house and home confinement was vetoed because Stilley has many meritorious claims under 2255, that cannot be lawfully defeated, and that will result in Stilley's complete exoneration. Thus the refusal to give reasons for the denial.

152.    Stilley's petition for certiorari to the US Supreme Court for his first revocation judgment was denied 4-29-2024. Dkt. 791.

153.    Stilley was re-incarcerated 11-13-2024, less than a year after the start of his 2255 statute of limitations.

154.    Stilley filed his notice of appeal the same day, challenging all three criminal judgments against him.

155.    Absent extraordinary circumstances, a litigant is not allowed to pursue an appeal and a 2255 petition at the same time.

156.    Therefore, Stilley's one year limitation for the 2255 on the first revocation as well as the second revocation started with the mandate on 10-16-2025. Dkt. 845.

157.    Stilley requests a hearing in compliance with 28 USC 2255(b).

WHEREFORE, Stilley requests an order vacating all three criminal judgments in this case; hearings as may be necessary; and such other and further relief as may be appropriate whether or not specifically requested.

## VERIFICATION

Petitioner by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

Respectfully submitted this _____4+h_____ day of December, 2025.


By:_____

OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

## PRISON MAILBOX RULE CERTIFICATE OF SERVICE

By my signature above I declare under penalty of perjury pursuant to 28 USC 1746 that I placed a copy of this pleading in the prison outgoing mail, with sufficient US First Class postage attached, on the date stated above, addressed to the Clerk of this Court for filing and service on all parties entitled to service via CM/ECF. The prison at which Stilley is confined does not have a legal mail system. Stilley claims the benefit of the prison mailbox rule.

<>10579-062<>
Oscar Stilley
FCC Yazoo City Camp
Federal Correctional Complex
PO Box 5000
Yazoo CITY, MS 39194
United States

Legal Mail

RECEIVED

DEC 15 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

<>10579-062<>
Phil Lombardi
333 W 4TH ST
Room 411
Tulsa, OK 74103
United States

Clerk, US District Court





Postmark 12/5/25
9-CR-43-SEH-2



FEDERAL CORRECTIONAL COMPLEX
P.O. BOX 5000
YAZOO CITY, MS 39194

THE ENCLOSED LETTER WAS PROCESSED
ON 12/5 THROUGH SPECIAL
MAILING PROCEDURES.

The letter has neither been opened or inspected if the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another address, please return the enclosure to the above address.

Legal Mail