



FILED

DEC 1 5 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES                  PLAINTIFF/RESPONDENT

V.          Criminal Case No. 4:09-cr-43-2 SEH

Civil case No. _____

OSCAR STILLEY                 DEFENDANT/PETITIONER

**STILLEY'S CONSOLIDATED BRIEF IN SUPPORT OF RELEASE PENDING 2255 PROCEEDINGS AND FOR SHOW CAUSE ORDER FOR DISQUALIFICATION OF COUNSEL**

Comes now Petitioner Oscar Stilley (Stilley) and for his consolidated brief in support of release pending 2255 proceedings and for show cause order for disqualification of counsel, and states:

I.     Release pending appeal.

With respect to this claim two primary questions arise. One is whether or not the Court has the power to grant release pending the litigation of a motion under 28 USC 2255. The answer to that question is clearly yes. *Pfaff v. Wells*, 648 F2d 689, 693 (10th Cir. 1981). "…a showing of exceptional circumstances must be made for such relief, or a demonstration of a clear case on the merits of the habeas petition." Federal Rule of Appellate Procedure (FRAP) 23 necessarily implies such a power. This is part of the inherent power of federal courts.

The second question is whether release pending 2255 proceedings is warranted. The essence of the question before the Court is whether or not Stilley is likely to win. Stilley is already, by the admission of the DOJ-FBOP, entitled to go to a halfway house, hold a job, earn an income, have access to the wherewithal to draft creditable legal pleadings, spend weekends at home, etc. He isn't a flight risk or a danger to the community – and never was. The fact that he isn't yet in halfway house is almost certainly the result of perfidious interference by Stilley's political enemies.

### a. Four issues each of which are sufficient to require relief.

Consider the following short list of issues that the government can't credibly challenge:

1) Judge Stephen P. Friot held a secret *ex parte* hearing, made an *ex parte* order to the effect that the government needn't respond to Stilley's motions, then lied about it from the bench. Charles O'Reilly had an ethical duty to stand up and say the *ex parte* order was in fact issued. The revocation proceedings 11-13-2024 further proved that Judge Friot expected no substantial argument from the government, concerning law or facts. Judge Friot entered unexplained, abrupt orders that basically said "Stilley loses yet again." There was little or no effort to show a lawful basis for the orders. The Tenth Circuit panel in its decision faulted Stilley for inadequate evidence of the *ex parte* hearing, even though Stilley had

2

sought this from his initial motion for remand 2-3-2025 through the final decision 9-24-2025. That "shortcoming" can easily be remedied by putting Assistant US Attorney Charles O'Reilly on the witness stand, and compelling him to answer questions about the *ex parte* hearing in or about early November 2024, and also about other *ex parte* hearings – assuming he isn't willing to cooperate otherwise.

2) Judge Friot was the sole person with a law license to sign off on the "Petition for Summons" that commenced the prosecution of Oscar Stilley. Thus Friot was Stilley's accuser and judge at the same time, a constitutional abomination and embarrassment to the bench and bar.

3) Judge Friot gave expert testimony to the effect that Stilley's actions in helping inmates put their own ideas into good English, with good formatting, etc., amounted to the practice of law. In so doing Judge Friot indicted himself. Judge Friot was the only person signing off on the Petition for Summons, who could do so without committing the offense of unauthorized practice of law – based on his own claimed understanding of what constitutes unauthorized practice of law. Stilley wasn't allowed to cross examine Judge Friot though he was a key, indeed indispensable witness on at least one of the charges against Stilley. Taken to their logical conclusion, Judge Friot's theories made him at once the accuser, key witness, and decider of the "revocation" criminal charges against Stilley.

4) Judge Friot and the government committed *Cronic* error by holding a secret *ex parte* hearing and ruling against Stilley secretly, even though Stilley had requested assistance of counsel and furthermore requested an initial appearance at which such 6th Amendment issues must be raised.

Any one of these issues, standing alone, would compel relief under 28 USC 2255. Stilley has established **both** an undefeatable case on the merits of his petition, **and** exceptional circumstances. All these four listed evils were committed at the revocation hearing 11-13-2024, the basis for Stilley's current incarceration.

