


FILED

FEB 2 4 2026

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES                    PLAINTIFF/RESPONDENT

V.              Criminal Case No. 4:09-cr-43-2 SEH
                Civil case No. 4:25-cv-00673

OSCAR STILLEY                    DEFENDANT/PETITIONER

### STILLEY'S MOTION FOR "PROMPT" CONDUCT OF LITIGATION, AND DETERMINATION OF THE MEANING OF THE WORD, WITH INCLUDED BRIEF

Comes now Petitioner Oscar Stilley (Stilley) and for his verified motion for "prompt" conduct of this litigation, and determination of the meaning of the word, and states:

1.    Stilley current petition under 28 USC 2255 is filemarked 12-15-2025.

2.    Together with the petition Stilley filed a motion for scheduling order.

3.    As of even date, no scheduling order has been entered.

4.    As of even date, the Court has not ordered the government to respond to Stilley's 2255 petition, or to any of his other motions filed at the same time.

5.    On information and belief, Stilley's petition was as a practical matter screened long ago, and found to be undeniably meritorious in all respects.

6.    Stilley respectfully submits that these facts establish that the Court has not "promptly" screened his petition and ordered the government to file a response.

✓ Mail    ___ No Cert Svc    ___ No Orig Sign
___ C/J    ___ C/MJ    ___ C/Ret'd    ___ No Env
___ No Cpys    ✓ No Env/Cpys    ___ O/J    ___ O/MJ

7.      On 8-18-2025 Stilley met with his Case Manager Ms. Ellis and was

recommended for halfway house to commence October 1, 2025 or as soon thereafter

as practical.

8.      On 10-25-2025 Stilley met with his Ms. Ellis and was given a "FSA (First

Step Act of 2018) Time Credit Assessment." Exhibit "1." All exhibits are

incorporated herein as if set forth word for word.

9.      This document said that Stilley was recommended for home confinement

pursuant to earned FSA Time Credits 3-10-2026. The parts of that document

concerning the Second Chance Act were left blank.

10.     On 2-11-2026 Stilley had a "Team Meeting" with Ms. Ellis and his counselor,

Mr. Henderson, concerning release plans.

11.     During that meeting Stilley was for the first time given a revised FSA Time

Credit Assessment dated almost a month earlier, 1-17-2026.  Exhibit "2." That

assessment says that Stilley becomes entitled to FSA reduced security confinement

on 3-25-2026. The 15 day reduction in FSA earned time credits was not explained.

12.     Those same papers say Stilley is recommended for halfway house 7-23-2025

and home confinement on 1-12-2026, on the basis of the FSA and the Second

Chance Act in combination. Of course, both of those dates are in the past.

13.     Stilley earned his FSA "time credits" and entitlement to halfway house or

home confinement, by working for Unicor, a federal prison industry, starting at 23

cents per hour, and currently at 46 cents per hour. Stilley took the job on the theory

that this employment guaranteed qualification for FSA time credits and home confinement.

14.     During the Team Meeting, Stilley's Case Manager Ms. Ellis read from her computer screen an alleged email from the Residential Reentry Manager (RRM) dated early December 2025 saying that Stilley had been denied both FSA and Second Chance Act (SCA) reduced security confinement on grounds 1) that he allegedly took monitoring software off his phone (which was one of the reasons assigned for revocation of supervised release), and 2) Stilley is likely to file lawsuits against us (presumably the DOJ-FBOP or the United States) if he gets to reduced security confinement. This was the first time Stilley had been given any reasons for the denial of his request for halfway house and home confinement, despite prompt and polite request.

15.     Allegedly taking monitoring software off a phone prior to the revocation judgment provides no legal basis whatsoever for denying FSA reduced security confinement.

16.     Although the second element of SCA analysis allows consideration of "the nature and circumstances of the offense," Ms. Ellis found that Stilley was entitled to the maximum amount of SCA, several months after the date of the email from the RRM. However, she waited almost a month to provide Stilley with a copy.

17.     Indeed, Stilley was sentenced to 24 months despite a Guideline Range of 4-10 months, in part based on accusations that the monitoring software had been disabled or removed from Stilley's phone.

3

18.    Stilley asked for a copy of the email or at least the text thereof, with date and names and titles of parties to the communication. Ms. Ellis declined, instructing Stilley to pursue administrative remedies. She said I should file a BP8 Informal Resolution, and then a BP9 to the warden. This implies that she's already decided she won't honor the informal resolution request.

