

FILED

FEB 2 4 2026

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES                    PLAINTIFF/RESPONDENT

V.            Criminal Case No. 4:09-cr-43-2 SEH
              Civil case No. 4:25-cv-00673

OSCAR STILLEY                    DEFENDANT/PETITIONER

**STILLEY'S CONSOLIDATED BRIEF IN SUPPORT OF MOTION TO COMPEL
THE GOVERNMENT TO ACCEPT DONATIONS NECESSARY FOR DUE
PROCESS, ETC, AND MOTION TO COMPEL *BRADY/GIGLIO/NAPUE/GLOSSIP*
DISCLOSURES**

✓ Mail    ___ No Cert Svc    ___ No Orig Sign

___ C/J    ___ C/MJ    ___ C/Ret'd    ___ No Env

___ No Cpys    ✓ No Env/Cpys    ___ O/J    ___ O/MJ

Contents

I.    NATURE OF THIS PLEADING ............................................................................4

II.   APPLICABILITY OF BRADY TO POST CONVICTION PROCEEDINGS ......4

III.  A BRIEF HISTORY OF THE CASE....................................................................5

IV.   REASONS FOR GRANTING THE MOTIONS...................................................9

a.   It is impossible to competently plead in this case without access to a computer
with suitable software...........................................................................................9

b. Government flouting of attorney oaths, attorney ethics, etc., is best remedied by
giving litigants the tools to effectively defend. ..........................................10

c. The best remedy allows *all* incarcerated litigants access to the tools to effectively
defend...................................................................................................................11

V.    THE EVIDENCE THAT STILLEY SEEKS WILL NECESSARILY SET HIM
FREE.......................................................................................................................13

a. The Arkansas Attorney General's office tacitly admitted that Stilley's federal
criminal judgments are void. .........................................................................13

b. The evidence the government is suppressing is awaiting Stilley's collection
through litigation to determine the validity of Stilley's voter registration. .............16

c. It is a virtual certainty that Judge Friot conspired to cheat Stilley out of a
meaningful hearing before the second revocation was even filed. ............................17

CONCLUSION ..............................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland,* 373 US 83, 84 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) . 4

*Giglio v. US*, 405 US 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) ............ 4

*Glossip v. Oklahoma*, 145 S. Ct. 612, 221 L. Ed. 2d 90 (2025) ................. 4

*High v. Head*, 115 F.3d 1257 (11th Cir. 2001) ........................................... 5

*Napue v. Illinois*, 360 US 264 (1959) ........................................................ 4

*Pennsylvania v. Ritchie*, 480 US 39 (1987) .............................................. 5

*Smith v. Roberts*, 115 F.3d 818 (10th Cir. 1997) ...................................... 5

*Steidel v. Furmon*, 494 F.3d 623 (7th Cir. 2007) ..................................... 5

**No table of authorities entries found.**

**Statutes**

28 USC 2255 ................................................................................... 15

**No table of authorities entries found.**

**STILLEY'S CONSOLIDATED BRIEF IN SUPPORT OF MOTION TO COMPEL THE GOVERNMENT TO ACCEPT DONATIONS NECESSARY FOR DUE PROCESS, ETC, AND MOTION TO COMPEL *BRADY/GIGLIO/NAPUE/GLOSSIP* DISCLOSURES**

Comes now Petitioner Oscar Stilley (Stilley) and for his consolidated brief in support of motion to compel the government to allow donations for due process, and to compel *Brady/Giglio/Napue/Glossip* disclosures, and states:

## I.     NATURE OF THIS PLEADING

This is a consolidated brief seeking two things. One, Stilley seeks the right to donate computers, printers, peripherals, software, support, internet access, and other common office resources sufficient to allow inmates to vindicate their due process rights. Two, Stilley seeks an order compelling the government to make the disclosures required by *Brady v. Maryland,* 373 US 83, 84 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), *Giglio v. US*, 405 US 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Napue v. Illinois*, 360 US 264 (1959); *Glossip v. Oklahoma*, 145 S. Ct. 612, 221 L. Ed. 2d 90 (2025), and related cases.

