**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

UNITED STATES                              PLAINTIFF/RESPONDENT

V.                                Criminal Case No. 4:09-cr-43-2 SEH
                                  Civil case No. 4:25-cv-00673

OSCAR STILLEY                              DEFENDANT/PETITIONER

**DEFENDANT STILLEY'S VERIFIED MOTION FOR <u>HARD COPY</u> SERVICE
FROM 6-5-2026 UNTIL STILLEY'S RELEASE FROM CUSTODY,
WITH INCLUDED BRIEF**

Comes now Defendant/Petitioner Oscar Stilley (Stilley) and for his verified motion for

hard copy service from 6-5-2026 until his release from custody, and states:

1)  Stilley normally files and receives service electronically. While in DOJ-FBOP custody

    Stilley has a friend who sends him the unformatted text of his pleadings via Trulincs.

2)  Stilley has reason to believe that he may be in SHU (Special Housing Unit, or jail for the

    prison) from, on or about 6-5-2026 until his release from custody. In this context

3)  '*release from custody*" includes a release to home confinement, since that would give

    Stilley access to a computer and internet and electronic service of pleadings.

4)  Stilley does not get actual mail service while in SHU, except legal mail. Instead, he gets

    wretchedly poor-quality photocopies that often cut off part of the text. Furthermore, the

    mailroom often withholds mail without telling the inmate or giving them their due

    process right to object.

1

5) Stilley spent 37 days on hunger strike commencing 3-10-2026. A summary of information relevant to that hunger strike is attached hereto as Exhibit "1" and is incorporated herein as if set forth word for word. This information was prepared from contemporaneous notes, save for a few instances most of which are noted in bracketed text.

6) SHU inmates at this prison complex are tormented in many unlawful ways, too numerous to mention. Some of the more egregious examples are set forth below.

7) SHU inmates are given "SHU pencils," which are exceedingly hard but flexible pencils. Nearly all of them come unsharpened. By great effort they can be sharpened by a razor taken out of a razorblade issued for shaving. Pencil sharpeners aren't issued or sold on commissary. The only way to sharpen a SHU pencil is with a razor taken illegally from a shaving razor. When inmates are caught getting the razor out for such use, they are put on *"razor restriction,"* which means they can no longer get a razor for any purpose.

8) The SHU has *"SHU pens,"* flexible pens that actually allow for writing of decent quality, but won't pass them out. The object of these games is to pretend that SHU inmates have access to reasonable writing instruments when they really don't.

9) *"Administrative Detention"* (AD) inmates in SHU at this prison aren't allowed the property to which the Program Statements give them entitlement.

10) Cold temperatures and inadequate clothing and blankets are deliberately used to torment inmates with cold, sometimes to include hypothermia.

**WHEREFORE**, Stilley most respectfully prays that this Honorable Court direct the Clerk to serve Stilley with hard copy of all filings (in addition to electronic service) between 6-5-2026 and the time of his release from custody; and for such other and further relief as may be appropriate whether or not specifically requested.

## VERIFICATION

Petitioner by his signature below pursuant to 28 U.S.C. § 1746 declares under penalty of perjury that the foregoing facts are true and correct.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062

Respectfully submitted this 24th day of May, 2026.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

## BRIEF IN SUPPORT OF MOTION

Petitioner Oscar Stilley is an electronic filer who normally receives service electronically as well. Stilley prefers things this way, since electronic communication is so much more efficient and reliable. Stilley FILES bits and bytes, as opposed to pieces of paper. Stilley is SERVED with

3

filings by bits and bytes, as opposed to pieces of paper. In both cases, the important part is the information communicated to persons entitled to that information.

While in the **custody** of the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP), Stilley has relied on a friend to send the unformatted text of filings to him. For example, when this Court declined to order the DOJ-FBOP to supply salt to Stilley on a hunger strike, Stilley was provided with the text of that order the same day, by a Trulincs message from said friend. Despite the denial, Stilley credits this Honorable Court for the fact that he was provided with salty broth during critical parts of the hunger strike. As the Court can plainly see, Stilley suffered serious dehydration prior to the time that salty broth was offered. Stilley's loss of body fat for the next two weeks was mostly masked by the restoration of proper hydration.

Stilley was strongly criticized for hunger striking. The suggestion was made that Stilley hadn't given senior DOJ-FBOP personnel a fair chance to correct the matters that gave rise to the hunger strike, and hadn't given fair warning of the possibility of a hunger strike.