Conspicuous by their absence is the issues of one theory at trial and another at sentencing, the flagrant denial of assistance of counsel at the first revocation hearing, and various issues raised in the first petition for relief under 2255. Stilley is **not** abandoning any of these issues. On the contrary, he is reserving all these issues, and requesting that the Court order paragraph by paragraph responses to that motion within a judicially designated time frame. At the same time he is adding issues, including but not limited to those on the list above.

The government cited three cases at page 15 of its response brief, (10th Cir. 24-5133 Dkt. 63) in support of the theory that an original criminal judgment cannot be collaterally attacked on revocation. Only the third case is necessary for an understanding of why the government is not just wrong, but monumentally wrong.

The third case is *United States v. Warren*, 335 F.3d 76, 78-79 (2d Cir. 2003). The government in its response brief on appeal cited this case for the proposition that "[T]he validity of an underlying conviction or sentence may not be collaterally

attacked in a supervised release revocation proceeding and may be challenged only on direct appeal or through a habeas corpus proceeding." (collecting cases).

When the government says (collecting cases) they might at least wish ***to read the paragraph collecting the cases!***

*Custis v. United States*, 511 US 485, 496-97 (1994) is cited at the bottom of 335 F.3d at 78, for a proposition which Stilley will repeat verbatim here:

> (holding that **with sole exception of a conviction obtained in violation of the right to counsel**, a defendant has no right to collaterally attack a prior state-court conviction in a federal sentencing proceeding.)
> (Emphasis added)

It's really bad when you cite a case that absolutely, unequivocally annihilates your own position. It gets worse for the government. *Much worse*. If you read *Custis*, you'll find *Johnson v. Zerbst*, 304 US 458 (1938), cited for the proposition that "...failure to appoint counsel for an indigent defendant in a *federal proceeding* not only violated the Sixth Amendment, but was subject to collateral attack in federal habeas corpus." (Emphasis added)

The *Custis* court at 511 US 494 quoted *Moore v. Dempsey*, 261 US 86 (1923) as follows:

> "If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a ***jurisdictional bar*** to a valid conviction and sentence depriving him of his life or his liberty. ... the **judgment of conviction pronounced by a court without jurisdiction is void**, and one imprisoned thereunder may obtain release by habeas corpus."
> (Emphases added)

Counsel for Custis made a valiant effort to persuade the Court that *ineffective* assistance of counsel should fall in the same category. The *Custis* Court declined the invitation, saying at page 496:

> None of these alleged constitutional violations rises to the level of a ***jurisdictional defect*** resulting from the failure to appoint counsel *at all*. (Emphases added)

Stilley has already shown in his opening brief, with ample citation to authority, that once a prima facie case of denial of 6th Amendment assistance of counsel has been made, the burden is on the government to 1) show that the defendant actually had the assistance of counsel, or 2) validly waived 6th Amendment assistance of counsel. See e.g. *Burgett v. Texas* 389 U.S. 109, 114-115 (1967) (citing to *Gideon v. Wainwright*, 372 US 335 (1963).

Presuming a waiver from a silent record is impermissible. *Id.*, citing to *Carnley v. Cochran*, 369 US 506 (1962). In this case of course nobody even argues waiver. Whether Judge Friot *could have* gotten a waiver by giving Stilley's constitutional rights a modicum of respect is, at this time, beside the point. The fact is that neither Judge Friot nor the government so much as asked for a waiver of the 6th Amendment right to counsel. They just unceremoniously stomped every vestige of that right out altogether, as if that settled the matter.

The Tenth Circuit panel evaded the issue. They didn't rule on it. It is impossible to discern from the face of the affirmance of 10th Circuit 24-5133 that Stilley even made the argument. Why didn't they rule, or even acknowledge the argument? Because acknowledgment of the argument for all practical purposes

amounted to an acknowledgment that Stilley was entitled to have his criminal "revocation" judgments reversed and dismissed.