19.    Stilley has a right to file non-frivolous lawsuits. The use of higher security confinement to prevent or delay lawsuits is flagrantly unconstitutional as well as a federal crime.

20.    The core conclusion of the Team Meeting 2-11-2026 was that Stilley should expect to stay at his current federal prison camp until his Good Conduct Time (GCT) release on 7-23-2026.

21.    An included brief is attached. However, Stilley also relies upon all other pleadings filed contemporaneously with this one.

WHEREFORE, Stilley respectfully requests that this Court immediately order the government to respond to Stilley's petition and all of Stilley's motions, within a time or times as contemplated by Stilley's original filings; that this Court make a written and well-reasoned determination of what constitutes "promptly" within the meaning of the rules applicable to petitions under 28 USC 2255; and for such other and further relief as may be appropriate whether or not specifically requested.

## VERIFICATION

Petitioner by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

4

Respectfully submitted this ___18___ day of February, 2026.


By: _____

OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

## BRIEF IN SUPPORT

### I.    COURTS ARE REQUIRED TO "PROMPTLY" SCREEN 2255 PETITIONS.

Rule 4 of the Rules Governing 2255 Proceedings provides in subsection (a) that the clerk must "promptly" forward the motion to the judge, and subsection (b) provides that the district court must "promptly" screen the filing for service, as follows:

> (a)    **Referral to a judge**. The clerk must **promptly** forward the motion to the judge who conducted the trial and imposed sentence or, if the judge who imposed sentence was not the trial judge, to the judge who conducted the proceedings being challenged. If the appropriate judge is not available, the clerk must forward the motion to a judge under the court's assignment procedure.

> (b) **Initial consideration by the judge**.  The judge who receives the motion must **promptly** examine it. If it *plainly* appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take such other action the judge may order.
> (Emphases added)

The clerk being instructed to act "promptly" did so the same day. This Court entered a preliminary order the same day, telling the government that no response would be required absent further order of the Court.

### II.    COMPARATIVE TIME FRAMES SHOW THAT THE SCREENING HAS NOT BEEN PERFORMED "PROMPTLY."

More than a year ago, on 1-13-2025, Stilley filed a "Motion for Authorized Judge for Review of Denial of Release Pending Appeal" (Dkt. 836) and "Motion for Review of Denial of Release Pending Appeal, for Release Pending Appeal, for Specific Findings" (Dkt. 837). It took Judge Friot two days to figure out that he was caught red handed engaging in secret *ex parte* communications and orders, and lying about it from the bench, and get off the case. He didn't rule on the motion or state the true reasons. He just got off the case, on 1-15-2025.

On that same day, the Clerk reassigned this case to the current judge, the Honorable Sara E. Hill. On the following day, 1-16-2025, this Court in the person of Sara E. Hill entered an opinion and order denying Docket 837 on grounds that jurisdiction had been transferred to the 10th Circuit Court of Appeals.

It took less than 5 weeks from the filing of the "Petition for Summons..." to the day Stilley was handcuffed and taken to jail. Stilley's motions in his second federal criminal revocation were defaulted because no response was filed within 7 days. Stilley's motions in his Arkansas Supreme Court action against John Thurston (Ark. Sup. Ct. 24-453) were defaulted because no response was filed within 10 days.

Stilley's verified 2255 petition and related motions have been pending on the docket more than two months. The docket reflects no activity about release pending a determination of the motion, the disqualification of lawyers for engaging in unethical secret *ex parte* contact with the court, or the request for a scheduling

order. How pray tell can this Court construe a delay of two months and counting as nevertheless "prompt" within the meaning of court rules?

Consider now the basic function of the screening of 2255 petitions. If a review of 1) the petition, 2) any exhibits, and 3) the record in the case, *plainly* show that the moving party is __not__ entitled to relief, the judge is directed to dismiss the petition and direct the clerk to notify the movant/petitioner.

## III.    THIS CASE LIKELY PRESENTS THE GREATEST OPPORTUNITY THIS COURT HAS EVER HAD.

### a. Screening has already shown that Stilley cannot lose.

In this case even the most casual screening will show that Stilley __cannot__ *legitimately* lose.

Why did a mountain of issues most exquisitely embarrassing to the government get unceremoniously dumped into this Court's lap? Precisely because Stilley was cheated out of his constitutional right of reasonable access to the courts. Precisely because Stilley was cheated out of that which he today most respectfully requests from this Court – not for himself only, but for the citizenry at large, as a matter of right.