## II.     APPLICABILITY OF BRADY TO POST CONVICTION PROCEEDINGS

Is *Brady* applicable to post-appeal proceedings? One need look no further than *Brady* itself to answer that question. Brady's direct appeal had been decided before the Supreme Court heard that famous case in 1963. Brady was already on post-conviction remedies at the time the US Supreme Court granted certiorari. See

4

also *Pennsylvania v. Ritchie*, 480 US 39, 60 (1987); *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997); *High v. Head*, 115 F.3d 1257, 1265 n.8 (11th Cir. 2001); and *Steidel v. Furmon*, 494 F.3d 623, 630 (7th Cir. 2007).

## III.    A BRIEF HISTORY OF THE CASE

Since the presiding Judge, the Honorable Sara E. Hill, has recently been elevated to this bench, and even more recently assigned to this case, a brief history is in order.

Stilley was an Arkansas lawyer whose main line of work was assisting seriously delinquent taxpayers bring their income tax filings and payments current. However, Stilley would in fact vigorously advocate for those who held non-frivolous beliefs strongly enough to litigate their issues.

Stilley and his co-defendant Lindsey Springer developed a Paperwork Reduction Act (PRA) defense, not to the underlying taxes but rather to the penalties. Stilley in the early 2000s had a client named Eddy Patterson, who was tried along with his wife Judy Patterson. Eddy fired Stilley after the verdict, but instructed Stilley to provide Judy with whatever assistance she desired.

Stilley in mid-2004 prepared a brief for Judy on the PRA defense, which her lawyer Jerrold Barringer read, signed, and filed. Stilley's writing style is night and day different from that of Barringer. The government couldn't help but know it was Stilley's work.

5

The government agitated to get Barringer fired as well, and replaced with lawyers more to the liking of the government. Thereupon the government got two extensions of time on the false pretext of needing more time to prepare a brief. Actually, they sent agents into her prison, got Judy to withdraw her meritorious appeal, and walked her out the door.

At the same time the government started a criminal investigation of Stilley, Barringer, and Springer. Stilley wasn't even aware of it until a couple of years later. Then, when he asked government counsel what they thought he'd done wrong, they refused to say.

An indictment against Stilley and Springer came down, in the captioned case, in 2009. Stilley was charged of tax evasion for 2003 (Count 3) and 2005 (Count 4) and of conspiracy that basically amounted to a rehash of the two substantive counts. Counts 3 and 4 alleged evasion of Springer's income taxes, not Stilley's.

The government claimed not less than 6 times, in pretrial pleadings, that Springer earned money for providing services in the nature of paralegal services, and didn't pay income taxes on it. Those alleged "earnings" were paid from Stilley's IOLTA (Interest on Lawyers Trust Accounts) account at the express directives of his clients. Stilley couldn't imagine how that could make him a criminal.

Stilley was only found guilty after an "Allen" or "dynamite" jury instruction. Stilley filed a post-trial combination motion with separate supporting brief (Dkt. 261, 263) arguing amongst other things that if Springer *earned* the money by providing paralegal services to criminal targets or defendants, Stilley had no choice

6

in the matter and had to pay the money over.  It cannot at once be a crime to do something, and a crime to **_not do_** that very thing. Our constitution does not allow a "heads I win tails you lose" theory of prosecution.

Judge Stephen P. Friot was assigned to this case under the most suspicious of circumstances. Only Judge Payne, the originally assigned judge, recused from the case. That should have triggered random reassignment by the Clerk. It didn't. Claire V. Eagan, Chief Judge of the Northern District of Oklahoma (OKND) at the time, hand-picked Judge Friot. Judge Friot is lawfully assigned to the Western District of Oklahoma, but **not** the Northern District of Oklahoma. Judge Friot had just finished stomping out the due process rights of a criminal defendant named Skoshi Thedford Farr in a federal criminal tax prosecution, by strategically refraining from ruling on timely and properly presented motions.