This motion and brief should not be construed as a threat to hunger strike. It is not. Stilley is however giving his word of honor that he will not, absent extreme provocation such as sending Stilley to SHU, (Special Housing Unit, or jail for the prison) hunger strike prior to Friday, June 5, 2026.

Stilley has already explained to this Court that hunger striking is expressive conduct protected by the First Amendment to the US Constitution. Stilley hopes to make this Court as well as his custodians aware of the nature of his intended communication. This would involve 1) the core message, and 2) a set of ancillary messages.

4

The core message is that liberty, even conditional or limited liberty, even for a relatively short time, has inestimable value. It is the quintessential example of a loss for which there is no adequate remedy at law. Money damages LATER is not a sufficient legal basis to permit or tolerate the deprivation of liberty TODAY.

The ancillary messages primarily involve the abuse of administrative detainees in SHU. Examples of inmates in Administrative Detention (AD) include inmates awaiting a disciplinary hearing, those "under investigation," which may or may not culminate in disciplinary charges, those awaiting medical or dental trips, and hunger strikers. This prison violates the rights of SHU inmates as a matter of DE FACTO policy, knowing full well that BIVENS v. SIX UNKNOWN NAMED AGENTS OF FED. BUREAU OF NARCOTICS, 403 U.S. 388 (1971) (the judge-made federal analogue to 42 USC 1983, a legal remedy for federal constitutional violations by state or local actors under color of law) is a toothless tiger. However, Stilley was persecuted and abused far beyond the normal inmate in Administrative Detention on the previous hunger strike.

Stilley is currently seeking **informal** resolution of certain grievances, including:

A.  Hunger striking is a medical issue. If his detention is in SHU, he should get all the rights and privileges secured to inmates in AD by the applicable provisions of the DOJ-FBOP Program Statements.

B.  AD inmates should not be deprived of the things the relevant Program Statement, # 5270.12 (h) (Personal Property), says AD inmates are entitled to. Examples include mail, books, postage stamps, one container of powdered soft drinks, and for those not on hunger strike, up to 5 authorized snacks per week.

C.  It should go without saying that hunger strikers should be provided with appropriate toileting facilities, rather than the Hobson's choice of urinating on the floor or drinking the urine. Unfortunately, in this case it does need to be said.

D.  Inmates should get blankets, linens, clothes and shoes that fit, etc. Engineered hypothermia is not a lawful tool for the control of inmates, especially inmates like Stilley, who is giving them no trouble, but rather respectfully exercising a constitutional right.

E.  At the very minimum, inmates should have access to SHU pens and sufficient quantities of plain copy paper, for legal work, personal letters, etc. Neither inmates nor courts should have to deal with writing so faint that it is barely legible.

This Court might **reasonably** question why it is necessary to say all these things, when Stilley seeks only an order for hard copy **PLUS** electronic service in this case, for a period that cannot exceed 48 days. But one must remember that for a period of four weeks, Stilley was denied so much as a SHU pen or postage stamps. Stilley couldn't write anyone to ask if anything had been filed in his case. That's extraordinary. Nor did Stilley have access to Trulincs.

Stilley's requested relief will ensure that he gets notice of filings while he's in SHU. Stilley knows how to plead for more relief. He made his choices and has his reasons.

If Stilley goes back on **hunger** strike, his goal is a fairly benign one. He simply hopes to emaciate himself consistent with an extended hunger strike. The record of the first hunger strike does not reflect a desire to complicate matters for personnel.

That calls for an **explanation** of the time immediately after Dr. (Ms.) Martinez tried to put Stilley in fear of force feeding with a nasogastric tube. That's for all practical purposes a

challenge. Stilley cut back to water only. You can see the pattern -- a steady decline from a blood sugar of 88 on April 10, to 57 on the 11th, to 42 on the 12th, then to 30 on 4-13-2026.

Health Services didn't speak to **this** issue - verbally. They just informed Stilley that he would pursuant to doctor's orders be offered 220 calories of liquids 3X daily, plus they restarted the salty broth that had been cut off 4-8-2026.

Stilley had repeatedly told the **personnel** that if they'd come his way, he would come theirs. Health Services responded with eloquence but not with words. Their message could be summed up as follows, paraphrased, "*We see that you've given us a good reason to force feed you, and you've refused glucagon twice, which suggests you're not very intimidated by the prospect. We'll give you a face-saving way out of a confrontation if you want it.*"

Stilley started drinking what they offered. The following day Ms. Phillips, the Camp Administrator, came to Stilley's cell, encouraged him to eat, and told him she'd get him to the Camp the next day if he ate then, on Tuesday.