### b. Secret *Ex Parte* Contacts Between a District Judge and Federal Prosecutors are Constitutional Abominations.

"As a general rule of thumb, in all but the most exceptional circumstances, *ex parte* communications with the court are an extraordinarily bad idea." *United States v. Carmichael*, 232 F. 3d 510, 517 (6th Cir. 2000). Why? Because it 1) is "a gross breach of the appearance of justice," 2) is "a dangerous procedure," 3) undermines confidence in the court's impartiality, and 4) imposes on the government the heavy burden of demonstrating that the defendant was not prejudiced by the *ex parte* communication. *Id.* in the same paragraph.

In *Carmichael* the district judge twice *affirmatively* requested and twice *affirmatively* received permission from defense counsel, for *ex parte* communications at the bench, in open court. Carmichael's attorney did not object – at least according to the *Carmichael* majority. The majority opinion comments negatively on the "strident tone" of the dissent, saying that their rhetoric shed more heat than light.

Stilley stated his reasonable suspicions prior to getting incontrovertible proof, and has furthermore consistently and vigorously objected to the *ex parte* contacts, always seeking lawful and appropriate remedies. Stilley went to the very precipice of a summary contempt charge, seeking the pertinent facts. It is a near certainty

that proper proceedings to determine the facts will uncover **numerous** secret *ex parte* communications between Judge Friot and prosecutors.

*Ex parte* communications aren't inherently secret. In *Carmichael*, the *ex parte* discussion "was done under defense counsel's very nose without objection." *Carmichael* at 519. Furthermore, the contents of the colloquy between the district court and the government were made available to both Carmichael's appellate counsel and to the court of appeals.

Stilley respectfully confronted the district judge, who lied from the bench about whether or not he'd engaged in *ex parte* communications with government counsel. Asked if he'd engaged in *ex parte* communications through his office personnel, he angrily said "move on!"

As to the government's preposterous idea that use of court personnel mitigates the offense, consider *Kaufman v. American Family Mutual Insurance Company*, USDC Colo. Civ. 05-cv-2311 WDM-MEH, 2008 US Dist. Lexis 97625 (2008) where Judge Miller explained:

> I consider chamber's staff, including law clerks, to be an **extension of the judicial officer** and covered by these rules. To the extent that communications concern routine matters of scheduling or administration, *ex parte* communications with law clerks and judicial assistants are permitted. See, e.g., ABA Code of Judicial Conduct, Rule 2.9(A)(1) (When circumstances require it, *ex parte* communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided: (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication; and (b) **the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication**, and gives the parties an opportunity to respond.") However, *ex parte* communications **relating to the merits of a pending case or efforts to influence or learn the judge's mind are *most definitely improper*.**

8

(Emphases added)

The government has done nothing to attempt to show that the error was harmless. It is their duty to negate any reasonable possibility of prejudice. They haven't shouldered that burden because they *can't*. They have been reduced to feeble *implicit* denials of the claim that Judge Friot lied through his teeth from the bench. They can't *expressly* deny that Judge Friot lied, because 1) they know better, and 2) that cure would be worse than the disease.

It is difficult to conceive of a more prejudicial example of *ex parte* communications between a court and a prosecution team. Stilley had a legal argument so strong[1] that 5 of the best lawyers in the Arkansas Attorney General's office defaulted altogether. Yet the government pretends that Stilley's arguments – and all of them – are so frivolous that he had no right to be present when they are decided, *en masse*.

When counsel is totally absent from or prevented from assisting the accused during a critical stage of trial, the Supreme Court presumes that the accused has suffered constitutional error without requiring a corresponding showing of prejudice. *United States v. Cronic*, 466 US 648, 659, (1984).

Stilley suffered flagrant and outrageous *Cronic* error during the revocation proceedings below. Stilley asked for an initial appearance (Dkt. 803) and for his original standby lawyer 11-4-2024. (Dkt. 804). Judge Friot denied Dkt. 803 on 11-5-

---

[1] This is not an effort to brief the 2255 motion proper. Stilley hopes to get release pending 2255 proceedings, whereupon claims such as this one can be backed up with pinpoint cites, links, and other helps that reduce the burden on this Court.

9

2024, and on 11-7-2024 ruled that his original standby lawyer, Charles Robert Burton, IV could sit at counsel table, if he so chose. (Dkt. 812). He emphasized that he wasn't appointing Burton, and that no public funds would be paid to him.