Stilley in a prior pleading explained that his 7 year old daughter was rendered *de facto* fatherless for the duration of her minority, precisely because her father was cheated out of reasonable access to the courts. She desperately wanted her father in the stands, to watch her play high school volleyball, just one time. Her

8

team, on which she was a starter, won the state championship. She never had the
chance to play, even one time, with her father in the stands.

This motion isn't just to this Court. It is also to Stilley's family and friends.
Their pain and privation can be a fountain of salvation to other children of *perfectly
innocent* persons now facing charges in jail, or rotting in federal prison. Consider
the words of Esther 3:12-14:

> When Esther's words were reported to Mordecai, [13]he sent back this answer:
> "Do not think that because you alone of all the Jews will escape. 14 For if you
> remain silent at this time, relief and deliverance for the Jews will arise from
> another place, but you and your father's family will perish. ***And who knows
> but that you have come to a royal position for such a time as this?***"
> (Emphasis added)

Stilley has repeatedly challenged his adversaries to explain why his
treatment is legally or ethically any better than the treatment of Evan
Gershshkovich. They cannot respond without a damning admission, so they maintain
silence – a deafening silence that says more than words ever could. This Court
should boldly answer the question. Stilley's conviction and incarceration are the
product of manifest prosecutorial and judicial fraud, not one whit better than that
which was used to deprive Evan Gershkovich of more than a year of his life.

The *Brady* Court wrote that "society wins not only when the guilty are
convicted but when criminal trials are fair; our system of the administration of
justice suffers when any accused is treated unfairly." 373 U.S. at 87.

There are no words in the English language to justify the government's
treatment of Stilley. There are no words in the English language to justify his
detention for another day. That's why the government, having a duty to speak due

9

to the Oklahoma Attorney's oath, lawyer ethics, federal criminal statutes, federal oaths of office, and basic morals, continues in stubborn, rebellious, stony silence.

## b. Mandatory permission for donations needed for due process is the most powerful way to prevent the recurrence of the lawlessness in this case.

Stilley's children were cheated out of a *de facto* father from the age of 7 (for the youngest) to the conclusion of her minority. This very day, a new crop of 7 year olds, the offspring of incarcerated *innocent persons*, will cry themselves to sleep, wishing that daddy would come home.

The moment this Court puts a stop to the government's crime spree, Stilley becomes a free man. Stilley has shown specifically the crimes that government counsel have been committed. He has shown specifically what key evidence Stilley would get by the relief he seeks herein, which would establish his ***actual*** innocence and the outrageous lawlessness used to maintain his current detention.

Humans are generally presumed to intend the natural and probable consequences of their actions. Setting Stilley free results in justice in a single case. Giving all DOJ detainees the right to defend themselves will set free a multitude of lawlessly incarcerated persons, and drastically reduce the probability that unjust criminal judgments will be entered in the future. Such an act will also build public respect for and confidence in our federal and state court systems.

Why both? Because the DOJ and subsidiaries thereof contract with local jails. If the stomping out of the right of litigants to effectively defend themselves is

10

declared anathema for federal prisoners, state prisoners will request and most likely get the same for themselves. Often this would take place simply because federal and state inmates are housed together.

Court rules allow the Court to apply civil or criminal rules in this proceeding, as appropriate. This Court should order the government to respond the petition and all motions within 7 calendar days, stating specifically what alleged facts are contested and which are denied, any legal limitations on the scope or duration of an order granting injunctive relief, and any lawful reasons that incarcerated persons should be denied the tools necessary to defend to the fullest extent of their intelligence and other resources.

This Court should also provide well-reasoned guidance about what constitutes "prompt" action within the meaning of federal habeas rules. Stilley would most respectfully urge that "promptly" in the context of a "habeas" screening could never cover a period exceeding 30 days. We live in an age of artificial intelligence, which can thoroughly evaluate thousands of pages in mere seconds or at most minutes, and expertly identify any arguable insuperable barriers to relief for any given 2255 petitioner. The government has equal access to such tools. Stilley is denied any lawful access to the most basic of word processing tools.

### c. Further delay hurts this Court without helping any of those lobbying for continued denial of due process.

Stilley does not contend that the Court's job is easy or politically palatable. The Arkansas Supreme Court dodged well pleaded motions, to refer Stilley for

11

criminal prosecution. Plainly a majority of the members of that court want to see him in state prison.