Judge Friot *sua sponte* struck Stilley's motion and brief on the specious claim that these pleadings violated length limitations in the local rules. The brief was so short it didn't even require tables of contents or authorities. Judge Friot evaded his obligation to rule on the merits of this motion by *construing* the motion as part of the brief, on the theory that the motion was in the nature of argument, finding that the aggregated "brief" was some 3 pages too long, and striking it. He further said that no "do-overs" would be permitted. No shortening or remediation of any kind would be allowed. Had Stilley been aware of this devious plan he could have filed a motion for judgment as a matter of law separately from the motion for new trial,

just as his co-defendant had done. That would have doubled his aggregate brief limits.

Judge Friot later entered a *sua sponte* order which included a dispositive motion deadline. Shortly after that deadline, the government changed its theory to one in which both defendants were guilty of theft. In other words, Springer hadn't earned the money, as the government had strenuously urged at trial and pretrial. Rather, Springer and Stilley had somehow *stolen* the money. Under their absurd theory, the government's 5 year investigation, extensive pretrial, and jury trial *all* just missed that detail. This of course made a complete mockery of the 5th Amendment right to grand jury indictment.

It is a near certainty that Judge Friot engaged in secret *ex parte* contacts with government counsel, to tell them that it would be utterly impossible to hold Stilley criminally liable for paying Springer money that Springer had *earned* according to the government's theories. Why else would the government seize upon a laughably inconsistent theory immediately *after* a *sua sponte* dispositive motion deadline?

Stilley got his wife to mail the record to him in prison in 2010, for use in preparing an appeal brief. The government seized the record and sent it back to her, with no due process notice to Stilley or his wife. The government rendered a competent opening brief utterly impossible, by their lawless behavior. Stilley was cheated out of the one direct appeal to which he is by the constitution, law, and rule entitled. Despite repeated opportunity, neither the government nor any court has

8

ever claimed that Stilley was either able to file his own opening brief, or actually did file his opening brief. Stilley admittedly joined much but not all of his codefendant Lindsey Springer's counseled opening brief.

## IV.    REASONS FOR GRANTING THE MOTIONS

### a. It is impossible to competently plead in this case without access to a computer with suitable software.

In 2010 the official record as defined by Federal Rule of Appellate Procedure 10(a) exceeded 7000 pages. Fifteen years later, the docket, docket items, and transcripts now easily exceed 12,000 pages. In addition to the official record, Stilley has extensive computer folders containing files of pleadings in various formats, notes, abstracts, summaries, links, etc., related to this case. It is impossible to deal effectively with this case without computer access to that information. However, Stilley currently has no meaningful access to that information.

Stilley in direct appeal of the second "revocation" criminal judgment filed a verified motion to compel the DOJ to allow donations for inmates in its custody. 10th Cir. 24-5133 Dkt. 42. Stilley established that Cimarron, a contract detention facility working for the DOJ, pervasively attacked Stilley's access to the wherewithal for the prosecution of the one direct appeal to which he is entitled, with respect to his second revocation conviction.

As much as Cimarron did to trample Stilley's due process rights, they allowed him to receive a thumb drive and actually use the files thereupon to draft his

pleadings on Cimarron computers. That thumb drive was an indispensable resource, for Stilley's preparation of pleadings on his 5 month sojourn from Tulsa, Oklahoma, to Yazoo City, Mississippi.

Stilley's prison counselor now holds custody of a thumb drive with Stilley's files. Stilley is allowed to look at some of the files -- but only under the direct supervision of a staff member. Virtually all of the "Ediscovery" computer's functions are disabled. He cannot even *look* at word processor files. He can't print anything or do any productive work whatsoever. He can only *look* at pdf documents on a screen.

### b. Government flouting of attorney oaths, attorney ethics, etc., is best remedied by giving litigants the tools to effectively defend.

All lawyers admitted to the Oklahoma bar take an oath to correct any falsehoods done in court, *of which they are aware*. It matters not whether they are the guilty party. The fundamental question is whether the lawyer possesses *knowledge* of the falsity. Stilley has briefed this matter extensively, and would link to it save for one thing. Stilley's adversary deprives him of the basics that would allow him to effectively prepare and file pleadings in this case.

What's the timeline? Stilley has spent almost 16 years in one form of custody or another, for an offense that *he necessarily did not commit*.