After contemplation Stilley chose to eat, and made a failed attempt to get the noon meal Wednesday. The main point he was **trying** to make is that he's willing to come their way if they're willing to come his. He's not trying to force his custodians (or even his adversaries) to *"lose face."* Nobody wants to be embarrassed or humiliated.

We spoke to each other, within the meaning of the 1st Amendment, in large part nonverbally. Experts tell us that much if not most human communication is nonverbal.

Stilley has made every reasonable effort to get proper orders from this Court. The previous judge, Stephen P. Friot, was and is without controversy an unmitigated liar. Knowing

full well that Stilley had bitterly complained about the denial of the 6th Amendment right to counsel during the first revocation, Friot as part of the second revocation secretly convened an EX PARTE hearing with the prosecutor, and told him that he didn't have to respond to any of Stilley's motions. AFTER corruptly deciding every issue adverse to Stilley without notice or hearing or right to be heard, he sweetly offered Stilley his requested standby counsel, paraphrased, "*Here, I already cheated you out of everything that matters but you don't know about it. Now that ITS IRRELEVANT be pleased to have the 6TH AMENDMENT ASSISTANCE OF COUNSEL you've been whinin about!!!*"

There are no words in the English **language** to justify that conduct. That's an outrage against the US Constitution and basic decency—one that anyone can understand and appreciate. But Stilley can't get RULINGS and PROPER PROCESS to enforce his right. In fact, we haven't even STARTED to litigate the question of whether or not Mr. O'Reilly is a proper representative of the United States, despite his outrageously unethical behavior, the potential need for him as a witness to what happened during various secret EX PARTE hearings, etc.

If—and that's a big IF—Stilley goes on hunger strike on or shortly after June 5, 2026, he's basically telegraphing the conclusion that this is the only *"remedy"* remaining to him. It's a *"remedy"* that this Court could *"**veto**"* by granting Stilley release pending a decision on his 2255 petition. Why pray tell would Stilley purposely emaciate himself if he's been released, destitute, with a state criminal case to fight, with overdue rent, and a host of other pressing obligations?

Stilley remains in prison not IN SPITE OF his innocence, but rather BECAUSE OF his innocence. If Stilley's persecutors weren't exceedingly INSECURE, they wouldn't have made the string of phone calls necessary to rain down a litany of abuse on Stilley.

8

Stilley has been told that he cannot get the benefit of his employment bargain—FSA home confinement—because 1) he spoke to journalists virtually all of whom CALLED HIM, and 2) because he's probably going to file litigation when he gets the reasonable capacity so to do. Both of these assigned *"wrongs"* are actually 1st Amendment constitutional rights.

Many if not most of those journalists talked to Stilley on Zoom. Some came to his home, to visit in person, even to spend the night. They know what Stilley looks like at about 173-175 pounds.

If Stilley emaciates himself for **40**-48 days, that behavior speaks volumes about the value Stilley places upon due process. As the US Supreme Court observed, *"the resolute acceptance of pain may communicate dedication and righteousness more eloquently than words ever could."* FTC. v. Super. Ct. Trial Lawyers Assn., 493 US 411, 450 (1990) (Brennan joined by Marshall, concurring in part and dissenting in part).

However, Stilley has no intention of suffering, beyond that necessary to emaciate himself. If undue suffering is deliberately **inflicted** by outside parties, it merely amplifies Stilley's 1st Amendment speech and petition. Furthermore, Charles Anthony O'Reilly, the federal prosecutor who benefits from this Court's silence, has some duty to defend the reputation of this Court.

Part of the reason for this motion is to remove ALL PLAUSIBLE DENIABILITY about the lawless conditions imposed on Stilley during the previous hunger strike -- together with an administrative (but not judicial) request that such conditions not be imposed during any FUTURE hunger strike. The Man Behind the Curtain can make some phone calls to the right

people, and explain to them that abusing Oscar Stilley is counterproductive and should not be done without their express authorization.

During the first hunger strike, Stilley was at a decided disadvantage. Stilley decided to eat on Wednesday, April 15, 2026, in hopes of putting another weekend *"on his clock."* It didn't work. Denied the noon and evening meals that day, he ate on Thursday. He remained in SHU until Tuesday, eating for some 5 days before other inmates were allowed to see him.