> II.   Counsel have disqualified themselves by their outrageously unethical behavior.
>
>       a. Secret *ex parte* contacts with the court are unethical and require that the offenders be disqualified as advocates and made available as witnesses.

This pleading is relatively short considering the breadth of the subject matter, and intentionally so. A 2255 petitioner is generally entitled to a hearing. 28 USC 2255(b). Under some circumstances, for example when the judge presided at trial and other hearings, and is thoroughly familiar with the record, it may be possible to dispense with a hearing. *McCarthy v. United States*, 764 F.2d 28, 31-32 (1st Cir. 1985).

Federal judicial officers are governed by the Code of Judicial Conduct. Canon 3A(4) of that code says that federal judges "may neither initiate nor consider *ex parte* or other communications on the merits or procedures affecting the merits of a pending or impending proceeding." Canon 3B(3) directs judicial officers to "take or initiate appropriate disciplinary measures against a … lawyer for unprofessional conduct of which the judge becomes aware."

Attorney Charles Anthony O'Reilly has without controversy committed unethical behavior to an astonishing degree. O'Reilly is without controversy a

10

material witness at a hearing to determine the date, time, circumstances, subjects, and rulings of the *ex parte* hearing(s) in which Judge Friot decided that the government could default on Stilley's motions, and win nevertheless.

Lawyers may not be a witness and advocate in the same proceeding, absent circumstances not present here. Oklahoma Rule of Professional Conduct 3.7. The best case law on the subject seems to come from district court decisions. See e.g. *US v. Rodella*, District Court for the District of New Mexico, 59 Supp. 3d 1331, 2014 U.S. Dist. LEXIS 160257 (2014).

The lawyer must be a "necessary" witness, to be disqualified. If the evidence is otherwise available, the lawyer generally will not be disqualified. The disqualification of federal prosecutors is generally not favored.

This is far from an "ordinary" case. O'Reilly and Judge Friot created the situation that now calls for the disqualification of O'Reilly and perhaps also Vani Singhal. Both are guilty of dishonesty – Friot for lying from the bench, O'Reilly for sitting like a lump on a log while Friot denied *ex parte* contacts. Furthermore, the "need" to commit such unethical acts arose out of the veritable cesspool of constitutional violations that preceded the "revocation" proceedings 11-13-2024.

This Court should be provided with expertly drafted pleadings from both sides. That's impossible, with Stilley's paper files stolen (or "lost" under highly suspicious circumstances) and with Stilley fenced out of the electronic files on a memory stick, now in the hands of his counselor at this prison.

Stilley therefore suggests the following. Let the parties litigate the question of release pending 2255 proceedings. If Stilley gets release pending the conclusion of such proceedings, he can engage in communication with O'Reilly and other government personnel, to ascertain whether there is an appropriate way around requiring the intervention of the Court on the issue of attorney disqualification.

> b. Conduct implicating the fairness of the federal judicial system is a matter of concern of the highest order and must be expedited.

*United States v. De La Campa Rangel*, 519 F.3d 1258, 1265 (10th Cir. 2008) involves facts similar to those alleged by Stilley. The defendant argued that the government had knowingly used perjury to obtain a guilty verdict. The government said that such issues should be addressed on 2255 petition. The government cannot now in this case be heard to argue the opposite.

The *Rangel* court agreed that 2255 proceedings were ***also*** appropriate. After saying that the parallel prosecution of a direct appeal and a 2255 is generally disfavored, the Court said this:

> Proceeding with the 2255§ motion is also proper, however, when the motion raises a substantial question about the integrity of the government's prosecution. ***That integrity is a concern of the highest order***, and questions regarding it can take precedence over matters pending on appeal. [citations omitted] ... And in *United States v. Taylor*, 648 F.2d 565, 572 (9th Cir. 1981), the court found extraordinary circumstances requiring the district court to proceed with an evidentiary hearing on a coram nobis petition while an appeal was pending, stating:
>> When, as in the exceptional facts of this case, the collateral claim casts such a dark shadow on a pivotal aspect of the direct appeal and, at the same time, ***implicates the fundamental fairness of the trial and propriety of the***

*Government's actions*, it is our view that the concerns for justice are best served by prompt inquiry either confirming or dispelling the suspicion of irregularity raised. This is particularly true when, as here, the Government has refused forthrightly to account for or support its critical representations of fact.
(Emphases added)

"The Due Process clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshal v. Jerrico, Inc.*, 446 US 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). Honest proceedings in this case will indict the prosecutors in this case as well as Judge Stephen P. Friot. On the other hand, denying Stilley the relief he seeks would indict the entire federal bench and bar. Nobody honestly thinks that Judge Friot was an impartial and disinterested tribunal in Stilley's criminal prosecution.