The 10th Circuit refused to timely rule on Stilley's motions. Astonishingly, they refused to recuse those judges unwilling to proceed on the basis of a truthful record – or to *claim* that the record is already true, correct, and complete. They dodged the issues in Stilley's *provisional* brief. They refused to allow Stilley the tools to convert his provisional brief into a first-class *final* brief produced with the benefit of the record and applicable case law. Their hostility to Stilley is palpable.

The DOJ plainly hopes this Court will deny justice to Stilley. Who do you think made the call to the US Marshal, to get Stilley shipped to Green County (Springfield) Missouri, where plain paper is treated as contraband, and get him put in solitary until after close of business on the day of the first filing deadline? Who do you think got Stilley suspended from the Cimarron Law Library for two weeks, and later barred from the Law Library permanently? Why do you think they're making a complete mockery of their oaths of office, which requires them to bring falsehoods to the attention of some court, *so they may be reformed?* Who do you think made the phone calls to prevent Stilley from getting halfway house or home confinement, or timely knowing the nefarious reasons for the denial?

Stilley has obviously been working on this latest set of pleadings for some time. On 2-11-2026 he learned for the first time that he had been granted the maximum amount of Second Chance Act halfway house and home confinement – and that it totally didn't matter because Stilley would not be allowed any halfway

house or home confinement whatsoever. Ms. Ellis told Stilley that he would be released via Good Conduct Time (GCT) release, on July 23, 2026.

Why? Apparently because a nameless and faceless bureaucrat thinks that Stilley is going to commence litigation as soon as practicable after he gets to halfway house or home confinement. Forget about the alleged removal of spy software on the phone – Stilley already got more than double the Guidelines for that. The real issue is that Stilley is going to sue the County Clerk of Crawford County, Arkansas, serve her with substantially the same discovery the Arkansas Attorney General couldn't respond to without admitting that Stilley IS NOT A FELON AT ALL, and let her *ANSWER IT!*

## IV.    This Court has the perfect answer for mendicants pleading for the further persecution of Stilley.

Delay tactics may besmirch the reputation of this Court, but they cannot defeat Stilley's efforts to obtain justice. Delay looks *suspiciously choreographed* with bad actors who shamelessly attempt to crush constitutional rights. Thus delay tactics burn the political capital of this Court without a corresponding benefit to the Court, or for that matter to Stilley's enemies.

What wrecks lawless delay tactics? An order of release pending a decision on the merits. In that case, the government loses the option of using incarceration to twist the arm of an innocent man. Stilley has asked for such release, but sees not the slightest effort to cause that request to be promptly and fairly decided on the merits.

13

In *Spencer v. Kemna*, 523 US 1 (1998), Randy Spencer complained that he was unable to get a final ruling on a habeas petition filed approximately 6 months before his release, whereas *Heck v. Humphrey*, 512 US 477 (1994) forecloses a damage claim unless and until habeas remedies are exhausted. The majority ruling was that Spencer's revocation sentence was concluded, which mooted his claim. Four justices concurred in *Spencer* on the ground that release didn't prevent him from filing and litigating a claim under 42 USC 1983.

The same principles apply to claims under the Federal Tort Claims Act (FTCS). If Stilley is cheated out of a decision on the merits of his 2255 petition, he can file an FTCA tort claim lawsuit in the Western District of Arkansas, where he lives, or in the district of his incarceration, at his option.

Stilley's petition gave this Court over 7 months before Stilley's release, to decide the legality of his detention. Since Stilley's Good Conduct Time (GCT) out date is 7-23-2026, this Court still has some 5 months left before the question of mootness could possibly arise. Stilley has a rock solid argument for release pending a decision on the merits of the 2255 petition, which means that in any rational world the Court wouldn't even have incentive to "slow-walk" the litigation.

Even if release pending a decision on the merits was lawlessly denied, this Court is worse off, not better off. Stilley's state court felony prosecution in Arkansas is just one out of many reasons that Stilley's habeas case is not mooted by his release. A cause is moot only when it is no longer possible to provide any relief whatsoever.