On 10-10-2024 the first filings were made in support of the second revocation of supervised release. Despite his best efforts, he was in jail less than 5 weeks later, on 11-13-2024. His incarceration has been marked by a barrage of attacks on his

right of due process. After having been permitted to work on a computer at Cimarron, he has been denied all meaningful access to his files since arriving at FCC Yazoo City. "Looking at pdfs" is not meaningful access. Meaningful access, at the very minimum, requires permission to use inmate computer files to expeditiously draft, print, and file a creditable brief, motion, or other legal pleading. Associate Warden Mr. Yeager's 4-29-2025 concession that Stilley should have a access to a computer, Microsoft Word, a printer, etc., amounts to a tacit admission of that fact.

A farcical decision in Stilley's 10th Circuit appeal was filed 9-24-2025, some 6 minutes after an order denying all three of Stilley's remaining pending motions, without any reasoning or even summaries of the claims or relief requested. One of those motions was a motion similar to the one in this case, requesting an order requiring the DOJ to permit donations sufficient for the vindication of due process rights. 10th Cir. 24-5133 Dkt. 42. The government defaulted on that motion – yet still won.

Stilley has demonstrated that interference with efforts to get evidence in a federal criminal case constitutes a serious felony offense. 10th Cir. 24-5133 Dkt. 79, pg. 13-15. Stilley has proof of theft of federal criminal restitution funds, through a clever scheme that involves pretending that such funds are "unclaimed." He has laid out this proof in certain pleadings filed in this court.

## c. The best remedy allows *all* incarcerated litigants access to the tools to effectively defend.

How might this evidence be collected? Here are the possibilities:

1) Give Stilley release pending appeal;

2) Transfer Stilley to halfway house;

3) Transfer Stilley to home confinement;;

4) Allow all federal detainees the right of access to computers, printers, peripherals, supplies, paid or free online libraries, and internet, *at their own expense*, so they can all do creditable legal work despite their confinement.

Humans are presumed to intend the natural and probable consequences of their actions. The natural and probable consequence of denying all federal detainees the opportunity to defend using the best resources their money and resourcefulness allows, is innocent people convicted and sent to prison. The natural and probable consequence of allowing every federal detainee the best resources they can muster, is that justice will prevail most of the time.

Interestingly enough, all these avenues have been cut off. Stilley was recommended for halfway house to start on October 1, 2025, or as soon thereafter as is reasonably practicable. That was denied, and Stilley was denied access to the reasons. All thinking people know the real reason. Halfway house would necessarily give Stilley access to a real computer and a cell phone. It would become nearly impossible to prevent him from getting his evidence if that was done.

## V.  THE EVIDENCE THAT STILLEY SEEKS WILL NECESSARILY SET HIM FREE.

What evidence are we talking about? One, we're talking about evidence of thefts engineered by amongst others the personnel of the US Attorney's office for the Northern District of Oklahoma. They ensured that criminal restitution would have to be paid by cash, certified check, or money order. They prevented the use of pay.gov, because the use of pay.gov would make their thievery nearly impossible to perpetuate.

This demonstrates a reason to hate Stilley and maintain him as a political prisoner. This gives some reason for denying him halfway house for over four months after his halfway house date of October 1, 2025 – although that admittedly seems to be a short term solution to a long term problem. For the evidence that truly terrifies Stilley's persecutors, it is necessary to go a bit further.

### a. The Arkansas Attorney General's office tacitly admitted that Stilley's federal criminal judgments are void.

Stilley registered to vote in midsummer 2024, then immediately filed an original petition at the Arkansas Supreme Court, *Stilley v. Thurston et al,* Ark. Sup. Ct. #24-453. When the validity of Stilley's voter registration was challenged, he filed motions to suppress both the original judgment (Dkt. 338) and first revocation judgment (Dkt. 752). Both of those motions were defaulted, despite the fact that

13

Arkansas Secretary of State John Thurston was represented by 5 high ranking lawyers from the Arkansas Attorney General's office.

Stilley was ordered to post $5,000 for costs of a Special Master, assigned for the purpose of determining whether or not Stilley was lawfully registered to vote. The Special Master held a hearing and wrote a report – but didn't rule upon the fundamental question for which he was appointed.