How's that going to work this time? Stilley's GCT is 7-23-2026. Stilley's *"window of opportunity"* is that period of **time** during which Stilley is confident of being able to hunger strike all the way to the door, but not so short a time that he won't be thoroughly emaciated.

Is it logical to think the journalists to whom Stilley talked, for which he is now being punished, might want to see Stilley in this emaciated condition? Is it possible that this might not be the most flattering picture to **paint** for this Court and for the prosecution team in this case? Is it possible that the journalists might be interested in the conditions of confinement the second time around?

IF the hunger strike takes place, Stilley won't be the only one engaged in nonverbal speech. If this Court sits tight and says nothing, does that not amount to a REPRESENTATION that Stilley is correct in his conclusion that he has no meaningful *"remedy"* save hunger strike? Does that not amount to a representation that there are no words in the English language to justify the acts and omissions of Judge Stephen P. Friot and prosecutor Charles Anthony O'Reilly?

Stilley comes from large families. His maternal grandmother was a Yoder. Their semi-annual family reunion will be July 17-18, Friday and Sabbath, 2026, in Illinois -- the weekend before Stilley's GCT release date. If he misses this reunion, that means he has to wait four years from the last one, (in 2024, which he attended) to see his family gathered together again. The reunion for his maternal grandfather Ammon Miller is the following weekend. In both cases, everyone knows that Oscar Amos Stilley wants to BE THERE.

If Stilley goes on hunger strike, his people will know the day that it started. The Yoders should be told that Stilley **desperately** wanted to attend. How desperately? ENOUGH TO HUNGER STRIKE FOR THE PRIVILEGE!!

We criticize Beijing for the incarceration and abuse of Jimmy Lai -- as well we should. We call for his immediate release, because his *"offense"* is nothing more than honorable journalism. Is it not then the height of **hypocrisy** to incarcerate one of our own political dissidents for the STATED OFFENSE of talking to journalists?? How can journalists do their job if they don't ask questions, or if people who talk to journalists go to or remain in prison because of it? Will not the incarceration of persons for talking to journalists chill 1st Amendment protected speech?

We criticize Moscow for the incarceration and death of Alexei Navalny—as well we should. And did we not just recently mount an ultimately successful campaign for the release of a Wall Street Journal reporter named Evan Gershkovich, **incarcerated** for his skillful reporting in Russia? How then are we any better if we leave a political dissident to rot in an American prison—whether the time involved is one day, or fifty, or five hundred? On that score, please know that Stilley has not the slightest desire for suicide, or any permanent injury whatsoever. If

11

Stilley dies of poison from South American *"dart frogs,"* Stilley's people should not chalk it up to *"an accident."* Rather they should engage the services of the best Federal Tort Claims Act (FTCA) tort claim lawyers they can find.

Is this unfair to Stilley's people? No, it is not. Lai's people courageously speak for him. Yulia Navalny has always spoken on behalf of her husband Alexei, despite the risks. The owners of the Wall Street Journal spoke **fearlessly** and eloquently, and spared no expense, to bring their reporter home again at the earliest opportunity.

How hard is it for Stilley's people to find the right journalist and talk to them? Various AI services compete for the privilege of getting the names, titles, phone numbers and emails of the journalists who talked to Oscar Stilley since the first day of 2021, along with links to any relevant stories. How hard is it to email a link to this pleading and the court docket (on RECAP, courtlistener.com) to the journalist, then call the journalist and ask if they were aware that Stilley is currently in federal prison, one out of two OFFICIAL REASONS being that he talked to journalists?

If that's not enough, it is easy enough to ask AI another question. What pray tell was Stilley was discussing that provoked such a hostile response? Who are the top ten journalists most likely to WANT TO KNOW that Stilley is in prison, on hunger strike, based on the topic he discussed with journalists? Ask some of them if they're willing to ask the proper questions of the DOJ and its subsidiary the DOJ-FBOP, and then write about it.[1]

---

[1] Your Petitioner is careful to tell his people NOT to attempt to influence any judicial officer, whether directly or indirectly, through means other than those authorized by law and rule.

In politics and law, there is no disinfectant like the disinfectant of sunlight.

## CONCLUSION

This Court should direct the clerk to supply **Oscar** Stilley with both hard copy and electronic service, of all filings entered upon the docket between June 5, 2026 and his release from prison.

Respectfully submitted this 31st day of May, 2026.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.

By: /s/ Oscar Stilley
OSCAR STILLEY, DOJ-FBOP #10579-062
FCC YAZOO CITY CAMP
PO BOX 5000
YAZOO CITY, MS 39194