A 2255 petition is technically a civil case, even if the filings are made solely into a criminal case. The requirements of Fed. R. Civ. Pro. 11 apply. *Shockley v. Crews*, USDC Missouri E. D. 4:19-cv-2520-SRC, 2024 U.S. Dist. Lexis 23674 (2024). Lawyers are forbidden to file pleadings that lack a reasonable basis in law or fact, or to file pleadings primarily for the purpose of delay.

The government owes this Court a duty of candor and ethical behavior. There are more than 800 docket items totaling more than 8,000 pages, plus over 4,000 pages of transcript. *Both* the government and the petitioner have a duty to work together to tame this record of more than 12,000 pages. *Both* parties have a duty to respect the time and public reputation of this Court.

Stilley therefore respectfully requests that this Court order the government to respond paragraph by paragraph to 1) the current 2255 petition, 2) the previous

13

225 petition, and 3) the motion for release pending 2255 proceedings, all within 14 days of this filing. Stilley furthermore most respectfully requests that the order direct that any motion for extension of time must include facts and law to show that the motion is not inconsistent with 1) FRCivP 11, 2) the lawyer's oath as an Oklahoma bar licensed attorney, 3) the lawyer's oath as a federal employee, and 4) reasonably implicated and applicable rules of professional conduct for attorneys.

Stilley furthermore respectfully requests that the order inform the government in the order that it expects good faith communication with Defendant/Petitioner Stilley, on the issue of disqualification, and a response to Stilley's motion for disqualification, within 30 days of its order.

In chess, a player in an untenable situation sometimes says words to the effect of "white resigns." Sometimes they resign symbolically by knocking their own king on his side. They admit defeat before they're technically in checkmate.

When the government knows full well that its prosecution and the results thereof reek to high heaven, they have a duty to take some ownership of it. They have a duty to consider the reputational interests of the federal bench and bar. Even (perhaps especially) after they've screwed everything up royally, they have some duty of *professionalism* and courtesy to the Court. They should not force the Court to write judgments and orders laying out every detail of their embarrassing behavior.

CONCLUSION

This Court should grant Stilley release pending 2255 proceedings, (however denominated) so he can litigate his 2255 issues from a position of liberty.

This Court should enter a show cause order, directing the government to show cause why attorneys O'Reilly and Singhal should not be disqualified from further participation in this case as advocates.

Respectfully submitted this 4th day of December, 2025.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

By my signature above I declare under penalty of perjury pursuant to 28 USC 1746 that I placed a copy of this pleading in the prison outgoing mail, with sufficient US First Class postage attached, on the date stated above, addressed to the Clerk of this Court for filing and service on all parties entitled to service via CM/ECF. The prison at which Stilley is confined does not have a legal mail system. Stilley claims the benefit of the prison mailbox rule.

⇔10579-062⇔
Oscar Stilley
FCC Yazoo City Camp
Federal Correctional Complex
PO Box 5000
Yazoo CITY, MS 39194
United States

Legal Mail

⇔10579-062⇔
Phil Lombardi
333 W 4TH ST
Room 411
Tulsa, OK 74103
United States

RECEIVED
DEC 15 2025
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

Clerk, US District Court

postmark 12/5/25
9-CR-43-SEH-2




FEDERAL CORRECTIONAL COMPLEX
P.O. BOX 5000
YAZOO CITY, MS 39194

THE ENCLOSED LETTER WAS PROCESSED ON 12.5.25 THROUGH SPECIAL MAILING PROCEDURES.

The letter has neither been opened or inspected if the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

Legal Mail