14

Slow-walking this case implies that one or more political machines at least *think* they have the ability to stomp out Stilley's due process rights in 1) this 2255, 2) a *coram nobis* action, 3) Stilley's Arkansas criminal case, 4) suit for declaratory/injunctive relief in Arkansas courts over his voter registration, 5) US district court litigation over Stilley's FTCA tort claim for false imprisonment, etc., 6) an appeal to the 8th or 5th Circuit if such should become necessary, and 7) all other appellate remedies available to Stilley.

The very *ability* to obtain the corrupt cooperation of so many disparate courts and judicial officers would *in and of itself* amount to a blistering indictment of the federal bench and bar. Such a sweeping run of "wins" would be the most Pyrrhic victory this Court – or the government – could possibly achieve.

The truth has now come out. Stilley is in prison at this time *solely* because the US Department of Justice is thoroughly convinced that Stilley is **_not_** guilty of anything. Stilley's release calculation paperwork makes it plain that prison authorities think Stilley should have gotten halfway house 7-23-2025, has *earned* home confinement by no later than 3-25-2026, and should have been in home confinement via SCA over a month ago, on 1-12-2026. The DOJ's guilt and resulting insecurity are the reason that Stilley continues to sleep on a prison mat and earn 46 cents per hour.

The *appearance* of coordination between this District Court and the DOJ is easy to defeat. Honest and prompt rulings on Stilley's 2255 and related motions defeat the DOJ's corrupt machinations.

15

The provisions of 28 USC 2255(e) furnish another question, which hopefully will not arise in this case. This provision reads as follows:

> (e) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*
> (Emphasis added)

In layman's terms, 28 USC 2255 transferred venue from the court of the detention facility to the court of trial and sentencing, with the proviso above. If a 2255 motion *in the sentencing court* is inadequate or ineffective to test the legality of the detention, the traditional remedy provided by 28 USC 2241 *in the court over the district of detention* is still available.

If a litigant is to be stiff-armed and slow-walked so as to not get a ruling on the merits, it is necessarily inadequate or ineffective to test the legality of the detention. How does a court ward off that possibility? Very simply, in this case 1) issue a scheduling order ensuring reasonably prompt proceedings and rulings, and 2) grant a stay pending appeal, so that even if the remaining proceedings take over 5 months, the parties can know that they are fighting over real and substantial liberty interests, amongst other things.

CONCLUSION

This Court should rule that "promptly" within the meaning of applicable rules generally will not exceed 10 days, and will never exceed 30 days, declare that

16

the petition has survived screening in its entirety, and order the government to respond to Stilley's petition and all motions within 7 calendar days.

## VERIFICATION

Petitioner by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

Respectfully submitted this _18_ day of February, 2026.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

By my signature above I declare under penalty of perjury pursuant to 28 USC 1746 that I placed a copy of this pleading in the prison outgoing mail, with sufficient US First Class postage attached, on the date stated above, addressed to the Clerk of this Court for filing and service on all parties entitled to service via CM/ECF. The prison at which Stilley is confined does not have a legal mail system. Stilley claims the benefit of the prison mailbox rule.

### FSA Time Credit Assessment
Register Number:10579-062, Last Name:STILLEY

**U.S. DEPARTMENT OF JUSTICE**                                               **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 10579-062 | Responsible Facility: YAZ |
| Inmate Name | Assessment Date.....: 10-25-2025 |
|   Last............: STILLEY | Period Start/Stop...: 04-24-2025 to 10-25-2025 |
|   First...........: OSCAR | Accrued Pgm Days....: 184 |
|   Middle..........: AMOS | Disallowed Pgm Days.: 0 |
|   Suffix..........: | FTC Towards RRC/HC..: 75 |
| Gender............: MALE | FTC Towards Release.: 0 |
| Start Incarceration: 11-13-2024 | Apply FTC to Release: No |

--- FTC Claim Status ---------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-24-2025 | 10-25-2025 | accrue | 184 |
| | | disallow | 0 |

**Cannot apply FTC(s) towards early release.**
**No term of supervision**

--- Program Day Intervals ----------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-24-2025 | 08-20-2025 | accrue | 118 |

  Accrued Pgm Days...: 118
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 30

*[handwritten: Exhibit "1"]*

--------------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 08-20-2025 | 10-25-2025 | accrue | 66 |

  Accrued Pgm Days...: 66
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 45

--- FSA Assessment(s) --------------------------------------------------------------

| # | Start | Stop | Assignment | Asn Start | Factor |
|---|---|---|---|---|---|
| 001 | 04-24-2025 | 05-22-2025 | R-MIN | 05-11-2025 11:55 | 10 |
| 002 | 05-22-2025 | 08-20-2025 | R-MIN | 05-18-2025 17:13 | 10 |
| 003 | 08-20-2025 | 11-18-2025 | R-MIN | 05-18-2025 17:13 | 15 |