The Arkansas Supreme Court didn't rule on Stilley's suppression motions. They dismissed Stilley's petition, one day before Stilley's requests for admissions would have been confessed by operation of law. Stilley amongst other things requested admissions that both of Stilley's federal criminal judgments at the time were *void*.

Appointment of a Special Master, and an order to post $5,000 for costs, is a confession that fact questions remain to be decided. A default by 5 of the best lawyers in the Arkansas Attorney General's office is a tacit admission that they can't respond without confessing that Stilley is right, and that the federal criminal judgments against him are as bogus as a $3 bill.

The Special Master tacitly admitted the same thing, when he marched straight up to the issue for which he was assigned and paid money, said Stilley vehemently denied the validity of the criminal judgments – and then failed to state his own opinion.[1] He knew the federal criminal judgments against Stilley were fraudulent and void – but also knew that the majority of the members of the

---

[1]    As in other cases, Stilley would gladly link to the correct page of the cited document if he had access to his electronic files.

Arkansas Supreme Court would not be happy with any such pronouncement of the truth. Therefore he dodged the issue.

Consider now the posture of Stilley's provisional[2] petition under 28 USC 2255, filed in the clerk's office on 12-15-2025. Stilley filed a motion for scheduling order along with his provisional petition, motion for release pending the litigation of the 2255 petition, and motion to disqualify government counsel. This District Court on the day of Stilley's filings entered an order saying that the government need not respond until so ordered by the Court. Since then we've had nothing but a deafening silence.

This Court may ask what disclosures the government owes Stilley. In a nutshell, the government owes Stilley a written confession of each of the following non-exhaustive list of items:

1) The truth of every allegation set forth in Stilley's motion to vacate his original criminal judgment,[3] filed as docket #809;

2) The truth of every allegation set forth in Stilley's motion to vacate his first revocation judgment,[4] filed as docket #805;

3) The truth of every allegation in all other pleadings in all other pleadings with respect to which Judge Friot excused the government from a paragraph by paragraph response;

---

[2]     Stilley has made it clear that he intends to upgrade his 2255 petition when the government's invidious interference with his due process rights comes to a halt.
[3]     Stilley's original criminal judgment is docket # 338.
[4]     Stilley's first revocation criminal judgment is docket # 752.

4) The fact that Stilley has a legal means of establish his innocence, but for the felonious interference with Stilley's right to reasonable access to the courts.

### b. The evidence the government is suppressing is awaiting Stilley's collection through litigation to determine the validity of Stilley's voter registration.

The Arkansas Supreme Court referred Stilley to the Crawford County Prosecutor for criminal prosecution, and made another even more momentous referral. They referred Stilley to the County Clerk for cancellation of his voter registration.

Stilley soon found himself in jail facing felony perjury charges. However, this gives him certain due process rights. He has the right to notice, regular proceedings, jury trial, etc.

Ditto for the referral to the County Clerk for the cancellation of his voter registration. *Either* Stilley *or* the County Clerk have a right to litigate the matter. The County Clerk cannot unilaterally void a facially valid voter registration any more than the Crawford County Prosecutor can treat the Arkansas Supreme Court's <u>referral</u> for prosecution as a *de facto* criminal **judgment** against Stilley.

In the original action petition at the Arkansas Supreme Court, Stilley filed motions to *suppress* that essentially mirrored his motions to *vacate* in the captioned case. He also served discovery that used requests for documents and interrogatories to buttress requests for admission that would have forced Secretary of State Thurston to confess to the ultimate question, which is to say to admit that Stilley's

16

convictions are **_void_** for the reasons stated by Stilley. Stilley requested that the normal 30 period for discovery response be expedited. That motion was ignored by everyone including the Arkansas Supreme Court.

Five of the best lawyers in the Arkansas Attorney General's office defaulted on the motions to suppress. Even more suspiciously, Stilley's case was dismissed without rulings on his motions on the *day before* the admissions **_would have been deemed admitted by operation of law_**.

Suspicious? Of course, and beyond suspicious. But it gets worse.