## FSA Time Credit Assessment
### Register Number:10579-062, Last Name:STILLEY

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ------------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
10-25-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---
Projected Release Date: 07-23-2026
Projected Release Method: GCT REL
FSA Projected Release Date: N/A
FSA Projected Release Method: N/A
FSA Conditional Release Date: N/A
SCA Recommended Placement Days (Following 5 Factor Review): 0*
SCA Recommended Placement Date: N/A*
SCA Max. Statutory HC Placement Days if appropriate (lesser of 6 months/10%): 72*
FSA Conditional Placement Days: 135
FSA Conditional Placement Date: 03-10-2026
Conditional Transition To Community Date: 03-10-2026*
Max. Statutory HC Placement Date (if approp.): 12-28-2025*
Recommended HC Placement Date (if approp.): 03-10-2026*
**\*Default SCA conditional placement days. This requires a 5 Factor Review!**

## FSA Time Credit Assessment
Register Number:10579-062, Last Name:STILLEY

**U.S. DEPARTMENT OF JUSTICE**                     **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 10579-062 | Responsible Facility: YAZ |
| Inmate Name | Assessment Date.....: 01-17-2026 |
|   Last.............: STILLEY | Period Start/Stop...: 04-24-2025 to 01-17-2026 |
|   First............: OSCAR | Accrued Pgm Days....: 268 |
|   Middle...........: AMOS | Disallowed Pgm Days.: 0 |
|   Suffix...........: | FTC Towards RRC/HC..: 105 |
| Gender.............: MALE | FTC Towards Release.: 0 |
| Start Incarceration: 11-13-2024 | Apply FTC to Release: No |

--- FTC Claim Status ----------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-24-2025 | 01-17-2026 | accrue | 268 |
| | | disallow | 0 |

  **Cannot apply FTC(s) towards early release.**

  **No term of supervision**

--- Program Day Intervals -----------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-24-2025 | 08-20-2025 | accrue | 118 |

  Accrued Pgm Days...: 118
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 30

*Exhibit "2"*

-------------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 08-20-2025 | 01-17-2026 | accrue | 150 |

  Accrued Pgm Days...: 150
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 75

--- FSA Assessment(s) ---------------------------------------------------------------

| # | Start | Stop | Assignment | Asn Start | Factor |
|---|---|---|---|---|---|
| 001 | 04-24-2025 | 05-22-2025 | R-MIN | 05-11-2025 11:55 | 10 |
| 002 | 05-22-2025 | 08-20-2025 | R-MIN | 05-18-2025 17:13 | 10 |
| 003 | 08-20-2025 | 11-18-2025 | R-MIN | 05-18-2025 17:13 | 15 |
| 004 | 11-18-2025 | 02-16-2026 | R-MIN | 05-18-2025 17:13 | 15 |

## FSA Time Credit Assessment

Register Number:10579-062, Last Name:STILLEY

**U.S. DEPARTMENT OF JUSTICE**                                **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ------------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
01-17-2026. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---
    Projected Release Date: 07-23-2026
    Projected Release Method: GCT REL
    FSA Projected Release Date: N/A
    FSA Projected Release Method: N/A
    FSA Conditional Release Date: N/A
    SCA Recommended Placement Days (Following 5 Factor Review): 365
    SCA Recommended Placement Date: 07-23-2025
    SCA Max. Statutory HC Placement Days if appropriate (lesser of 6 months/10%): 72
    FSA Conditional Placement Days: 120
    FSA Conditional Placement Date: 03-25-2026
    Conditional Transition To Community Date: 03-25-2025
    Max. Statutory HC Placement Date (if approp.): 01-12-2026
    Recommended HC Placement Date (if approp.): 01-12-2026

⬦10579-062⬦
Oscar Stilley
FCC Yazoo City Camp
Federal Correctional Complex
PO Box 5000
Yazoo CITY, MS 39194
United States

7016 1370 0001 2137 7343

RECEIVED
FEB 24 2026
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

⬦10579-062⬦
Heidi Campbell
US District Court Clerk
333 W 4TH ST
Room 411
Tulsa, OK 74103
United States

Postmark Unknown
9-CR-43-SEH-2