### c. It is a virtual certainty that Judge Friot conspired to cheat Stilley out of a meaningful hearing before the second revocation was even filed.

At Stilley's bond hearing while he was in the jail, Stilley heard counsel for the state say that they were in communication with federal officials, and a revocation of Stilley's supervised release was under consideration.

It is a virtual certainty that the communications involved Judge Stephen P. Friot. **_He was the prosecutor!_** No other signature on the sealed charging instrument is associated with a law degree or formal legal training. It is likely that Assistant US Attorney (AUSA) Charles Anthony O'Reilly was nervous about bringing revocation charges against Stilley. After all, that brings the thievery of federal criminal restitution funds front and center. That brings front and center the question of why Stilley is being attacked for trying to ensure that the legal voters of

17

the State of Arkansas would decide the fate of a hotly contested constitutional amendment regarding abortion rights.

AUSA O'Reilly plainly received assurances that the government didn't have to respond to Stilley's pleadings. O'Reilly admitted that in writing, in an email to Stilley. The probabilities are that at least one of the *ex parte* hearings took place before Judge Friot commenced the prosecution. After all, if he couldn't get an "official" federal prosecutor to agree to prosecute the case, it would be embarrassing for Friot to file the "revocation" petition against Stilley.

The assurances that "the government" needn't respond to any of Stilley's motions would have been worthless unless Judge Friot provided express or implied assurances that Stilley would *lose no matter what.* The fact that venue is conspicuous by its absence? *No problem!* The fact that five of the best lawyers in the Arkansas Attorney General's office had to default on Stilley's motions to suppress both of Stilley's federal criminal convictions to avoid formally confessing Stilley's innocence? *No problem!* The fact that Stilley was altogether denied 6th Amendment assistance of counsel at the first revocation? *No problem!*

We find additional proof that this is the case in the hearing itself. The government didn't bother to articulate a theory for prosecuting Stilley in a court where venue is conspicuous by its absence. Indeed Judge Friot seemed to be the main advocate on that issue, objecting on his own and generally doing his best to intimidate Stilley into silence.[5] The hearing demonstrates that the government had

---

[5]    How convenient that *Stilley's adversaries* have stomped out his access to the official transcripts, so that he cannot cite and link to the record. A computer with software,

not the slightest anxiety about any of the issues that Stilley had raised by pre-hearing motions.

Nor did Judge Friot ask the government to explain, however rudimentarily, why any of Stilley's claims lacked legal or factual merit. This is rock-solid proof from both Judge Friot and government counsel that they ***both*** knew that Stilley would lose on every issue he raised, with or without the slightest evidence ***or argument*** from the government. Judge Friot had his mind irrevocably made up before the hearing and also prior to his face-saving grant of standby counsel just before the hearing. He had ***communicated*** that fact to the government in his *ex parte* hearing and order(s). Such is the very epitome of a denial of due process.

## CONCLUSION

This Court should promptly order the government to respond within 7 days, with a thorough briefing of all issues including any limitations on the scope or duration of relief that this Court is legally authorized to grant, and promptly grant the full measure of relief sought in both of Stilley's motions.

Respectfully submitted this ⟋⟍ day of February, 2026.

---

internet access, software, printers, etc., would render this wickedness a practical impossibility.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

By my signature above I declare under penalty of perjury pursuant to 28 USC 1746 that I placed a copy of this pleading in the prison outgoing mail, with sufficient US First Class postage attached, on the date stated above, addressed to the Clerk of this Court for filing and service on all parties entitled to service via CM/ECF. The prison at which Stilley is confined does not have a legal mail system. Stilley claims the benefit of the prison mailbox rule.

<>10579-062<>
Oscar Stilley
FCC Yazoo City Camp
Federal Correctional Complex
PO Box 5000
Yazoo CITY, MS 39194
United States

7016 1370 0001 2137 7343

RECEIVED
FEB 24 2026
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

<>10579-062<>
Heidi Campbell
US District Court Clerk
333 W 4TH ST
Room 411
Tulsa, OK 74103
United States

Postmark Unknown
9-CR-43-SEH-2